UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 cv 00355

J.S. and R.S. individually,
and on behalf of John S., a minor,

        Plaintiffs,

-against-

THE NEW YORK CITY DEPARTMENT
OF EDUCATION and THE NEW
YORK STATE EDUCATION
DEPARTMENT,

        Defendants.

**COMPLAINT**

ECF

Case No.:

Hon.



LAWRENCE D. WEINBERG (LW7841)
Attorney for Plaintiffs

162 Williamson Ave.
Bloomfield, NJ 07003
973-748-3761
Fax: 718-228-5935

c/o Susan Luger Associates, Inc.
Special Education Advocates
155 West 72nd Street
Suite 201
New York, NY 10023
212-769-4644
Fax: 212-501-8090

lawrenceweinberg@gmail.com

January __, 2015

1

## COMPLAINT

Plaintiffs, J.S. and R.S., individually and on behalf of their special needs child, John S., (collectively referred to as "Plaintiffs"), for their Complaint against Defendant New York City Department of Education and the New York State Education Department, by their attorney Lawrence D. Weinberg, allege as follows:

### PRELIMINARY STATEMENT

1.     This action is brought pursuant to the Individuals with Disabilities Education Improvement Act (formerly the Individuals with Disabilities Education Act), 20 U.S.C. § 1401, *et seq.* (hereafter the "IDEA"), to ensure a disabled child's right to a free appropriate public education. It is brought upon receipt of a defective state administrative decision from which plaintiffs are aggrieved. Parents seek modified *de novo* review of a State Review Officer's (the "SRO") September 26, 2014 Decision No. 14-090 and an impartial hearing officer's (the "IHO") May 15, 2014 Decision.

2.     Plaintiffs are the parents of a disabled child who was denied access to a free appropriate public education ("FAPE") in the 2013-2014 school year by the Defendant School District by way of its Committee on Special Education ("CSE"). Plaintiffs seek tuition reimbursement for their appropriate unilateral placement. This Complaint is filed pursuant to the IDEA, supra, New York State's implementing laws and regulations, Article 89 of the New York State Education Law, N.Y. Educ. Law §§ 4401 *et seq.*; 8 NYCRR §§ 200 *et seq.*, and public policy to obtain such reimbursement.

### JURISDICTION AND VENUE

3.     Jurisdiction of the U.S. District Court is invoked under 20 U.S.C. § 1415(i)(2) providing for jurisdiction and a right of action for a party "aggrieved by the findings and decision" of an impartial due process hearing. Jurisdiction is also conferred

by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States. This Court may order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has pendent jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein pursuant to 28 U.S.C. § 1367.

4.      Venue is properly laid in the United States District Court for the Southern District of New York, as authorized by 28 U.S.C. § 1391.

## THE PARTIES

5.      Plaintiff John S. (the "child" or "John") is a seven-year-old child and, therefore a minor. The child has been classified as a child with a disability, as that term is defined by 20 U.S.C. § 1401(3), and therefore, is entitled to receive free appropriate special education and related services from defendant the New York City Department of Education. Plaintiffs J.S. and R.S. are the parents and natural guardians of plaintiff child. At all relevant times plaintiffs resided and continue to reside in Richmond County, New York City, New York.

6.      The child and the parents are not expressly named within this complaint, because of the privacy provided in the federal IDEA Statute as well as the Family Educational Rights Privacy Act ("FERPA"), 20 U.S.C. §1232.

7.      Defendant New York City Department of Education ("DOE" or "defendant") is, and was at all material times, a corporate body, created by Article 52 of the New York State Education Law, CLS Educ. Law § 2550 *et seq.*, that manages and controls the educational affairs of the New York City public schools.

8.      DOE is the "local educational agency" as defined by 14 U.S.C. § 1401(19) and 34 C.F.R. § 300.28 responsible for providing the child with a free appropriate public education.

9.      DOE is comprised of service regions that serve special needs children. DOE's service regions are all part of the same corporate body, the New York City Department of Education. The child is educated within Service Region 07.

10.     New York State is a State as defined by 14 U.S.C. § 1401(31) and 34 C.F.R. § 300.40.

11.     Defendant New York State Education Department ("NYSED") is the "State Educational Agency" in New York State as defined by 14 U.S.C. § 1401(32) and 34 C.F.R. § 300.41.

