# EXHIBIT "A"

THE COMMISSIONER OF EDUCATION
NEW YORK STATE EDUCATION DEPARTMENT

In Re the Complaint of Parents of John S., Petitioners,     **VERIFIED PETITION**
requesting discipline Impartial Hearing Officer, Mary
Noe.

Petitioners, JOHN ███████ and ROSALIE ███████ the Parents and

Guardians of JOHN S., a child with a disability and the subject of an impartial hearing,

hereby appeal the, Decision by the New York State Review Office and brings this appeal

pursuant to 8 NYCRR § 200.21(b) asking the Commissioner of Education to suspend or

revoke the certification of an impartial hearing officer, IHO Mary Noe, on the grounds of

incompetence or misconduct.

1.      Petitioners, Rosalie ███████ and John ███████ ("parents" or

"Petitioners"), are the parents of John S., a child with a disability (the "child" or "John").

2.      Respondent, the Department of Education of the City School District of

the City of New York ("DOE"), is a municipal corporation, created pursuant to the

Article 52—A of the New York State Education Law. N.Y. Educ. Law §§ 2590 et. seq.

3.      A proceeding was commenced pursuant to an impartial hearing request

("IHR") filed August 26, 2013 by Petitioners on behalf of the child, then a seven-year-

old child classified as having Autism pursuant to the Individuals with Disabilities

Education Improvement Act (formerly the Individuals with Disabilities Education Act),

1

20 U.S.C. § 1401, *et seq.* (hereafter the "IDEA"). The proceeding related to John's educational placement for the 2013-2014 school year.

4.     The records of such proceeding have been provided to the State Review Office of the New York State Education Department, Appeal No. 14-090 and the DOE Case No. 146079. The record includes 30 Parent Exhibits, A through DD, nine DOE exhibits, 1 through 9, and six IHO exhibits I through VI, a 78 page transcript, and other relevant documents.

5.     John is disabled and has attended Seton Foundation for Learning ("Seton") since preschool and attended Seton there during the 2012-2013 school year.

6.     Petitioners' IHR alleged, among other things, that the DOE denied the child a free appropriate public education ("FAPE") by failing to offer the child an appropriate special education program and placement for the 2013-2014 school year. The IHR requested the an Impartial Hearing Officer ("IHO") order relief including finding that parents were entitled to full tuition reimbursement for the child's attendance at Seton during the 2013-2014 school year.

7.     IHO Mary Noe was appointed to oversee the hearing on March 6, 2014.

8.     An Impartial Hearing on this matter was held on October 4, 2013, October 7, 2013, April 11, 2014, and April 29, 2014.

9.     Following the hearing, IHO Noe rendered her Decision on May 15, 2014. ("Decision").

10.     IHO Noe engaged in multiple acts of misconduct and prevented parents from developing a record during the hearing.

11.     For example, the DOE presented two witnesses by affidavit. Parents were not given the opportunity to cross-examine these witnesses. See Transcript generally.

12.     Petitioners presented one witnesses, the parent. Tr. 63. The parent did not finish her testimony and the DOE was not given the opportunity to cross-examine her. Tr. 76. Parents were not given the opportunity to call additional witnesses. Tr. 77.

13.     The IHO rendered the Decision on May 15, 2014. The IHO found factually that the IEP was appropriate. Decision.

14.     The Decision purports to address the issues pled in the impartial hearing request, however, numerous deficiencies in the program are not addressed.

15.     The Decision is merely a restatement of the IEP. Decision pp. 7-8. The IHO does not examine substantively any other documents or examine whether the IEP was appropriate in context. The decision makes numerous conclusory statements without citing to the record.

16.     For example, the IHO found, "The parents allege that the IEP is substantively inadequate. This argument is least persuasive when comparing the IEP recommendation with the SLN program, almost identical with the district's recommendation in the IEP providing for additional services." Decision, p. 8. This conclusion does not address the numerous procedural and substantive attacks on the IEP. Furthermore, parents never alleged that the amount of related services was inadequate. See Ex. A pp. 3-5. As such this conclusion is irrelevant.

