# EXHIBIT "D"

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 151557 |
| Student's Name: | John ▮ |
| Date of Birth: | April 14, 2007 |
| District: | 31 |
| Hearing Requested By: | Parent |
| Date of Hearing: | August 8, 2014 |
| Actual Record Closed Date: | August 13, 2014 |
| Hearing Officer: | Mary Noe, Esq. |

Hearing Officer's Findings of Fact and Decision                                                                 1

Case No.  151557

**NAMES AND TITLES OF PERSONS WHO APPEARED ON AUGUST 8, 2014**

For the Student:

IRINA ROLLER, Attorney

JOHN ███████  Father

ROSALIE ███████  Mother

JAN PAUL PABLO, Teacher (Via Telephone)

DR. DIANE TARANTO, Director (Via Telephone)

DENISE LORELLI, School psychologist (Via Telephone)

GERALDINE REYES, OT (Via Telephone)

MINETTE SIDECO, PT (Via Telephone)

For the Department of Education:

JAMES SLAVIN, CSE Representative

Hearing Officer's Findings of Fact and Decision                                     2

Case No.  151557

_____

The parent, by their advocate, Susan Luger Associates, requested a hearing on July 8, 2014.  I was appointed on July 14, 2014 and scheduled a hearing for August 8, 2014.  A pendency order had been ordered on August 13, 2014.  The parents are represented by Irina Roller and the district was represented by James Slavin.  The parent's attorney requested that I recuse myself and my order has been entered as Exhibit I dated July 17, 2014.  The parent also requested that the parent and psychologist testify orally in lieu of affidavit.  My order addressing that application has been entered as Exhibit II dated July 24, 2014.

The student is a seven year old (dob 4/14/07) who is classified as Autism. (Exh. 1) He currently attends Seton Foundation for Learning.  (Exh. A)   The parent is requesting "… tuition reimbursement for their appropriate placement of their child at Seton Foundation"

"Reimbursement of tuition for the Seton Foundation from July 1, 2014 through June 30 2015 including reimbursement of monies paid to day and any payments made in the future."

"Door to door special education transportation/suitable transportation…."

"RSA's for related services from July 1, 2014, through June 30, 2015…." (Exh. A)

The parents are challenging the IEP dated April 10, 2014 which recommended 6:1:1 program in a special school (D 75), speech therapy 5 times per week 1:1 for 30 minutes and 1 time per week 3:1 for 30 minutes; occupational therapy 4 times per week 1:1 for 30 minutes; physical therapy 2 times per week 1:1 for 30 minutes; counseling 1 time per week 3:1 for 30 minutes; and Parent training twice a year for 50 minutes in a group.  (Exh. B)

At the time the IEP was created, during the school year 2013 – 2014, the student had seven children in his class, one teacher and one teacher's assistant in a special school. (T. 44, 64)  Four of the students had their own para-professionals.  (T. 48)  In the summer 2014, the student is in a class with six students.  Four students have health para-professionals.  (T. 46)  The student does not have his own individual para-professional. (T. 46)

Neuropsychological testing in December 2012 and January 2013 indicate the student's IQ score at 42, functioning at the extremely low range. (Exh. E)  In October 2013, the Neuropsychological Update indicated that the CELF-P-@ test was attempted however the student was unable to focus sufficiently to engage in testing and did not respond to any test items.  (Exh. F)

A Classroom Teacher/Student Evaluation dated March 31, 2014 by the student's teach Jan Paul A. Pablo has the following results:

The student is functioning below age expectancy according to the common core standards.  He has mastered the Dolch sight word list up through the 2nd grade level.  He can count to 20 without using manipulatives and identifies number 1-100 using flash cards.  The student can independently use the bathroom.  He can express his feelings with one or two word phrases "angry" or "mad."  He usually walks away from situations that he feels unsafe.  The student will follow directions such as sitting in a requested location within the classroom, throwing garbage away and doing classroom jobs with minimal redirection and prompts.  He will wait his turn during group activities.  He will stay within a group, but can get distracted and might wander away when he sees something he is greatly interested in, but will continue to stay with the group when asked to come back, especially within an unknown environment.  His Annual Goals included within one year, to increase his sign words to 50; improve his handwriting by properly forming letters and numbers; improve his ability to answer questions regarding personal information; will initiate play with another student; will improve his ability to answer what questions regarding the function of items; will understand the 5 senses.  (Exh. K)

The student's physical therapy progress report is undated but indicates the student is 7 years old.  The student requires continuous verbal and manual prompts, redirection and repetition to refocus and complete tasks presented.  He has difficulty doing some ball activities such as catching, throwing and kicking.  Stair negotiations are independent.  Ms. Sideco states she provides physical therapy at Seton twice a week for 30 minutes in a physical therapy room provided by the Seton Foundation.  (Exh. L)

