# EXHIBIT "E"

## FINDINGS OF FACT AND DECISION

Case Number:               156193

Student's Name:            John ███████

Date of Birth:             April 14, 2007

District:                  31

Hearing Requested By:      Parent

Date of Hearing:           July 23, 2015
                           February 8, 2016

Actual Record Closed Date: February 29, 2016

Hearing Officer:           Helene Peyser, Esq.

Hearing Officer's Findings of Fact and Decision                                   1

Case No.  156193

---

**<u>NAMES AND TITLES OF PERSONS WHO APPEARED ON JULY 23, 2015</u>**:

<u>For the Student</u>:

LAWRENCE WEINBERG, Attorney

<u>For the Department of Education</u>:

DR. ROBERT MEAGHER, Chairperson's Designee CSE 7

**<u>NAMES AND TITLES OF PERSONS WHO APPEARED ON FEBRUARY 8, 2016</u>**:

<u>For the Student</u>:

ROSALIE ███████ Mother

JOHN ███████ Father

LAWRENCE WEINBERG, Attorney

DIANE TARANTO, Director of Seton Foundation for Learning Elementary School (by phone)

DENISE LORRELLI, Seton School Psychologist (by phone)

<u>For the Department of Education</u>:

JAMES SLAVIN, CSE 7 Representative

Hearing Officer's Findings of Fact and Decision                                   2

Case No.  156193

_____

**Introduction**

This matter comes before the undersigned Hearing Officer on Petitioners' Notice of Due Process Complaint, filed on or about July 1, 2015 (hereinafter, "Complaint").   I was appointed shortly thereafter.  A pendency hearing was held in this case on July 23, 2015 and a Pendency Order was issued on July 27, 2015.  Two prehearing conferences were held in this matter.  The first prehearing conference was held on August 6, 2015 and the second prehearing conference was held on November 10, 2015.  Five extensions of the compliance date were granted in order to accommodate settlement negotiations, the availability of parties and witnesses, and the receipt of transcripts.

The due process hearing was held on February 8, 2016.  It was a closed hearing. Petitioner was represented by Lawrence Weinberg and Respondent was represented by James Slavin.  Petitioner entered into evidence exhibits A thru O.  Respondent entered into evidence exhibits 1 thru 4.

**Jurisdiction**

The due process hearing was held, and a decision in this matter is being rendered, pursuant to the Individual with Disabilities Education Act (hereinafter, "IDEA"), 20 U.S.C. § 1400 *et seq*., and its implementing regulations, 34 C.F.R. § 300 *et seq*., and the New York State Education Law, Educ. Law § 4404 *et seq*., and its implementing regulations, 8 NYCRR § 200.5 *et seq*.

**Background**

The parent of John Schwall filed a due process complaint asserting that the District had failed to provide John with a free appropriate public education (FAPE) for the 2015/16 school year.  Parent requested an impartial hearing seeking relief in the form of tuition reimbursement for the costs of Parent's unilateral placement of John at the Seton School.  Additionally, Parent is seeking reimbursement for the cost of the related services and/or RSAs from July 1, 2015 through June 30, 2016.  (Parent Exhibit A, page 7).

Hearing Officer's Findings of Fact and Decision                                    3

Case No.  156193

_____

Discussion was had at the onset of the hearing regarding two procedural issues presented by the District.  Firstly, District made a Motion to Dismiss based upon Rule 68 of the Federal Rules of Evidence (Transcript page 46).  District presented an offer of settlement that it made on January 6, 2016 (District Exhibit 4) and contended that since the offer satisfied all of the requested relief Parent had asked for in their Due Process Complaint (except attorneys fees) the case should be dismissed.  Parent argued that Federal Rule of Evidence 68 did not apply to this case and suggested that a Stipulation and Order was more appropriate than a dismissal of the case as Parent was concerned not only about the attorney fees but also about the pendency rights that had already been put into place for John Schwall (Transcript pages 50-51).

As a general rule, the technical rules of evidence do not apply in administrative hearings unless the enabling statute specifies otherwise.  The Individuals with Disabilities Education Improvement Act (IDEA) does not provide specific guidance on evidentiary standards suggesting that while the Federal Rules of Evidence are a guide, they are not binding on Impartial Due Process Hearings under the IDEA.  Further, New York has not adopted specific evidentiary standards for impartial due process hearings. Hence, both the IDEA and New York leave evidentiary decisions within the discretion of the impartial hearing officer.