12.     NYSED and the DOE have established policies and procedures, both written and informal, concerning the implementation of the IDEA. NYSED and DOE receive funding pursuant to the IDEA, 20 U.S.C. § 1412, and therefore must comply with the statute's provisions.

13.     DOE's principal place of business is located at 52 Chambers Street, New York County, New York City, New York. DOE's principal place of business is located in the Southern District of New York.

14.     Plaintiffs reside in DOE's school district. The DOE is responsible for providing a free, appropriate public education to all students with disabilities, including the child, who reside in the defendant's school district pursuant to statutory rights arising under the Federal IDEA statute, its implementing regulations, and the applicable Part 200 Regulations implemented in New York State, to the extent such regulations are not inconsistent with the IDEA statute.

3

15.     NYSED operates a list of impartial hearing officers who hear impartial hearings by parents against school districts and oversee the impartial hearing officer who ruled in this case and who was also assigned to plaintiffs' child's case during the 2014-2015 school year.

FACTUAL ALLEGATIONS

16.     Parents bring this action under the IDEA to recover the costs of sending the child to the Seton Foundation for Learning (the "chosen school" or "Seton) for the 2013-2014 school year.

17.     Parents seek to recover tuition from the DOE.

18.     Parents seek an order that NYSED investigate the IHO who issued the May 15, 2014 Decision and not assign said IHO to hear their child's case again.

19.     Congress enacted the IDEA to ensure that students with disabilities, such as the child, have meaningful access to public education. States who participate in the IDEA receive substantial federal funds in exchange for their agreement to provide a free appropriate public education to all disabled children in the state, and to comply with the IDEA's procedural and substantive mandates.

20.     New York State has chosen to participate in the IDEA framework, and has established procedures for providing special educational services to children with disabilities, set forth at N.Y. Educ. Law § 4401 et seq.

21.     The primary mechanism for insuring implementation of the IDEA's mandate of a free appropriate public education is the Individualized Education Plan ("IEP"), as defined by 20 U.S.C. §§ 1401(14), 1414(d). An IEP is a written statement, prepared for every child with a disability, that sets forth the special education and related services, supplementary aids and services, and program modifications or supports for

4

school personnel, to be provided to the child, or on behalf of the child to enable that child to achieve a comprehensive set of annual goals and short-term objectives.

22.     The IEP is then implemented in a specific classroom at a specific school, which is the child's placement. DOE typically first notifies a parent of the specific classroom placement by a final notice of recommendation ("FNR"). The FNR provides parents with the program recommendations on the IEP and the name of the school that will implement the IEP. Before receiving the FNR a parent usually has no knowledge of where the child will attend school. Once a parent receives the FNR they can contact the school and learn information about the proposed school and classroom placement.

23.     The child has a long history of difficulties in school. By reason of the child's disability, he requires special education and related services. The child is acknowledged by defendant to be a child with a disability as defined by 20 U.S.C. § 1401(3).

24.     The child requires special education and related services to accommodate these disabilities so that he can receive a free appropriate public education in defendant's schools.

25.     The child has Autism Spectrum Disorder and was classified as having Autism on the April 26, 2013 IEP, which was the IEP for the relevant time period. The classification of the child's disability is not in dispute.

26.     On April 26, 2013, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "April 26, 2013 IEP").

27.     Parents cooperated in all ways with the CSE.

5

28.     The April 26, 2013 IEP, proposed for the 2013-2014 school year, violates IDEA procedural requirements in ways that resulted in a denial of educational opportunity. These violations independently constitute denial of FAPE.

29.     The April 26, 2013 IEP and/or proposed school location was procedurally and/or substantively defective.

30.     Parents timely notified the CSE that the child would attend the chosen school for the 2013-2014 school year.

31.     During the 2013-2014 school year, the child attended Seton Foundation for Learning and has attended that school since the 2010-2011 school year.

32.     During the 2013-2014 school year, the also child received related services of speech therapy (3 hours per week), physical therapy (2 hours per week), and a special education itinerant teacher (3 hours per week) from the DOE through the stay put provisions of the IDEA. See 20 U.S.C. § 1412(a)(12)(A); 20 U.S.C. § 1415(j); and 20 U.S.C. § 1439(b); Zvi D. v. Ambach, 694 F.2d 904, 906 (2nd Cir. 1982). Although parents also sought an order for provision of these services at hearing, such relief is now moot, though capable of repetition, yet avoiding review.