17.     IHO Noe next found, "The parents submit a Neuropsychological Evaluation dated November 17, 2012. (Exh. E) The student was attending a 6:1:1 class. Dr. Robinson finds that the classroom placement allows for an appropriate level of support. (Exh. E-8)." Decision, p. 8. This is both irrational and not true. First, the conclusion is that the only relevant aspect of an IEP is the classroom student teacher

ratio. However, the number of children and teachers in a classroom is one of many issues that affects whether a program is appropriate.

18.     Moreover, her finding that Dr. Robinson recommended a 6:1:1 classroom is not true. Dr. Robinson states that John's then current placement at Seton provided for "an appropriate level of support." Ex. E-8. She does not state that such support is 6:1:1. The classroom program is described on Ex. E 3-4. That level of support includes 1:1 ABA therapy and lunch with eight children, one lead teacher, one assistant teacher, and five paraprofessionals. Ex. E-4. Although there are Seton documents that refer to a 6:1:1 classroom ratio (Ex. G.), the 1:1 ABA and additional support in lunch demonstrates that testimony from teachers at Seton were necessary to determine the ratio of the program that John was receiving at Seton.

19.     Most importantly, Dr. Robinson found that 1:1 ABA was a critical component of John's program. "Continued use of an ABA program is strongly recommended to teach new academic skills." Ex. E-8. The IEP does not state anywhere that ABA, much less 1:1 ABA would be continued. Ex. 1.

20.     The decision next found, "I find the additional recommendations are consistent with the IEP." Decision p. 8. There were thirty documents in the hearing record. It was inappropriate for the IHO to make a conclusory statement.

21.     Although the IHR mentions John's sensory difficulties five times, the decision fails to address the sensory issues at all. Compare Ex. A with Decision.

22.     IHO Noe acted irrationally and unreasonably and prevented the parents from presenting a record and violated the State Education Department Impartial Hearing Regulations and New York State Bar Model Code Of Judicial Conduct. Specifically:

a.  The IHO failed to disclose a potential conflict;

b.  The IHO failed to recuse when asked by parents after the potential

conflict came to light;

c.  The IHO failed to document extensions;

d.  The IHO failed to put the pendency order into evidence;

e.  The IHO failed to allow parents to record the impartial hearing;

f.  The IHO changed her mind after issuing orders without application

by either party;

g.  The IHO ordered parties to submit testimony by affidavit;

h.  The IHO accepted the DOE affidavits without providing parents

with the opportunity to cross-examine witnesses;

i.  The IHO prevented parents from presenting evidence;

j.  The IHO forced parents to seek new counsel; and

k.  The IHO limited the parent's right to due process.

23.    <u>The IHO failed to disclose a potential conflict.</u> Robert Meagher is an

employee of the New York City Department of Education. Although his precise role in

this case for the New York City Department of Education is unclear, he was copied or the

direct point of contact on several communications. See Tr. 30, 46-49. Ex. W, Ex. X, Ex.

Y, Ex. Z, Ex. BB, Ex. CC, Ex. DD. Dr. Meagher and IHO Noe coauthored a book

together with a third author. Mary Noe, Mary McCaffrey, & Robert Meager, IEP

Workshop Buiding Teacher-Parent Partnerships (Tom Kinney ed., Attainment Co., Inc.

5

2011). Although the book is not in evidence, it is currently available for sale.[1] IHO Noe

and Dr. Meagher also appeared in a video companion that goes with the book.[2] IHO Noe

admitted having authored the book with Dr. Meagher. Ex. IHO V, p. 2.[3]

24.    The IDEA guarantees the right to an "impartial due process hearing." 20

U.S.C. § 1415(f). A *sine qua non* of an impartial due process hearing is that the hearing

officer in fact be impartial.

25.    To ensure impartiality, the New York State Education Department

requires that IHOs not have a "personal or professional interest which would conflict

with his or her objectivity in a special education due process impartial hearing."