Ms. Geraldine Reyes provided occupational therapy at Seton twice a week during

the 2013 – 2014 school year in a separate location, a sensory gym and sensory equipment. Ms. Reyes states in her affidavit she uses sensory interventions such as deep pressure, joint compressions, message, and manipulation of messy textures to improve focus and the student's ability to regulate behaviors in response to his environment.  Fine motor activities to develop age level grasp and endurance for academic writing tasks, manipulation of clothing fasteners, opening containers to increase self help.  (Exh. M)

In a letter dated April 12, 2014 from the parent to the Chairperson CSE 7, the parent stated "the recommended program does not provide adequate individualized attention and supports for [the student] in order to meet his special education needs." (Exh. Q)

In a letter dated June 24, 2014 from the parent to the Chairperson CSE7, the parent stated "The lunchroom, which is used as multi purpose facility is too large and overcrowded, creating an environment where [the student] can become anxious and distressed.  The classroom is too compact….This compact size also does not allow periodic rests, rewards, or the freedom to engage in activities that can calm him during times of frustration and agitation.  There was no discussion about the educational program, leaving me uncertain about the appropriateness of the curriculum for my son. The Therapy rooms were too small and being simultaneously used by multiple children, creating an environment that would cause [the student] to be distracted during one to one therapy." (Exh. R)

In the parent's affidavit *in lieu* of testimony, the parent states "The program at Seton is meeting all of John's needs because he benefits from the ABA methodology used at Seton, their quiet school and classroom environment and their collaborative team approach."  The parent states that at the April 2014 CSE meeting there was no physical therapist, occupational therapist or speech therapist.  The parent visited the school placement and wrote to the CSE explaining why it was not appropriate.  (Exh. S)

At the hearing on August 8, 2014, the parent testified "I think a 6:1:1 framework is appropriate for him, yes." (T. 165)  The parent toured the school "for an hour and a half…." (T. 166)  The parent testified that the therapy rooms were "small and they

Hearing Officer's Findings of Fact and Decision                                                5

Case No.  151557

accommodated 6 to 7 children at a time…." "There was a lunchroom that's a multi-purpose room - a gym, a lunchroom and an auditorium, one big--one room for everything." (T. 167).

When asked whether the proposed school informed the parent if they could provide the related services and the 6:1:1 class, the parent responded "yes." (T. 169) When asked about any equipment necessary for PT/OT that would be required, the parent responded "No she didn't." (T. 170)

When asked why the district's recommendation was not appropriate, the parent replied:

> "There are a number of reasons. I thought that the multipurpose room was not--is not good for [the student] and his sensory issues. That's where the children gather in the morning. Lunch is combined with many, many children and that would just send him into a sensory overload and that would be one reason why. The second is I thought the therapy rooms were very small and serviced too many children at the same time for [the student]. He wouldn't be able to focus properly. Also, the traditional classrooms, Ms. DiNinni told me that they were classrooms that had been cut in half to service, so it was a classroom cut in half to service two separate classes, and you could hear what was going on in both classrooms and I thought that that would be a disturbance for John as well." (T. 171)

PROCEDURAL AND SUBSTANTIVE ARGUMENTS

According to the complaint, the parent was in disagreement with the program the district recommended because it was inappropriate for the student. (Exh. A)

The complaint indicates that the IEP was substantively and procedurally flawed and therefore deprived the student of a FAPE.

In paragraph number "d", the parent claims none of the related service providers were present…. I find no such error in the CSE team as constituted at the IEP meeting, Thereesa Biancoviso "Related Service Provider/Special Education Teacher signed the attendance page. (Exh. 1)

New York State law provides that a CSE shall include "persons having knowledge or special expertise regarding the student, including related services personnel as appropriate, as the school district or the parent(s) shall designate. The determination of

knowledge or special expertise of such person shall be made by the party (parents or school district) who invited the individual" (8 NYCRR 200.3[a][1][is]).  The following persons signed the Attendance Page of the IEP: related service provider Theresa Biancoviso, parent, district representative Catherine Ferrer, classroom teacher J. Pablo, Parent representative Tom Feols  (Exh. 1)  I find the CSE team was proper.

Parent's complaint does not request a change in the related services.  During the school year 2013 – 2014, the occupational therapist provided the student with services twice a week and not four times a week as required on the IEP mandate.  (T. 138)

The IEP requires the student receive counseling one time per week for 30 minutes.  There was no testimony that counseling was provided to the student during the 2013 – 2014 school year..

Parent's complaint claims that the IEP fails to sufficiently identify the student's present levels of functional performance and include corresponding goals required to address the student's identified needs.

A review of the IEP "ACADEMIC ACHIEVEMENT FUNCTIONAL PERFORMANCE AND LEARNING CHARACTERISTICS" is contrary to the allegation claimed and indicates the student's level of achievement.  (Exh. 1)  The parent's teacher testified that he provided the information that is memorialized on the IEP.  (T. 70 -72)

The Parent's disagreement with the proposed program in her testimony is somewhat inconsistent with her letters and the complaint.  The parent testified at the hearing that she agreed with the 6:1:1 program and related services but was not in agreement with the proposed school. (T. 165, 167, 171)

 "Educational placement" refers to the general educational program—such as the classes, individualized attention and additional services a child will receive—rather than the "bricks and mortar" of the specific school.  T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 419 (2d Cir. 2009).