This hearing officer, understanding that the IDEA encourages and envisions meaningful and productive ongoing relationships between Parents and Districts, entertained discussions of settlement at the hearing.  See 20 U.S.C. §1400 (c) (8).  Those discussions were not productive and revealed that Parents wished to pursue their due process right to an impartial due process hearing.  This hearing officer finds that as Federal Rule 68 is not binding on the case at hand and, further, that as a dismissal of this case based upon Federal Rule 68 would deprive Parent of their due process rights to an impartial hearing under the IDEA, the District's Motion to Dismiss is DENIED.

The second issue District presented at the onset of hearing was a request to adjourn the hearing based upon the fact that the date of the hearing was the Chinese Lunar New Year, a day closed on the DOE school calendar, and District was unable to procure

Hearing Officer's Findings of Fact and Decision                                    4

Case No.  156193

_____

witnesses to present their case (Transcript page 74).   District had made the same
adjournment request via email a few days before the hearing and had been notified prior
to hearing that the request was denied. New York regulations provide that "Absent a
compelling reason or a specific showing of substantial hardship, a request for an
extension shall not be granted because of vacations, a lack of availability resulting from
the parties' and/or representatives' scheduling conflicts, avoidable witness scheduling
conflicts or other similar reasons." 8 NYCRR § 200.5 (j) (5) (iii).   The IHO office was
open and conducting hearings on the Chinese Lunar New Year.  Also of note, the DOE
calendar was published prior to the beginning of the school year and the date of the
hearing was past the mid-point of the school year.

The scheduling of this case has a history of undue delay as evidenced by five
extensions to the compliance date and a prior adjournment made based upon a
misunderstanding of the status of settlement negotiations between the parties.  After many
months of delays, on January 6, 2016 Parent offered ten dates upon which they were
available to proceed to hearing.  On the same day, this hearing officer responded that four
of the dates offered by Parent were available on the hearing officer's calendar as well.  On
January 7, 2016 the District chose the date of the hearing (February 8, 2016) from
amongst the four choices offered to them by both Parent and hearing officer. (IHO
Exhibit I).  Hence, in actuality, the District made the final decision on which date the
hearing would occur.  As District chose the date of the hearing from a selection of dates,
and as the date of the hearing was past mid-year (giving the District plenty of time to
acquaint itself with the 2015-16 DOE calendar), this hearing officer found any witness
scheduling difficulty was avoidable and found it unreasonable to further delay Parent's
due process rights based upon District's failure to consult it's own calendar.  Hence, the
District's adjournment request was DENIED.

The District did not present an affirmative case at hearing nor did it present any
witnesses to testify at hearing.

_____

**Finding of Facts**

    After considering all the evidence, as well as the arguments of both parties, this Hearing Officer's Findings of Fact are as follows:

1. John Schwall is an eight-year-old student who attends Seton Foundation for Learning (Seton).  John has attended Seton since he was three-years-old. (Parent Exhibit A, page 2).

2. John has a disability classification of "Autism" (Parent Exhibit G, page 1).

3. The Department of Education CPSE previously placed John at Seton for the 2011/12 school year (Transcript page 162), and Seton was found to be appropriate in 2012-13 (Parent Exhibit B, page 17).

4. John has been placed unilaterally by his parents at Seton for the past five years (ages 3-8).

5. John's program at Seton is individualized in terms of math, reading, decoding, reading comprehension, language skills, emotional self-awareness and socialization (Testimony of Ms. Taranto, Transcript pages 97-108).

6. Seton created an individualized program so as to move John from a more restrictive classroom to a less restrictive classroom (Testimony of Ms. Taranto, Transcript page 109-110).

7. John's teacher at Seton is a New York State certified teacher with a Master's degree in special education (Testimony of Ms. Taranto, Transcript page 94).

8. John Schwall needs an Applied Behavior Analysis (ABA) program in order to make educational progress (Testimony of Ms. Lorelli, Transcript page 135, 144; Testimony of Ms. Taranto, Transcript page 110; Testimony of Rosalie Schwall, Transcript page 161).

9. The American Medical Association prescribes ABA for John's disability (Testimony of Ms. Lorelli, Transcript page 149).

10. The Seton School provides ABA programming.  John's ABA program at Seton has been specifically designed for him.  (Testimony of Ms. Taranto, Transcript page 108,109).

Hearing Officer's Findings of Fact and Decision                                6

Case No.  156193

_____

11. John has made meaningful educational progress at Seton. (Testimony of Ms. Taranto, pages 97-111; Testimony of Ms. Lorelli, pages 135-142).

12. Related services are provided at Seton through either contractual agencies or RSA providers who work on site in the Seton building.  The Seton building has a physical therapy gym, an occupational therapy suite containing a sensory room and a fine motor room, and a speech room.  Seton provides necessary materials and sensory tools to the related service providers.  (Testimony of Ms. Taranto, Transcript page 91-2).