33.     The cost of attendance at the chosen school from for the 2013-2014 school year was $36,000.00. The tuition at the chosen school is reasonable relative to the services received by the child.

34.     The program at the chosen school for the 2013-2014 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

35.     Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on August 26, 2013, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

36.     The IHR stated, noted a number of substantive and procedural defects in the proposed special education program. Among the defects alleged were as follows:

a.      "Many of the goals were not developed at the meeting and therefore excluded the parent from meaning the participation in their development…"

b.      "The speech therapy goals were drafted prior to the meeting and discussed at the meeting but there was not a provider present at the meeting. The speech therapy services did not begin until the end of March. *Each* provider only worked with John for a few times prior to the meeting. The therapists were not given much notice or time to prepare reports. The speech therapy report was not mailed and parent did not have a chance to review the report.

c.      "The physical therapy goals were drafted prior to the meeting and discussed at the meeting but there was not a provider present at the meeting. The physical therapy services did not begin until the end of March. Each provider only worked with John for a few times prior to the meeting. The therapists were not given much notice or time to prepare reports.

d.      "The occupational therapy goals were drafted prior to the meeting and discussed at the meeting but there was not a provider present at the meeting. The occupational therapy services did not begin until the end of March. Each provider only

7

worked with John for a few times prior to the meeting. The therapists were not given much notice or time to prepare reports.

     e.   "The IEP failed to sufficiently identify the student's present levels of functional performance and include corresponding goals required to address the student's identified needs. None of the related service providers were present at the meeting to review present levels of functional performance and review reports.

     f.   "The provider's services did not begin until the end of March and the IEP was held on 4/26/2013.

     g.   "The goals and the IEP were not reasonably calculated to confer educational benefit upon the student.

     h.   "The IEP including but not limited to the statement of goals, academic performance, and management needs did not meet all of the student's unique academic needs.

     i.   "The IEP including but not limited to the statement of goals, social/emotional performance, (behavior) and management needs did not address all of the student's unique social/emotional (and behavioral) needs.

     j.   "The team did not present reports to the parent prior to the meeting.

     k.   "The telephone participants did not have access to reports at the time of the meeting.

     l.   "No classroom observation was conducted.

     m.   "The parent requested a time limit on the bus of 45 minutes and the team advised her that she needs a letter from a doctor to justify this.

n.  "A crisis Para was discussed at the meeting. The team stated that they do not see justification for this at this time since John has no Para now and the school has not given any indication that he needs one.

o.  "The parent requested a sensory gym and the request were denied.

p.  "The CSE team was not duly constituted …"

q.  "A draft IEP was presented to the parent at the beginning of the meeting.

r.  "The CSE failed to recommend an appropriate program.

s.  "The evaluations and data utilized by the CSE did not support the proposed recommendation.

t.  "The CSE predetermined their recommendation.

u.  "The CSE team was unable to provide the parents with information about the proposed program.

v.  "The recommendation is contrary to the opinions of the professionals who have direct knowledge of the student's needs.

w.  "The program recommended does not offer adequate or appropriate instruction, supports, supervision or services to meet the student's unique needs in order to make educational progress. …"

x.  "The parents accurately assessed that the district was unwilling to offer anything more than the IEP it had already designed the year before." Ex. A-3 - A-5.

y.  The IHR mentioned the child's sensory needs five times.

z.  The IHR also alleged that the proposed school location offered by the DOE could not implement the IEP.

37.     Pursuant to 8 N.Y.C.R.R. 8 § 200.5, when parents request an impartial hearing, the hearing or a pre-hearing conference shall commence within the first 14 days after the expiration of the 30-day resolution period. The 30-day resolution period commences with the filing of the due process complaint.

38.     Evidentiary hearings were held on October 4, 2013, October 7, 2013, April 11, 2014, and April 29, 2014.

39.     The IHO rendered an initial decision on May 15, 2014.

40.     Pursuant to Supreme Court decisions, the hearing addressed three issues: 1. Whether the defendant's proposed services made available pursuant to the child's IEP were adequate to provide the child a FAPE; 2. Whether the private education services obtained by the parent were appropriate; and 3. Whether equitable considerations favor repayment (the "Burlington/Carter analysis").