Application for New York State Education Department Certification as a Special

Education Impartial Hearing Officer, available online

http://www.p12.nysed.gov/specialed/dueprocess/IHOannounce.htm (link checked June 2,

2014).

26.    The New York State Bar Model Code Of Judicial Conduct For

Administrative Judges ("NY Model Code") provides, "A state administrative law judge

shall conduct all of his or her extra-judicial activities so that they: (1) do not cast

reasonable doubt on the state administrative law judge's capacity to act impartially as a

state administrative law judge." Canon 4(A)(1). Here IHO Noe's extrajudicial conduct

---

[1] See, e.g., Amazon: http://www.amazon.com/IEP-Workshop-Buiding-Teacher-Parent-
Partnerships/dp/1578617170/. iTunes: https://itunes.apple.com/us/book/iep-workshop-
building-teacher/id413573002?mt=11. Attainment Co., Inc.:
http://www.attainmentcompany.com/iep-workshop. (All links checked May 30, 2014.)
[2] An except of the video is available online:
https://www.youtube.com/watch?v=YGnsrM489Vs.
[3] It is unclear whether the IHO exhibits were submitted with the record as they are not
listed in the decision. See Decision, pp. 10-11.

cast reasonable doubt on her capacity to act impartially because she wrote a book and created a companion video with a DOE employee, who appeared before her.

27.     The New York State Bar Model Code Of Judicial Conduct For Administrative Judges ("NY Model Code") provides, "A state administrative law judge shall conduct all of his or her extra-judicial activities so that they: (1) do not cast reasonable doubt on the state administrative law judge's capacity to act impartially as a state administrative law judge." Canon 4(A)(1). Here IHO Noe's extrajudicial conduct cast reasonable doubt on her capacity to act impartially because she wrote a book and created a companion video with a DOE employee, who appeared before her.

28.     The Model Code provides, "A State Administrative Law Judge Shall Avoid Impropriety And The Appearance Of Impropriety In All Activities." Canon 2. Here IHO Noe's conduct cast created the appearance of impropriety because she wrote a book and created a companion video with a DOE representative, Dr. Meagher, who appeared before her.

29.     The Model Code provides, " (1) A state administrative law judge shall not engage in financial and business dealings that: (a) may reasonably be perceived to reflect adversely on the state administrative law judge's impartiality or exploit his or her judicial position;" Canon 4(D)(1)(a). Here, IHO Noe had a financial and business dealings that: may reasonably be perceived to reflect adversely on her impartiality because she wrote a book and presumably received royalties from its sale with a DOE representative, Dr. Meagher, who appeared before her.

30.     The Model Code provides, " (1) A state administrative law judge shall not engage in financial and business dealings that: (c) involve the state administrative law

judge in frequent transactions or continuing business relationships with those lawyers or other persons likely to come before the agency in which the judge serves." Canon 4(D)(1)(c). Here, IHO Noe had a financial and business dealings that involved her in a continuing business relationship with a person likely to come before the agency in which she serves because she wrote a book and presumably received royalties from its sale with a DOE representative, Dr. Meagher, who appeared represented the DOE before her.

31.     Here the IHO engaged in misconduct by writing the book with an employee of the DOE who regularly appeared before her. She then compounded that misconduct by failing to disclose that said conflict existed in a hearing where he was involved. Upon information and belief IHO Noe has not disclosed this conflict in numerous hearing where Dr. Meagher appeared before her or was involved in some capacity.

32.     Upon information and belief Dr. Meagher has appeared before IHO Noe on numerous occasions without IHO Noe disclosing this conflict.

33.     <u>The IHO failed to recuse when asked by parents after the potential conflict came to light.</u> The Model Code provides, "A State Administrative Law Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities." Cannon 2. IHO Noe compounded the error of failing to disclose her conflict by failing to recuse from the case when her relationship with Dr. Meagher was disclosed. Ex. IHO VI. Having failed to disclose her relationship with Dr. Meagher and having been asked to recuse because of that relationship she created the "appearance of impropriety."