The parent testified that the school had a 6:1:1 class and could provide the related services on the IEP. (T. 169)

Parent's counsel in her brief argues that "The DOE rested on a few documents submitted into evidence without any witnesses or witnesses affidavits.  Therefore the DOE has failed to meet their burden on Prong I"

The parent's testimony that a 6:1:1 program with the related services were an appropriate program for the student undermines parent's claim that the program is inappropriate.  There was no testimony or evidence to support a claim that the proposed New York City Department of Education program was substantially different than the Seton School program.

The occupational therapist testimony indicated that her therapy with the student consisted of deep pressure, joint compressions, message, and manipulation of messy textures to improve focus and the student's ability to regulate behaviors in response to his environment.  Fine motor activities to develop age level grasp and endurance for academic writing tasks, manipulation of clothing fasteners, opening containers to increase self help.  Ms. Reyes provided the following description of the sensory gym.  "It's a therapy room that has a ball pit, a mat, and other sensory equipment. It also has a table that's appropriate height for [the student] for doing his writing with--there're dividers to decrease the distraction if there's any other kids in the room with the other therapists, but usually I'm there with him on a one, by myself." (Exh. M, T. 128)   There is no support to believe that items such as a ball pit, mat, table as described could not be provided for the student.

The parent testified that she was informed that the recommended related services on the IEP could be provided.  (T. 169)

I find no merit to the other claims in the complaint.  There was no testimony or evidence to support the allegations listed.  IDEA instructs that an IEP is procedurally inadequate where the procedural deficiencies 1 "impeded the child's right to a free appropriate public education," 2.  "significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education," or 3.  "caused a deprivation of educational benefits."  20 U.S.C. §1415(f)(3)€(ii).

The parents allege that the IEP is substantively inadequate. This argument is the least persuasive when comparing the IEP recommendation with the Seton program, almost identical with the district's recommended program and providing for additional services.

The parents submit a Neuropsychological Evaluation dated December 2012, January 2013. (Exh. E)  At the time, the student was attending a 6:1:1 class.  Dr. Robinson finds that the classroom placement (6:1:1) allows for an appropriate level of support. (Exh. E-8)  I find the additional recommendations are consistent with the IEP.

Based on my findings, the parent's request is denied.

Dated:  August 18, 2014

*Mary Noe, Esq. gc*
MARY NOE, ESQ.
Impartial Hearing Officer

MN:gc

**PLEASE TAKE NOTICE**

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website:  **www.sro.nysed.gov/appeals.htm.**

Hearing Officer's Findings of Fact and Decision                                                10

Case No.  151557

---

## DOCUMENTATION ENTERED INTO THE RECORD

### PARENT

| | |
|---|---|
| A | Hearing Request, 7/8/14, 10 pages |
| B | IEP, 4/10/14, 19 pages |
| C | Findings of Fact and Decision, 3/28/13, 21 pages |
| D | Seton Program Description, undated 3 pages |
| E | Neuropsychological, 2012/2013, 13 pages |
| F | Neuropsychological, October 2013, 3 pages |
| G | Affidavit of D. Taranto, 7/24/14, 9 pages |
| H | Summer Class Schedule, 2014, 1 page |
| I | Enrollment Contract, 6/30/14, 4 pages |
| J | Proof of Payment, 6/30/12, 2 pages |
| K | Student Evaluation, 3/31/14, 7 pages |
| L | Affidavit of M. Sideco, July and April 2014, 7 pages |
| M | Affidavit of G. Reyes, 7/30/14, 8 pages |
| N | Speech Report, 3/30/14, 8 pages |
| O | Affidavit of D. Lorelli, 8/4/14, 4 pages |
| P | Affidavit of J. Pablo, 8/14/14, 6 pages |
| Q | Parent's Correspondence to CSE, 4/12/14, 2 pages |
| R | Parent's Correspondence to CSE, 6/24/14, 2 pages |
| S | Affidavit of Parent, 8/1/14, 4 pages |
| T | Affidavit of Speech Therapist, 7/25/14, 3 pages |
| U | Opening Statement, 8/4/14, 6 pages |
| V | E-mail Correspondence, 7/16/14 and 7/24/14, 8 pages |
| W | E-mail Correspondence, Pre-Hearing Order, 6 pages |

### DEPARTMENT OF EDUCATION

| | |
|---|---|
| 1 | IEP, 4/10/14, 26 pages |
| 2 | School Location Letter, 5/30/14, 2 pages |
| 3 | Speech Report, 3/20/14, 8 pages |

| | |
|---|---|
| 4 | OT Report, undated, 5 pages |
| 5 | Neuropsychological, 1/26/13, 12 pages |

<u>IMPARTIAL HEARING OFFICER</u>

| | |
|---|---|
| I | Order, 7/17/14 |
| II | Order, 7/24/14 |