13. Parent participated and cooperated at the CSE meeting of May 20, 2015 (Testimony of Ms. Schwall, Transcript page 160).

14. The IEP dated May 20, 2015 did not recommend an ABA program for John Schwall (Parent Exhibit G, page 12).

15. P.S. R373, the CSE placement recommended for John Schwall, does not provide an ABA program. (Testimony of Ms. Schwall, Transcript page 172-3).

16. On June 24, 2015 Parent visited P.S. R373, the placement recommended for John by the CSE. (Parent Exhibit K, page 3).  Parent visited classrooms, the multipurpose lunchroom, therapy rooms and asked questions about methodologies that would be used to teach John (Testimony of Ms. Schwall, Transcript pages 165-70, 173).

17. Parent found P.S. R373 to be an inappropriate placement for John.  (Testimony of Ms. Schwall, Transcript page 163).

18. Parent wrote three different letters (dated May/June 2015) to the District expressing Parent's concerns, indicating Parent's willingness to consider CSE placements, and notifying the District of Parent's intent to seek tuition reimbursement for the unilateral placement of John at Seton.  (Parent Exhibit K).

_____

**Issue**

Did the District provide a free appropriate public education to John Schwall?  If not, was Parent's placement of John at Seton appropriate, and if so, do the equities favor tuition reimbursement to the Parent for the cost of their unilateral placement of John at Seton?

**Conclusions of Law and Discussion**

Based upon the above Findings of Fact, the arguments of both parties, as well as this Hearing Officer's own legal research, the Conclusions of Law of this Hearing Officer are as follows:

The central mandate of the IDEA requires that States provide a "free appropriate public education" (FAPE) to students with disabilities (34 C.F.R. §300.101).  Districts fulfill this mandate by developing individualized education programs (IEP) that are uniquely designed to meet the needs of students with disabilities and are provided at no cost to parents.   The standard which determines whether an IEP placement recommendation is appropriate for a student with a disability was established by the Supreme Court in *Hendrick Hudson Bd. Of Educ. V. Rowley*, 458 U.S. 176, 553 IDELR 656 (1982), wherein the court asked if the state had complied with the IDEA's due process procedures and if the IEP was reasonably calculated to enable the child to receive "educational benefit." If the answer to both of those questions is affirmative, then the placement is appropriate and the FAPE requirement of the IDEA has been met.

In some cases, Parents feel that the IEP developed by the District and the resulting placement is inappropriate for their child. If, as such, a parent feels that the District has denied their child with a disability a FAPE, "parents may unilaterally reject.. in favor of sending their child to a private school and seek tuition reimbursement from the State." *T.K. v. N.Y.C. Dept. of Educ.*, 2016 WL 229842 at *3(2d Cir. 2016) (citing 20 U.S.C. 1412(a)(10)(C)(ii)).   When a parent chooses to avail themselves of this right (to unilaterally place their child and seek tuition reimbursement), a three-part analysis of the facts of their case must be performed before tuition reimbursement may be awarded.

_____

In *School Committee of Burlington v. Dept. of Educ. Of Massachusetts*, 471 U.S.359 (1985*)* the Supreme Court set out the required three-part analysis as follows: First, has FAPE been provided to the student with a disability (in other words, was the District's proposed placement appropriate?); second, if FAPE was denied, then was the Parent's unilateral placement of their child with a disability appropriate (did it provide educational benefit?); and, finally, do the equities support the parent's claim for tuition reimbursement?

The burden of proof shifts between the three stages of the above-outlined analysis. The initial burden of proving whether an IEP has satisfied the *Rowley* test, and hence that it is appropriate and provides a FAPE to the student with a disability, falls upon the local educational agency (in our case the District) in New York State.  The burden of proof then shifts, however, to the Parent (in unilateral placement cases when they seek tuition reimbursement) as they must prove their unilateral placement is an appropriate placement of their child under N.Y. Educ. Law Art. §4404 (c)(1). Finally, the Hearing Officer must weigh the equitable factors presented by both parties in the case – such as the satisfaction of notice requirements and other reasonable behaviors – to assess whether reimbursement is warranted.