41.     NY Educ. Law § 4404(1)(c) provides the defendant has the burden of proof that the placement it offered the child was adequate and did not deny the child a free appropriate public education; the statute also provides that defendant has the burden of proof whether the equitable considerations favor repayment. Parents have the burden of proof that the educational services chosen by the parents were appropriate.

42.     Under prong one of the Burlington/Carter analysis, a school district may fail to provide a disabled child with a FAPE through procedural or substantive defects in the IEP or classroom placement.

43.     DOE failed to provide the child with a FAPE through procedural and/or substantive failures in the April 26, 2013 IEP and/or the classroom placement.

44.     Under prong two of the Burlington/Carter analysis, a parent may prove that the private education services obtained by the parent were appropriate if the

education services were tailored to meet the child's individual needs and the child made educational progress at the school.

45.    The fact that the private school chosen by the parents has not been approved by the State Education Department is not dispositive of a parents' claim, so long as the parents demonstrate that the services that the child receives in the unilateral placement appropriately meet the child's educational needs.

46.    The school chosen by the parents was appropriate in that, among other things the program at the school was tailored to meet the child's individual needs and/or the child made educational progress at the school.

47.    The program at the chosen school was tailored to meet the child's individual needs and the child made progress at the school as demonstrated by, but not limited to, the following:

48.    Under prong three of the Burlington/Carter analysis, whether equitable considerations favor repayment requires an examination of, the parents' cooperation with the CSE and the reasonableness of the costs of the educational services chosen by the parents.

49.    The parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

50.    Parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

51.    At the hearing, defendant called no witnesses.

52.     At the hearing, plaintiffs called one witnesses, the parent, R.S. and was prevented by the IHO from calling additional witnesses.

53.     Despite the fact that the hearing record included no witnesses who testified that the IEP was appropriate, the IHO rendered an initial decision on May 15, 2014, which found that the IEP was appropriate.

54.     On June 19, 2014, parents appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

55.     The June 19, 2014 petition alleged that IHO Noe failed to conduct an impartial hearing that was impartial or fair, failed to allow parents to put on a case and asked that the SRO remand the case to a new impartial hearing officer to conduct a fair and impartial hearing and to refer IHO Noe for an investigation by the NYSED Office of Special Education.

56.     The June 19, 2014 petition alleged that the IHO acted irrationally and unreasonably and prevented the parents from presenting a record and violated the State Education Department Impartial Hearing Regulations and New York State Bar Model Code Of Judicial Conduct. Specifically:

        a.   The IHO failed to disclose a conflict, specifically that she authored a book with a DOE employee who was involved in some fashion in the case;

        b.   The IHO failed to recuse when asked by parents after the potential conflict came to light;

        c.   The IHO failed to document extensions;

    d.  The IHO failed to put the pendency order into evidence;

    e.  The IHO failed to allow parents to record the impartial hearing;

    f.  The IHO changed her mind after issuing orders without application by either party;

    g.  The IHO ordered parties to submit testimony by affidavit;

    h.  The IHO appeared to accept the DOE affidavits without providing parents with the opportunity to cross-examine witnesses;[1]

    i.  The IHO prevented parents from presenting evidence;

    j.  The IHO forced parents to seek new counsel; and

    k.  The IHO limited the parent's right to due process.

57.    This is an appeal from the State Review Officer's decision issued on September 26, 2014; that decision is contrary to the evidence and the applicable decisional law. Plaintiffs contend that they have been denied a free appropriate public education by defendant and that they also have been denied due process by the State Review Officer.