34.     An "appearance of impropriety" exists whether or not Dr. Meagher worked on this case. There is certainly enough evidence to demonstrate there was

8

appearance of his involvement. See Tr. 30, 46-49. Ex. W, Ex. X, Ex. Y, Ex. Z, Ex. BB, Ex. CC, Ex. DD. Thus, even if there was no actual conflict, an "appearance of impropriety" existed.

35.     The "appearance of impropriety" is compounded by the DOE affidavits. IHO Noe issued the order for affidavits on March 24, 2014. Ex. O. The DOE affidavits are dated March 12, 2014 and March 14, 2014. Ex. 8 and Ex. 9. Thus, the DOE prepared and executed affidavits before parties were informed about the need for affidavits.

36.     The IHO failed to document extensions. The IHO failed to document extensions as required by regulations. 8 NYCRR § 200.5(5)(vi)(c). The IHO also failed to put the extension order(s) into evidence. 8 NYCRR § 200.5(5)(vi)(c).[4]

37.     IHO Noe refers to IHO exhibit documents in her decision, however, no list of IHO exhibits was appended. See Decision, pp. 2-3.

38.     The IHO failed to put the pendency order into evidence. A pendency hearing took place on October 4, 2013. See Tr. 1-6. The previous IHO issued a pendency order on October 29, 2013. IHO Noe failed to place the pendency order into evidence, contrary to regulations. 8 NYCRR § 200.5(5)(vi)(c); see Decision, pp. 10-11.

39.     The IHO failed to allow parents to record the impartial hearing. The IDEA provides that parents have "the right to a written, or, at the option of the parents, electronic verbatim record of such hearing." 20 U.S.C. § 1415(h)(3). At the April 11,

---

[4] The hearing request was filed on August 26, 2013 and IHO Noe was appointed March 6, 2014. Ex. A, Decision p. 2. Another IHO appeared at the October 4, 2013 and October 7, 2014 hearings. While IHO Noe cannot be faulted for failing to document extensions before she was appointed, she was the IHO who prepared the decision and accompanying evidence. As such she is at fault for failing to document what was available to her and failing to document extensions between March 6, 2014 and May 15, 2014. 8 NYCRR § 200.5(5)(vi)(c).

2014 hearing parents requested to make an independent recording of the impartial hearing. Tr. 14. This request was denied. Tr. 15. IHO Noe and counsel for parents engaged in a long colloquy about recording impartial hearing and at various times ordered parent's counsel to turn off his recording device. Tr. 14-20. IHO Noe eventually left the room while the hearing was still on the record. Tr. 20. When IHO Noe returned she stated that she would dismiss the matter with prejudice because of the failure to abide by her order to turn off the recording. Tr. 21. This was improper.

40.     The IHO changed her mind after issuing orders without application by either party. IHO Noe reversed herself and changed her mind after rulings numerous times. For example, on April 11, 2014 IHO Noe stated that she was dismissing the parents' due process complaint with prejudice due to their recording the hearing. Tr. 21. IHO Noe then reversed herself, without application, and issued an order scheduling the hearing for April 29, 2014. Ex. IHO V.

41.     At the hearing on April 29, 2014, IHO Noe stated that she would not accept the DOE's affidavits because they had not been disclosed to her prior to the hearing. Tr. 53-54. She stated that the documents would only be marked for identification. *Id.* When she wrote her decision these affidavits were admitted into the record. Decision, p. 11. Parents were not given the opportunity to cross-examine these witnesses. 8 NYCRR § 200.5(j)(3)(xii)(f).

42.     At the April 29, 2014 hearing, IHO Noe made several evidentiary rulings that she did not abide by. She stated that the DOE affidavits would be marked for ID. They were admitted. She stated that parent documents would not be admitted into evidence. They were admitted. Compare Tr. 44-51 with Decision, pp. 10-11.