## I.      Has The District Met Its Burden Of Proving That It Provided A FAPE To Student?

District did not present an affirmative case at hearing.  After making an opening statement declaring that it had provided John Schwall with a FAPE, District then failed to produce any witnesses to discuss the details of it's proposed placement of John or defend the IEP recommendations it had developed for John.  Further, District did not submit into evidence anything beyond the proposed IEP, a school location letter, a brief (one page) observation letter, and a letter offering a settlement to John Schwall's parents. Under the *Rowley* standard, the District was required to prove that its IEP was reasonably calculated to confer educational benefit to John Schwall.  This hearing officer was unable to ascertain that the standard was met based solely upon the one brief observation letter entered into evidence reflecting one episode in John's classroom.

Hearing Officer's Findings of Fact and Decision                                                    9

Case No.  156193
_____

Not one member of the District's IEP team testified either in person, on the phone, or by affidavit about the details of John's disability and how his needs were met in the IEP. In contrast, two witnesses testified on Parent's behalf regarding John's disability and his need for ABA to make educational progress.   The witnesses were both credible, knowledgeable in their fields, and had very specific knowledge of John.  Parent testified that she requested that ABA be put on John's IEP and the District refused.  Parent further testified that she visited the District's recommended school and inquired if they use ABA and was told no.  The District offered no concrete answer as to why Ms. Schwall's request for ABA on John's IEP was denied other than that the DOE doesn't do that.  The IDEA "does not require that a parent's view need only be considered if it is consistent with available public offerings" *E.H*. *v*. *NYCDOE* (SDNY, 2/16/16, at 28).

This hearing officer finds that based upon District's failure to present an affirmative case at hearing addressing John Schwall's individual needs and proving how the District's IEP was specifically designed to meet those needs to confer educational benefit, the District has failed to meet it's burden of proof that a FAPE was provided to John Schwall.

## II.    Was the Parent's Unilateral Placement of John Schwall at Seton Foundation for Learning Appropriate?

The Department of Education CPSE previously placed John at Seton for the 2011/12 school year (Transcript page 162), and Seton was found to be appropriate in 2012-13 (Parent Exhibit B, page 17).  John has attended Seton since that time (ages 3-8).

The Director of Seton, Ms. Taranto, testified at hearing that John's program at Seton is individualized in terms of math, reading, decoding, reading comprehension, language skills, emotional self-awareness and socialization (Testimony of Ms. Taranto, Transcript pages 97-108).  Ms. Taranto has worked with children with disabilities for over 20 years, she has been an assistant professor of special education at Hunter College, and was the chair of the New York City Council Task Force on Autism.  This hearing officer found Ms. Taranto to be a credible witness with specific knowledge of John Schwall and extensive knowledge in her field.  It was Ms. Taranto's opinion that John

Hearing Officer's Findings of Fact and Decision                                                          10

Case No.  156193
_____

Schwall was unable to make meaningful educational progress without ABA (Transcript page 110).  Ms. Taranto explained that John "doesn't learn without that type [ABA] of structure.  He needs specificity of that instruction [ABA] and that systematic level of prompting and prompt fading, and he really needs the high rates of reinforcement in order to motivate him and to increase his attention to the material and the task…to learn."   In explaining the details of John's individualized program at Seton Ms. Taranto focused on the use of ABA with John and how it enabled John to learn – for example, in teaching John decoding in reading they use a data driven program to analyze what concepts John has mastered and where he is specifically struggling and needs repetition to progress (Transcript page 99). Ms. Taranto further testified at hearing that Seton created an individualized program so as to move John from a more restrictive classroom to a less restrictive classroom successfully (Testimony of Ms. Taranto, Transcript page 109-110). Additionally, at Seton John's teacher is a New York State certified teacher with a Master's degree in special education (Testimony of Ms. Taranto, Transcript page 94).

John has made meaningful educational progress at Seton. (Testimony of Ms. Taranto, pages 97-111; Testimony of Ms. Lorelli, pages 135-142).  It was this hearing officer's impression that Petitioner's three witnesses credited that progress to ABA as they each separately stated that John needs an ABA program in order to make educational progress (Testimony of Ms. Lorelli, Transcript page 135, 144; Testimony of Ms. Taranto, Transcript page 110; Testimony of Rosalie Schwall, Transcript page 161).  Petitioner also presented that the American Medical Association prescribes ABA for John's disability (Testimony of Ms. Lorelli, Transcript page 149).   The Seton School provides ABA programming.  John's ABA program at Seton has been specifically designed for him. (Testimony of Ms. Taranto, Transcript page 108,109).

John currently receives his IEP related services under Pendency Order at Seton (Transcript page 116).  A specific schedule was drawn up for John so that he could be pulled out to receive his related services at optimal times (Transcript page 127).  Related services are provided at Seton through either contractual agencies or RSA providers who work on site in the Seton building.  The Seton building has a physical therapy gym, an

occupational therapy suite containing a sensory room and a fine motor room, and a speech room.   Seton provides necessary materials and sensory tools to the related service providers.  (Testimony of Ms. Taranto, Transcript page 91-2).