58.    The SRO failed to address a number of procedural and substantive violations that plaintiffs had previously alleged including but not limited to the following:

    a.  Whether the IEP goals were appropriate;

    b.  Whether the IEP was appropriate without Applied Behavioral Analysis therapy;

    c.  Whether the IEP appropriately addressed the child's sensory difficulties;

---

[1] Although the Affidavits appear in the evidence, neither the IHO or the SRO directly refer to the affidavits in their decisions.

d.  Whether parents' participation was impacted due to the preparation of goals before the IEP meeting and the lack of related services providers at the meeting;

e.  Whether the goals, academic performance, and management needs did not meet all of the child's unique academic needs;

f.  Whether the social/emotional performance, (behavior) and management needs addressed all of the child's unique social/emotional (and behavioral) needs;

g.  The failure to conduct a classroom observation;

h.  The failure to include a crisis management paraprofessional;

i.  Whether the evaluations and data utilized by the CSE supported the proposed recommendation;

j.  Whether the recommendation was appropriate;

k.  Whether the failure to include a behavior intervention plan rendered the IEP inappropriate;

l.  Whether the IEP was predetermined; and

m.  Whether the parents were offered a school location with Adaptive Physical Education.

59.   The SRO found that the IEP was appropriate and that IHO Noe did not engage in misconduct.

60.   The SRO's decision is erroneous, and should be reversed since it is contrary to the IDEA and New York State Education Law.

61.     IHO Noe was again appointed purportedly pursuant to the impartial hearing officer rotational system to hear the child's 2014-2015 case.

62.     Plaintiffs have never waived or abandoned any claims or arguments under the IDEA or state law.

63.     Plaintiffs have exhausted their administrative remedies as required by 34 C.F.R. § 516.

## CAUSES OF ACTION
### FIRST COUNT AGAINST DOE
### PROCEDURAL REQUIREMENTS OF IDEA

64.     Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein.

65.     As described at length above, defendant failed to comply with the procedural requirements of the IDEA.

66.     DOE failed to ensure that procedural requirements guaranteeing parental participation and due process were used or provided. DOE's failure to comply with the procedural requirements of IDEA denied the child a free appropriate public education as required by law.

67.     Based on the foregoing, parents' rights, and those of their disabled child, were violated under the IDEA, 20 U.S.C. § 1401, et seq. and the federal regulations promulgated thereunder, 34 C.F.R. Part 300.

68.     DOE's actions have caused plaintiffs damages. Procedural violations of the IDEA led to a denial of a free appropriate public education for the child. The IDEA specifically provides for an award of tuition reimbursement for parents' proper unilateral placement at the Seton Foundation for Learning. Plaintiffs are entitled to all appropriate

relief available under its provisions, including the specific remedy of tuition reimbursement with ancillary and necessary fees, including attorney's fees.

69.     Parents are entitled to tuition reimbursement under the IDEA regulations and state law because 1. DOE failed to provide the child with a free appropriate public education; 2. The school chosen by the parents was appropriate in that, among other things, it was tailored to meet the child's individual needs and/or the child made educational progress at the school; and 3. The balance of equities favors reimbursement because the parents cooperated with the CSE and the cost of the school is reasonable relative to the services received by the child.

<u>SECOND COUNT AGAINST DOE</u>
<u>FAILURE TO PROVIDE A FAPE UNDER THE IDEA</u>

70.     Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein.

71.     As described at length above, defendant failed to develop or provide a free appropriate public education pursuant to a proper Individualized Education Plan at an appropriate classroom placement for the child that was reasonably calculated to enable the child to receive educational benefit as required by the IDEA.

72.     Based on the foregoing, parents' rights, and those of their disabled child, were violated under the IDEA, 20 U.S.C. § 1401, et seq. and the federal regulations promulgated thereunder, 34 C.F.R. Part 300.

73.     DOE's actions have caused plaintiffs damages. Violations of the IDEA led to a denial of a free appropriate public education for the child. The IDEA specifically provides for an award of tuition reimbursement for parents' proper unilateral placement at the Seton Foundation for Learning. Plaintiffs are entitled to all appropriate relief

available under its provisions, including the specific remedy of tuition reimbursement with ancillary and necessary fees, including attorney's fees.

74.     Parents are entitled to tuition reimbursement under the IDEA regulations and state law because 1. DOE failed to provide the child with a free appropriate public education; 2. The school chosen by the parents was appropriate in that, among other things, it was tailored to meet the child's individual needs and/or the child made educational progress at the school; and 3. The balance of equities favors reimbursement because the parents cooperated with the CSE and the cost of the school is reasonable relative to the services received by the child.

THIRD COUNT AGAINST DOE
ARTICLE 89 OF THE NEW YORK STATE EDUCATION LAW

75.     Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein.