43.     <u>The IHO ordered parties to submit testimony by affidavit.</u> The IDEA provides that parents have "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 USCS § 1415(h)(2).

44.     IHO Noe ordered parties to present testimony by affidavit. Ex. O; see Tr. 39; see also Ex. IHO VI, pp. 3-5. The order, while bathed in regulation (8 NYCRR § 200.5(j)(3)(xii)(f)), was illegal.

45.     Although an IHO may take testimony by affidavit, IHO Noe exceeded her discretion by ordering parties to present testimony by affidavit. 8 NYCRR § 200.5(j)(3)(xii)(f). The regulation states, "The impartial hearing officer may take direct testimony by affidavit in lieu of in-hearing testimony, provided that the witness giving such testimony shall be made available for cross examination." *Id.* The regulations note some powers that the IHO has and other authorities that an IHO may hold. 8 NYCRR § 200.5(j)(3). For example, the regulation "The impartial hearing officer may limit examination of a witness by either party whose testimony the impartial hearing officer determines to be irrelevant, immaterial or unduly repetitious." gives an IHO the power to limit examination when she deems the evidence irrelevant. Thus, the power lies inherently with the IHO upon her determination that the testimony is "irrelevant, immaterial or unduly repetitious." 8 NYCRR § 200.5(j)(3)(xii)(d). Whereas the authority with regard to affidavits is merely the authority to "take affidavits." 8 NYCRR § 200.5(j)(3)(xii)(f). Thus, the regulations only give an IHO the authority to take affidavits into evidence. There is no authority to order parties to submit affidavits as evidence.

46.     The regulations provide that parties **shall** have the opportunity to present evidence. 8 NYCRR § 200.5(j)(3)(xii). Therefore, the parents' **right** to present evidence

trumps the IHO's **ability** to take affidavits and an IHO cannot compel a party to present evidence by affidavit. The regulations also note that the student's right to due process cannot be limited by the regulations: Nothing in this section shall abrogate the right of an individual student with a disability to due process under Education Law section 4404. 8 NYCRR § 200.5(l)(3). Thus, the IHO exceeded her authority ordering parties to present affidavits.

47.     <u>The IHO accepted the DOE affidavits without providing parents with the opportunity to cross-examine witnesses</u>

48.     At the hearing the DOE put in two affidavits, by T. Biancoviso and M. Dimeni. Tr. 52-54.  IHO Noe stated that she would only accept the district affidavits for identification and then determine whether they were sent to the case manager. Tr. 55-56; see also Ex. IHO VI, p. 5, fn 1. The affidavits were marked as evidence in the decision. Decision 11. The regulation states, "The impartial hearing officer may take direct testimony by affidavit in lieu of in-hearing testimony, provided that the witness giving such testimony shall be made available for cross examination." 8 NYCRR § 200.5(j)(3)(xii)(f).

49.     Taking the affidavits without cross-examination was improper under the New York Regulations. Although the regulations state that an affidavit **may** be taken, the witness giving such testimony **shall** be made available for cross-examination. 8 NYCRR § 200.5(j)(3)(xii)(f). Neither witness was made available for cross-examination at the hearing.

50.     <u>The IHO prevented parents from presenting evidence.</u> The regulations provide "Each party shall have up to one day to present its case." 8 NYCRR §

200.5(j)(3)(xiii). Here parents were not given a day to present evidence. The regulations also provide that parties **shall** have the opportunity to present evidence. "The parents, school authorities, and their respective counsel or representative, shall have an opportunity to present evidence, compel the attendance of witnesses and to confront and question all witnesses at the hearing." 8 NYCRR § 200.5(j)(3)(xii). Therefore, the parents' right to present evidence trumps the IHO's ability to take affidavits and an IHO cannot compel a party to present evidence by affidavit.