As John Schwall's educational program at Seton was specifically designed to address his unique individual needs and has provided meaningful educational benefit, this hearing officer finds Parent's unilateral placement of John at Seton appropriate.

## III.  <u>Do the Equities Support Parent's Claim for Tuition Reimbursement</u>?

Parent testified that she attended and participated in the CSE meeting of May 20, 2015.  She further testified that she asked for the CSE to recommend ABA for John on his IEP but was refused (Transcript page 160). Parent asserted that she was prepared to send John to a public program if she felt it was appropriate, and what made a program appropriate in her opinion was the provision of ABA for John (Transcript page 163). Incidentally, Parent holds a Master's degree in special education (Testimony of Ms. Schwall, Transcript page 164) making her especially qualified as a parent to render an educated and informed decision regarding the appropriateness of a special education program for John.

Parent visited the recommended site on John's School Location Letter, P.S. R373 Henderson School, and found it inappropriate for her child.  She outlined in a letter dated June 25, 2015 (Parent Exhibit K) the many detailed reasons behind her finding that P.S. R373 was inappropriate.  Parent notified the CSE via three different letters sent in May and June of 2015 of her concerns regarding the IEP and her intent to unilaterally place John at Seton for the 2016-2016 school year and seek tuition reimbursement at DOE expense.

District failed to prove that Parent had behaved unreasonably during the IEP process or that Parent had failed to satisfy the consent and notice requirements under the IDEA.   In contrast, Parent submitted evidence and testimony outlining their participation, cooperation, and satisfaction of their legal obligations. Hence, this hearing officer finds that the equities support the Parent's claim for tuition reimbursement for the costs of their unilateral placement of John at Seton.

Hearing Officer's Findings of Fact and Decision                                    12

Case No.  156193

_____

**ORDER**

      As the District failed to meet its burden of proving that it had provided John Schwall with a free appropriate public education, and as Parent has proven that their unilateral placement of John at Seton Foundation for Learning is appropriate, and as the equities support reimbursement to the Parent for the cost of John's placement at Seton, it is HEREBY ORDERED that the District shall:

1. Reimburse the Parents for John's tuition at Seton from July 1, 2015 through June 30, 2016, upon presentation of proof of payment thereof, and

2. Reimburse the Parent for the cost of John's related services from July 1, 2015 through June 30, 2016, upon presentation of proof of payment thereof, and through RSAs for the remainder of the 2015/16 school year.

      SO ORDERED.

Dated:  March 11, 2016

*Helene Peyser, Esq. gc*
HELENE PEYSER, ESQ.
Impartial Hearing Officer

HP:gc

Hearing Officer's Findings of Fact and Decision                                    13

Case No.  156193
_____

**PLEASE TAKE NOTICE**

      **Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

      **"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.**

      **Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website:  www.sro.nysed.gov/appeals.htm.**

Hearing Officer's Findings of Fact and Decision                                    14

Case No.  156193
_____

DOCUMENTATION ENTERED INTO THE RECORD

PARENT:

A        Impartial Hearing Request, 07/01/2015, 9 pages

B        Findings of Fact and Decision, 05/28/2013, 21 pages

C        IEP, 04/16/2012, 15 pages

D        Stipulation of Agreement and Settlement, 2014-2015, 11 pages

E        Order of Pendency, 2014-2015, 6 pages

F        Order of Pendency, 2013-2014, 5 pages

G        IEP, 05/20/2015, 18 pages

H        Seton Foundation Quarterly Progress Report, May 2015, 6 pages

I        Neuropsychological Evaluation, 01/31/2013, 12 pages

J        Neuropsychological Update, 10/24/2013, 3 pages

K        Parent Correspondence to CSE, 05/22/2015, 06/18/2015, 06/25/2015, 4 pages

L        School Location Letter, 05/30/2014, 1 page

M        School Contract, 09/09/2015, 5 pages

N        Proofs of Payment/Affidavit, 09/09/2015, 1 page

O        Schedule, Undated, 1 page


DEPARTMENT OF EDUCATION:

1        IEP, 05/20/2015, 23 pages

2        School Location Letter, 06/01/2015, 1 page

3        Classroom Observation, 06/12/2014, 2 pages

4        Settlement Letter, 01/2016, 1 page


IMPARTIAL HEARING OFFICER EVIDENCE:

I        Emails between the Parties, 01/06/16 and 01/07/16, 3 pages