76.     As described at length above, defendant failed to develop or provide a free appropriate public education pursuant to a procedurally adequate Individualized Education Plan in an appropriate classroom placement for the child that was reasonably calculated to enable the child to receive educational benefit as required by law.

77.     Or in the alternative, defendant failed to ensure that procedural requirements guaranteeing parental participation and due process were used or provided. DOE's failure to comply with the procedural requirements of Article 89 of the New York State Education Law denied the child a free appropriate public education as required by law.

78.     Based on the foregoing, parents' rights, and those of their disabled child, were violated under Article 89 of the New York State Education Law and the Regulations of the Commissioner of Education, Part 200.

79.     DOE's actions have caused plaintiffs damages. Violations of Article 89 of the New York State Education Law led to a denial of a free appropriate public education for the child. Article 89 of the New York State Education Law specifically provides for an award of tuition reimbursement for parents' proper unilateral placement at the Seton Foundation for Learning. Plaintiffs are entitled to all appropriate relief available under its provisions, including the specific remedy of tuition reimbursement with ancillary and necessary fees, including attorney's fees.

80.     Parents are entitled to tuition reimbursement under the Article 89 of the New York State Education Law because 1. DOE failed to provide the child with a free appropriate public education; 2. The school chosen by the parents was appropriate in that, among other things, it was tailored to meet the child's individual needs and/or the child made educational progress at the school; and 3. The balance of equities favors reimbursement because the parents cooperated with the CSE and the cost of the school is reasonable relative to the services received by the child.

<u>FOURTH COUNT AGAINST DOE</u>
<u>ERRONEOUS DECISION BY THE SRO</u>

81.     Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein.

82.     The State Review Officer failed to properly discharge his duties as required by the IDEA, 20 U.S.C. §1401 et. Seq., the federal regulations promulgated

thereunder, 34 C.F.R. Part 300, Article 89 of the New York State Education Law, and the Regulations of the Commissioner of Education, Part 200.

      83.    The SRO decision relating to the 2013-2014 school year should be reversed for several reasons including, but not limited to, the following:

        a.  Failing to find that DOE's procedural violations of state and federal law denied the child a FAPE;

        b.  Failing to address whether the IEP goals were appropriate;

        c.  Failing to address whether the IEP was appropriate without Applied Behavioral Analysis therapy;

        d.  Failing to address whether the IEP appropriately addressed the child's sensory difficulties;

        e.  Failing to address whether parents' participation was impacted due to the preparation of goals before the IEP meeting and the lack of related services providers at the meeting;

        f.  Failing to address whether the goals, academic performance, and management needs did not meet all of the child's unique academic needs;

        g.  Failing to address whether the social/emotional performance, (behavior) and management needs addressed all of the child's unique social/emotional (and behavioral) needs;

        h.  Failing to address whether the failure to conduct a classroom observation rendered the IEP inappropriate;

i.   Failing to address whether the failure to include a crisis management paraprofessional rendered the IEP inappropriate;

j.   Failing to address whether the evaluations and data utilized by the CSE supported the proposed recommendation;

k.   Failing to address whether the recommendation was appropriate;

l.   Failing to address whether the IEP was predetermined;

m.  Failing to address whether the parents were offered a school location with Adaptive Physical Education;

n.   Failing to find that IHO Noe engaged in misconduct; and

o.   Failing to remand to a new IHO to determine whether Seton was appropriate and whether equities favored reimbursement.

84.     Based on the foregoing, parents' rights, and those of their disabled child, were violated under the IDEA, 20 U.S.C. § 1401, et seq., the federal regulations promulgated thereunder, 34 C.F.R. Part 300, Article 89 of the New York State Education Law, and the Regulations of the Commissioner of Education, Part 200.

85.     DOE's actions have caused plaintiffs damages. Violations of the IDEA led to a denial of a free appropriate public education for the child. The IDEA specifically provides for an award of tuition reimbursement for parents' proper unilateral placement at the Seton Foundation for Learning. Plaintiffs are entitled to all appropriate relief available under its provisions, including the specific remedy of tuition reimbursement with ancillary and necessary fees, including attorney's fees.