51.    IHO Noe's intention to prevent parents from presenting testimony is demonstrated by her statement to the DOE representative, "This hearing won't take long. That's why I scheduled you for 2:00." Tr. 57. This case had disputes on all three prongs of the Burlington/Carter test. Parents' counsel submitted over twenty exhibits. The DOE submitted nearly ten exhibits. Decision, pp. 11-12. The only reason that the hearing would not "take long" was IHO Noe's preventing parents from presenting evidence.

52.    Parents' counsel stated, "[I]t's our contention that the may section of requesting affidavits is simply a may, and that Parents are ready to call witnesses for the testimony in this case." Tr. 40.

53.    IHO Noe prevented parents from placing into evidence emails that documented that Dr. Meagher was representing the DOE in this matter. Tr. 47-49. Her reason for failing to include the emails was that she was not a party to the emails. However, the email on its face noted that IHO Mary Noe was handling the case. Compare Tr. 47-49 with AA.

54.    At the conclusion of the parent's testimony IHO Noe ended the hearing without parent resting. Parents' attorney stated that she did not have another witness for

the day. She did not rest. IHO Noe adjourned the hearing and stated that parties would get

her decision. Tr. 76-77.

55.    <u>The IHO forced parents to seek new counsel.</u> The IDEA guarantees a

parent "the right to be accompanied and advised by counsel." 20 U.S.C. § 1415(h)(1). On

March 24, 2014, IHO Noe sent a prehearing order scheduling the hearing for April 11,

2014. Ex. O. That day, parents' counsel, requested an adjournment on two bases. First,

parents' counsel was scheduled to have surgery on March 28, 2014 and would not be

ambulatory for three weeks (i.e. from March 28, 2014 through April 18, 2014). Ex. R.

Second, counsel wanted additional time to prepare the affidavits. Ex. R. The order for

affidavits was submitted March 24, 2014, and ordered affidavits disclosed April 4, 2014,

seven days before the April 11, 2014 hearing. Ex. O. This gave parents' counsel only 11

days to prepare all affidavits, while she would undergo surgery. IHO Noe failed to grant

the adjournment. Ex. R.

56.    IHO Noe forced parents to find new counsel for the April 11, 2014

hearing. IHO Noe and Susan Luger, parents' advocate, disputed whether Ms. Gavronsky

and Mr. Fein were a firm. Compare IHO II, p. 3 and IHO IV with IHO III. Whether the

affiliation that both Ms. Gavronsky and Mr. Fein is a firm or a loose affiliation or no

affiliation since each has a separate affiliation with Ms. Luger is irrelevant. It is not

disputed that Ms. Gavronsky represented the parents during the 2012-2013 school year

and through this hearing up to the order for the April 11, 2014 hearing. See Ex. IHO III,

Ex. Q, Ex. X, Ex. BB. Tr. 1. It was unreasonable for IHO Noe to deny the adjournment,

which would have moved the hearing only one week, to April 18, 2014, when Ms

14

Gavornsky would be ambulatory. Thus, IHO Noe forced parents to obtain new counsel and incur those costs to avoid moving the hearing one week. This was unreasonable.

57.     <u>The IHO limited the parent's right to due process.</u> The regulations also note that the student's right to due process cannot be limited by the regulations: Nothing in this section shall abrogate the right of an individual student with a disability to due process under Education Law section 4404. 8 NYCRR § 200.5(l)(3).

58.     As described above, the IHO made numerous unethical and illegal decisions. This resulted in a decision being issued without a record. Although there are approximately 30 documents in evidence there is extremely limited substantive testimony and no cross-examination.

59.     Parents appealed the Decision to the New York State Review Office ("SRO") by Petition, dated June 19, 2014.

60.     The June 19, 2014 Petition alleged misconduct by IHO Noe.

61.     On July 8, 2014, parents initiated a new due process complaint related to the 2014-2015 school year.

62.     The records of the 2014-2015  proceeding have been provided to the State Review Office of the New York State Education Department, Appeal No. 14-145 and the DOE Case No. 151557. The record includes 23 Parent Exhibits, A through W, five DOE exhibits, 1 through 5, and two IHO exhibits I through II, a 182 page transcript, and other relevant documents.