86.     Parents are entitled to tuition reimbursement under the IDEA regulations and state law because 1. DOE failed to provide the child with a free appropriate public

education; 2. The school chosen by the parents was appropriate in that, among other things, it was tailored to meet the child's individual needs and/or the child made educational progress at the school; and 3. The balance of equities favors reimbursement because the parents cooperated with the CSE and the cost of the school is reasonable relative to the services received by the child.

<u>FIFTH COUNT AGAINST NYSED</u>
<u>FAILURE TO DISCIMPLINE AND INVESTIGATE IHO NOE</u>

87.     Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein.

88.     The IDEA guarantees the right to an "impartial due process hearing." 20 U.S.C. § 1415(f). A *sine qua non* of an impartial due process hearing is that the hearing officer in fact be impartial.

89.     To that end the NYSED requires that IHOs not have a "personal or professional interest which would conflict with his or her objectivity in a special education due process impartial hearing." Application for New York State Education Department Certification as a Special Education Impartial Hearing Officer, available online http://www.p12.nysed.gov/specialed/dueprocess/IHOannounce.htm (link checked June 2, 2014).

90.     IHOs, including IHO Noe, are certified and listed on a list maintained by NYSEA. See NYCLS Educ. § 4404.

91.     As described above, IHO Noe failed to conduct the hearing in an impartial manner or in a manner consistent with state and federal law and regulations.

92.     As described above, IHO Noe failed to conduct the hearing in an impartial manner or in a manner consistent with the New York State Bar Model Code Of Judicial Conduct.

93.     Despite IHO Noe's improper conduct, the SRO failed to find that IHO Noe committed misconduct in this case and failed to order an investigation into the allegations.

94.     NYSED's actions have caused plaintiffs damages. Parents have been denied due process, which is guaranteed by the IDEA. Parents have been damaged by having to appeal the erroneous decision by IHO Noe and by the SRO. Parents have been damaged by having IHO Noe hear their child's case for 2014-2015 and live with the specter that if they do not believe the DOE offers their child an appropriate placement that IHO Noe will be appointed again.

<u>PRAYER FOR RELIEF</u>

Wherefore, plaintiffs respectfully request that the Court:

Conduct an independent review of both the administrative record and supplementary evidence;

Annul the September 26, 2014 decision by the State Review Officer;

Declare that the IEP developed for the 2013-2014 school year was inappropriate, procedurally and/or substantively;

Declare that DOE failed to provide the child with a free appropriate public education;

Direct the DOE and NYSED to conduct a new impartial hearing to address whether the Seton Foundation for Learning was appropriate for the child during the 2013-2014 school year and whether equities favored reimbursement; or Conduct a trial to determine whether the Seton Foundation for Learning was appropriate for the child during the 2013-2014 school year and whether equities favored reimbursement;

After such trial Declare that Seton Foundation for Learning is appropriate for the child; Declare that the equities favor reimbursement of the tuition paid by parents for the child at Seton Foundation for Learning for the 2013-2014 school year; Direct DOE to reimburse parents for the costs of tuition at Seton Foundation for Learning for the 2013-2014 school year and pre-judgment interest;

Declare plaintiffs to be the "substantially prevailing party" (for purposes of IDEA's fee shifting provision);

Direct DOE to pay for the costs and expenses of maintaining this action before the IHO and SRO pursuant to 20 U.S.C. § 1415;

Grant leave to plaintiffs to submit a statutory fee application;

Direct defendants to pay for the costs and expenses of maintaining this action, including reasonable attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B);

Direct NYSED to investigate and discipline IHO Noe;

Direct NYSED to remove decision 14-090 from its website;

Direct NYSED to adjust the rotational process for IHOs so that IHO Noe will not hear the case of John S. again and that if she is appointed pursuant to the rotational process that the next IHO in the rotation will be appointed;

and

Grant such other or further relief that the Court may deem just and proper.

Respectfully submitted,

LAWRENCE D. WEINBERG (LW7841)
Attorney for Plaintiffs

162 Williamson Ave.
Bloomfield, NJ 07003
973-748-3761
Fax: 718-228-5935

c/o Susan Luger Associates, Inc.
Special Education Advocates
155 West 72nd Street
Suite 201
New York, NY 10023
212-769-4644
Fax: 212-501-8090

lawrenceweinberg@gmail.com