63.     On July 14, 2014, IHO Noe was appointed to hear the impartial hearing of the child related to the 2014-2015 school year.

64.     Despite being asked to do so, IHO Noe failed to recuse herself from the 2014-2015 hearing.

65.     The IHO again acted irrationally and unreasonably and prevented the parents from presenting a record and violated the State Education Department Impartial Hearing Regulations and New York State Bar Model Code Of Judicial Conduct. Specifically:

      a.   The IHO failed to recuse; The IHO failed to recuse when asked by parents to recuse due to a professional conflict; The IHO failed to recuse when asked by parents due to her unreasonable decision she issued related to the 2013-2014 school year; The IHO failed to recuse even though there is an active investigation by the New York State Education Department over her failure to recuse during the 2013-2014 school year;

      b.   The IHO ruled in the Department of Education's favor even though it presented no testimonial evidence that the IEP was appropriate;

      c.   IHO Noe demanded affidavits.

66.     <u>The IHO failed to recuse</u>:

67.     The IDEA guarantees the right to an "impartial due process hearing." 20 U.S.C. § 1415(f). A *sine qua non* of an impartial due process hearing is that the hearing officer in fact be impartial.[5]

68.     The Model Code provides, "A State Administrative Law Judge Shall Avoid Impropriety And The Appearance Of Impropriety In All Activities." Canon 2.

---

[5] To that end the New York State Education Department requires that IHOs not have a "personal or professional interest which would conflict with his or her objectivity in a special education due process impartial hearing." Application for New York State Education Department Certification as a Special Education Impartial Hearing Officer, available online http://www.p12.nysed.gov/specialed/dueprocess/IHOannounce.htm (link checked June 2, 2014).

69.     Here there was an appearance of impropriety due to the failure of the IHO to recuse even though the parent had accused her of impropriety in the 2013-2014 hearing. Additionally, the appearance of impropriety due to her business relationship having written a book with Robert Meagher still existed. See Ex. S.

70.     <u>The IHO ruled in the Department of Education's Favor Without Evidence</u>:

71.     As described above, IHO Noe ruled that the DOE provided John with an appropriate program even though no one testified that the IEP was appropriate.

72.     <u>The IHO Demanded Testimony by Affidavit</u>:

73.     The IDEA provides that parents have "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 USCS § 1415(h)(2).

74.     IHO Noe ordered parties to present testimony by affidavit. See Ex. V, Ex. W, IHE Ex. I, IHO Ex. II. The order, while bathed in regulation (8 NYCRR § 200.5(j)(3)(xii)(f)), was illegal.

75.     Although an IHO may take testimony by affidavit, IHO Noe exceeded her discretion by ordering parties to present testimony by affidavit. 8 NYCRR § 200.5(j)(3)(xii)(f). The regulation states, "The impartial hearing officer may take direct testimony by affidavit in lieu of in-hearing testimony, provided that the witness giving such testimony shall be made available for cross examination." *Id.* The regulations note some powers that the IHO has and other authorities that an IHO may hold. 8 NYCRR § 200.5(j)(3). For example, the regulation "The impartial hearing officer may limit examination of a witness by either party whose testimony the impartial hearing officer determines to be irrelevant, immaterial or unduly repetitious." gives an IHO the power to

17

limit examination when she deems the evidence irrelevant. Thus, the power lies inherently with the IHO upon her determination that the testimony is "irrelevant, immaterial or unduly repetitious." 8 NYCRR § 200.5(j)(3)(xii)(d). Whereas the authority with regard to affidavits is merely the authority to "take affidavits." 8 NYCRR § 200.5(j)(3)(xii)(f). Thus, the regulations only give an IHO the authority to take affidavits into evidence. There is no authority to order parties to submit affidavits as evidence.

76.     The regulations provide that parties **shall** have the opportunity to present evidence. 8 NYCRR § 200.5(j)(3)(xii). Therefore, the parents' **right** to present evidence trumps the IHO's **ability** to take affidavits and an IHO cannot compel a party to present evidence by affidavit. The regulations also note that the student's right to due process cannot be limited by the regulations: Nothing in this section shall abrogate the right of an individual student with a disability to due process under Education Law section 4404. 8 NYCRR § 200.5(l)(3). Thus, the IHO exceeded her authority ordering parties to present affidavits.

77.     Although the IHO purported to permit testimony of witnesses by application. That was clearly untrue since she denied the application to allow the two witnesses to testify. See IHO Ex. II.

78.     IHO Noe issued a decision in the 2013-2014 case on August 18, 2014. The decision ruled in favor of the DOE.

79.     Parents appealed the August 18, 2014 decision to the SRO and that decision was settled between partied.

80.     On September 26, 2014, the SRO Carol H. Hague issued decision 14-090 addressing the 2013-2014 disputer. SRO Hague ruled in favor of the DOE and failed to find that IHO Noe engaged in misconduct.

81.     On January 16, 2015, parents appealed the September 26, 2014 decision to federal court. See *J.S. and R.S. v. New York City Dept. of Educ.*, et als., 15 cv 355 (S.D.N.Y).

82.     On January 16, 2014 the DOE was served in person. A DOE attorney has filed an appearance, but no answer has yet been filed.

83.     On January 21, 2015, the New York State Education Department was served by mail. On February 10, 2015 the New York State Education Department was voluntarily dismissed without prejudice from the federal action so that this appeal could go forward.

WHEREFORE, Petitioners respectfully request that the COMMISSIONER OF EDUCATION render a decision Ordering as follows:

Refer IHO Noe for an investigation by the Office of Special Education;

Order that IHO Noe shall not oversee an impartial hearing for John S. in subsequent years;

Adjust the rotational process for IHOs so that IHO Noe will not hear the case of John S. again and that if she is appointed pursuant to the rotational process that the next IHO in the rotation will be appointed.

Any and further relief the Commissioner of Education deems necessary.

State of New York                )
                    Ss           )
County of _New York_____         )


BEFORE ME, the undersigned Notary, on this __13__ day of February , 2015

personally appeared John█████, known to me to be a credible person and of lawful

age, who being by me first duly sworn, on her oath, deposes and says: I certify that the

foregoing statements in the Petition made by me are true.


_____

John█████


Subscribed and sworn to before me, this ___13_____ day of February , 2015.

_____
NOTARY PUBLIC

   My commission expires: __Aug. 22____, 20 15 .


Date:   February 17, 2015
        New York, NY

            BENJAMIN BARUCH AISEN
         Notary Public, State of New York
                No. 02AI6247140
           Qualified in New York County
         Commission Expires Aug. 22, 2015


21

State of New York            )
                     Ss      )
County of _New York_         )

BEFORE ME, the undersigned Notary, on this __13__ day of February , 2015

personally appeared Rosalie ██████ known to me to be a credible person and of lawful

age, who being by me first duly sworn, on her oath, deposes and says: I certify that the

foregoing statements in the Petition made by me are true.

_Rosalie Schwall_
Rosalie ██████

Subscribed and sworn to before me, this _____13_____ day of February , 2015.

_Ben Aisen_
NOTARY PUBLIC

My commission expires: __Aug. 22__ , 20 _15_ .

Date:   February _13_ , 2015
        New York, NY

BENJAMIN BARUCH AISEN
Notary Public, State of New York
No. 02AI6247140
Qualified in New York County
Commission Expires Aug. 22, 2015

22

Responses to this Petition should be sent to our counsel.

Lawrence D. Weinberg
Attorney for Petitioners,
John █████████ and Rosalie ████████

162 Williamson Ave.
Bloomfield, NJ 07003
973-748-3761
Fax: 718-228-5935

c/o Susan Luger Associates, Inc.
Special Education Advocates
155 West 72nd Street
Suite 201
New York, NY 10023
212-769-4644
Fax: 212-501-8090

lawrenceweinberg@gmail.com