# EXHIBIT "F"

STATE REVIEW OFFICE
NEW YORK STATE EDUCATION DEPARTMENT

In the Matter of the Appeal of the Parents of JOHN S.,
Petitioners,                                                    **VERIFIED PETITION**

Vs.                                                             IHO No.
                                                               SRO No.

THE DEPARTMENT OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK,
Respondent

From a Hearing Officer's Finding of Fact and Decision.

---

Petitioners, Rosalie S. and John S., the Parents of John S., a child with a

disability, by their undersigned counsel, Lawrence D. Weinberg, hereby appeal the

Findings of Fact and Decision by the Impartial Hearing Officer, Mary Noe, Esq. (the

"IHO"), dated August 18, 2014 (the "Decision") in the above in the above referenced

matter and allege as follows:

Parties

    1.    Petitioners, Rosalie S. and John S., ("parents" or "Petitioners"), are the

parents of John S., a child with a disability (the "child").

    2.    Respondent, the Department of Education of the City School District of

the City of New York ("DOE"), is a municipal corporation, created pursuant to the

Article 52—A of the New York State Education Law. N.Y. Educ. Law §§ 2590 et. seq.

(McKinney 2006).

    3.    The DOE, in accordance with the Individuals with Disabilities in Education

Act ("IDEA") and Article 89 of the New York State Education Law, is responsible for

providing a free and appropriate public education ("FAPE") to New York City resident

students, between the ages of 3 and 21, who have been classified as children with

1

disabilities in need of special education services. 20 U.S.C. §§ 4401 et. seq. (McKinney 1995).

<u>Introduction</u>

4.      This proceeding was commenced pursuant to an impartial hearing request ("IHR") filed July 8, 2014 by Petitioners on behalf of the child, then a seven-year-old classified as having Autism. Ex. A. The child has attended Seton Foundation for Learning (the "School" or "Seton") since the 2012-2013 school year.

5.      Petitioners' IHR alleged, among other things, that the DOE denied the child a FAPE by failing to offer the child an appropriate placement for the 2014-2015 school year.

6.      The IHR requested the that Impartial Hearing Officer ("IHO") order relief including finding that parents were entitled to full tuition reimbursement for the child's attendance at the School during the 2014-2015 school year.

7.      An Impartial Hearing on this matter was held on August 8, 2014.

8.      Following the hearing, the IHO rendered the Decision on August 18, 2014.

9.      Despite the fact that the district presented no witnesses, the IHO, found that the IEP was appropriate. IHO Decision.

10.      Petitioners appeal the decision because the IHO misstated the record and because the record supported a finding that the district did not provide the child with a FAPE during the 2014-2015 school year, that Seton was appropriate for John and that equities favor reimbursement.

11.     Parents ask that you reverse the decision and remand to a new IHO for factual findings. <u>Application of a Student with a Disability</u>, Appeal No. 12-152 (July 5, 2013), <u>Application of a Student with a Disability</u>, Appeal No. 12-230 (December 6, 2013).

<u>Background</u>

12.     John is a seven-year-old and has been attending Seton since the 2012-2013 school year.

13.     John has Autism Spectrum Disorder. Ex. E-8, Ex. F-3, see Ex. B-1.

14.     A CSE Review was held on April 1, 2014. Ex. B.

15.     Parents contend that no appropriate educational program or placement was ever offered to the child by the DOE during the 2014-2015 school year. Ex. A.

<u>Impartial Hearing Request, Preliminary Issues, and Hearing</u>

16.     Petitioners filed their IHR on July 8, 2014. Ex. A.

17.     On July 15, 2014 the IHO submitted a prehearing order. This order was not placed into evidence, but is referenced in other documents. See Ex. V, Ex. W, IHO Ex. I, and IHO Ex. II. The order required, among other things that testimony be submitted by affidavit.

18.     On July 16, 2014, parents' attorney moved to ask IHO Noe to recuse on the basis of having decided the 2013-2014 case and an appeal by parents of the 2013-2014 case that included allegations of impropriety and the underlying impropriety from the 2013-2014 case. Ex. V. Parents counsel also objected to the requirement that all testimony be by affidavit. <u>Id.</u>

19.     IHO Noe responded by issuing an order, dated July 17, 2014. IHO Noe refused to recuse herself and reiterated her order regarding affidavits. IHO Ex. I.

20.     On July 24, 2014, parents' counsel submitted an application to have the testimony of the parent and the Seton psychologist, Denise Lorelli, by testimony rather than affidavit. Ex. Ex. V.

21.     IHO Noe denied the application for testimony rather than submission of affidavits. Ex. IHO II.

Impartial

22.     The hearing took place on August 8, 2014.

23.     The DOE presented no witnesses and introduced documents into evidence.

24.     Parents presented six witnesses and placed 23 documents into evidence.

Decision

25.     The IHO rendered the Decision on August 18, 2014.

26.     The IHO found factually that the DOE had met their burden of proof even though the DOE presented no witnesses as to the appropriateness of the IEP. The IHO failed to address numerous allegations in the due process complaint. Compare Ex. A with IHO Decision.

LEGAL ARGUMENT

27.     Parents who unilaterally place their special needs child in a private school may be reimbursed for tuition if three requirements are met. (1) the district-provided services made available pursuant to an Individualized Education Program (IEP) are inadequate; (2) the private education services obtained by the parent are appropriate; and (3) equitable considerations favor repayment. School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass., 471 U.S. 359, 369-374 (1985); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996). If the three prongs of Burlington are met, the DOE

4

must reimburse parents for tuition even when the private school at issue is not approved by the State. <u>Florence County School Dist. Four v. Carter</u>, 510 U.S. 7 (1993).

28.     The DOE has the burden of proof of all issues, including that it provided a child with a free and appropriate public education and that equitable factors do not favor repayment. NY Educ. Law § 4404(1)(c). Parents have the burden of proof that the chosen school is appropriate. <u>Id.</u>

<u>THE DOE DID NOT PROVIDE THE CHILD WITH A FREE APPROPRIATE PUBLIC EDUCATION</u>

29.     The primary purpose of a free and appropriate public education is that the education provided to the child is "meaningful" and that the placement be "reasonably calculated to enable the child to receive educational benefits." <u>Board of Educ. v. Rowley</u>, 458 U.S. 176, 192, 207 (1982); <u>Walczak v. Florida Union Free Sch. Dist.</u>, 142 F.3d 119, 130 (2d Cir. 1998). An IEP must be reasonably calculated to enable the child to receive educational benefits; it must be likely to produce progress, not regression. <u>D.F. ex rel. N.F. v. Ramapo Cent. School Dist.</u>, 430 F.3d 595, 598 (2n Cir. 2005); <u>Weixel v. Bd. of Educ.</u>, 287 F.3d 138, 151 (2d Cir. 2002). A valid IEP should provide for the opportunity for more than "trivial advancement." <u>Mrs. B. v. Milford Bd. of Educ.</u>, 103 F.3d 1114, 1121 (2d Cir. 1997).

30.     In order to prevail under prong one, the Department of Education must present "objective evidence" that the child is likely to make progress under the proposed plan. <u>Cabouli v. Chappaqua Cent. School Dist.</u>, 202 Fed.Appx. 519, 521 (2nd Cir. 2006); <u>Walczak</u>, 142 F.3d at 130.

5

31.     An appropriate program for a student with special needs begins with an IEP that accurately reflects the results of evaluations to identify the student's needs, establishes annual goals and short-term instructional objectives related to those needs, and provides for the use of appropriate special education services. 20 U.S.C. § 1414(d).

32.     The DOE placed into evidence five documents. Decision pp. 10-11. The DOE did not call any witnesses or place into evidence any affidavits. Decision, pp. 1, 10-11.

33.     In 2005, the Supreme Court held, "The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Schaffer v. Weast*, 546 U.S. 49, 62 (2005). In the vast majority of these cases it is the parent seeking relief from the school district. New York State, however, shifted the burden to the school district. Specifically NY Educ. Law §4404(1)(c) was amended on October 14, 2007 to place the burden of proof on school districts in IDEA cases. N.Y. Laws 2007, c. 583; see *J.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 641 FN 29 (S.D.N.Y. 2011). This change was done in response to *Schaffer* to restore prior New York State policy.

34.     "Nolan's Burden of Proof bill was drafted in response to the 2005 Supreme Court case of *Schaffer v. Weast* which placed the burden of proof on parents. The case overruled a New York State policy that was in place for more than 30 years which had given school districts the legal and financial responsibility for providing proof. Advocates for parents of students with disabilities claimed that shifting the burden of proof discouraged families from requesting IEP hearings because they lacked the information, skills or financial resources to hire an attorney." 2007 Update from the New

York State Assembly, Education Committee, December 2007 (available online at http://assembly.state.ny.us/comm/Ed/20071030/ (checked 8/5/2014).

35.     As such in this case the school district had the burden of proof that it provided the child with a free appropriate public education, including whether a proposed physical location could appropriately implement the IEP. NY Educ. Law § 4404(1)(c).

36.     The district did not call anyone to testify that the IEP was appropriate. As such, there was no evidence that the management needs, statement of academic performance, program, goals, or any aspect of the IEP was in fact appropriate for the child.

37.     Here the DOE presented documents and no testimonial evidence. As such the DOE cannot have met its burden of proof that the IEP was appropriate.

38.     Furthermore, parents presented evidence that the IEP was not appropriate and that John needed to stay at Seton. See, e.g., Ex. E, Ex. F, Ex. S.

39.     In a Neuropsychological Update prepared about October 2013, Dr. Nicole Robinson, Psy.D. recommended that John stay in his then current program at Seton due to his difficulties with attention and structured and unstructured tasks. Ex. F-3. Dr. Robinson also recommended that John stay in an Applied Behavioral Analysis Program. Ex. E-8.

40.     The IEP does not include ABA. Ex. B.

41.     In their due process complaint, parents made numerous complaints that the IEP and proposed school placement were not appropriate.

- Some of the goals were not developed at the meeting and therefore excluded the parent from meaning the participation in their development. The parent was provided a draft of the IEP at the beginning of the meeting.

- The related service goals were taken directly from the school report.
- The IEP failed to sufficiently identify the student's present levels of functional performance and include corresponding goals required to address the student's identified needs.
- None of the related service providers were present at the meeting to review present levels of functional performance and review reports.
- The goals and the IEP were not reasonably calculated to confer educational benefit upon the student.
- The IEP including but not limited to the statement of goals, social/emotional performance, (behavior) and management needs did not address all of the student's unique social/emotional (and behavioral) needs.
- The team did not present reports to the parent prior to the meeting.
- The telephone participants did not have access to reports at the time of the meeting.
- No classroom observation was conducted.
- The parent requested a time limit on the bus of 45 minutes and the team advised her that she needs to put a request in writing for a re evaluation meeting.
- Parent was informed by the special education teacher that John does need a crisis paraprofessional, as he does not have one at his current school setting. Parent explained that she is interested in a public school setting and states that he would need one if he were to go to a public school setting. The special education teacher states that this decision cannot be made at this meeting and that the parent should put a request in writing for a re-evaluation meeting.
- The CSE team was not duly constituted according to IDEA 2004, Section 1414(d) (1) (B).
- The individual listed as special education teacher from the CSE did not meet necessary criteria as defined by applicable federal and state education law.
- The individual listed as the district representative from the CSE did not meet necessary criteria as defined by applicable federal and state education law.
- The teacher from his current placement participated by phone and did not have a copy of all of the reports (information) that were reviewed.
- A draft IEP was presented to the parent at the beginning of the meeting.
- The CSE failed to recommend an appropriate program.
- The evaluations and data utilized by the CSE did not support

the proposed recommendation.
- The CSE predetermined their recommendation.
- The CSE team was unable to provide the parents with information about the proposed program.
- The recommendation is contrary to the opinions of the professionals who have direct knowledge of the student's needs.
- The parent stated at the meeting that they disagreed with the District 75 placement and had concerns as their child requires more supports that the District 75 has to offer. They also stated that they would be willing to look at the placement.
- The CSE failed to follow the continuum of services as per IDEA.
- The parents accurately assessed that the district was unwilling to offer anything more than the IEP it had already designed the year before.
- The CSE failed to offer an appropriate placement.
- The lunchroom is used as a multipurpose facility, is too large, overcrowded, creating an environment where John can become anxious and distressed.
- The classroom is too compact, causing John to be unable to focus and engage during instructional time.
- The compact size of the class does not allow for periodic rests, rewards, or freedom to engage in activities that can calm him during times of frustration and agitation.
- There was no discussion about the educational program leaving the parent uncertain about the appropriateness of the curriculum for her son.
- The therapy rooms were too small and being used simultaneously by multiple children, creating an environment that would cause John to be distracted during one to one therapy. There can be five students served in the room at a time.
- Individualized speech therapy was observed with the teacher sitting outside of the classroom with the student. This would be distracting for John during his one to one sessions. Students and adults pass through this area to gain access into the classroom.
- During the lesson the teacher used an ipad and the students did not have access. John has been shown to benefit from using an ipad in school.
- The school does not offer a quiet room in the building. If a student needs to be removed from the classroom, or they need a break, they may sit outside the classroom with an adult.

9

- In the K-2 classes are divided according to functioning level. In this class there could be a 36 month age range/
- There are no typically developing students in the school, or in the main building, John's IEP recommends interaction with typically developing students. The Assistant Principal stated that there are co-location schools where a 6:1:1 program is housed in a general education building. However, P.S.373 is not one of them.
- A physical therapy goal for John is to go up and down 3 flights of stairs. This school is on one level. John would have to go to the stairs by the parking lot or large building.
- There is no music teacher in the school. One of John's interests is music.
- Many of John's related services are individual in a separate location. This does not appear to be an option at this school.
- The placement does not employ the teaching methodologies that are appropriate and have shown to be successful for the student.
- Parent had concerns regarding the accessibility of the school. In order to get to the school building where the classes are housed, she walked through a parking lot that was unattended down stairs into the building. At the front desk there was no one sitting at the desk and parent was able to walk into P.373. The security guard was absent during the visit and a substitute was to be covering the desk but was not present. Security cameras are not present by either exit and there is a plan to install them at some future date.
- The original classrooms are divided in half and the walls had a lot of "clutter" making it difficult for her child who has sensory and focusing difficulties.
- Upon information and belief, the proposed placement cannot implement the related services. John is extremely distractible and needs related services provided in a 1:1 setting as mandated on his IEP.
- Upon information and belief, the proposed classroom would not be functionally grouped appropriately for the child with concern for academic needs, social/emotional needs and behavioral needs.
- Upon information and belief the parent expressed concern that the public school setting may not have enough adult supervision.
- Upon information and belief the placement does not employ the teaching methodologies that are appropriate and have shown to be successful for the student. Ex A, pp. 3-7.

10

42.     The district did not present evidence against any of these allegations and thus could not have met its burden of proof. NY Educ. Law § 4404(1)(c).

43.     The IHO did not address numerous allegations in the due process complaint and instead only addressed the following allegations: 1. Service providers did not attend the CSE meeting, 2. The IEP had incorrect present levels of performance, and 3. General allegations about the program. See IHO Decision pp. 5-6. As such the IHO failed to address over forty allegations regarding the denial of FAPE in the due process complaint. Compare IHO Decision pp. 5-6 with Ex. A pp. 3-7.

44.     Most importantly, the IHO failed to address the most critical allegations by parents, including John's need for ABA to make progress, that the IEP and placement do not provide ABA methodology, and the need individualized attention, which John requires to make progress. Compare Ex. A, Ex S, and Ex. R with IHO Decision. The decision only briefly mentions ABA and does not address whether it is necessary for John to make progress.

45.     Although the decision notes that the parent was open to the 6:1:1 framework, it does not address other aspects of the program, including, methodology, functional grouping, management needs, goals, etc.

46.     For all the foregoing reasons the IHO decision that the DOE provided the child with a free appropriate public education should be annulled.

PARENTS MET THEIR BURDEN THAT THE CHOSEN SCHOOL WAS APPROPRIATE

47.     Courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a

child's individual needs. <u>Frank G. v. Board of Educ. of Hyde Park</u>, 459 F.3d 356, 364 (2d

Cir. 2006), cert. denied 128 S.Ct. 436 (2007) (citation omitted).

48.     To qualify for reimbursement under the IDEA, parents need not show that

a private placement furnishes every special service necessary to maximize their child's

potential. They need only demonstrate that the placement provides educational

instruction specially designed to meet the unique needs of a handicapped child, supported

by such services as are necessary to permit the child to benefit from instruction.

<u>Gagliardo v. Arlington Central School Dist.</u>, 489 F.3d 105, 112 (2d Cir. 2007); <u>Frank G.</u>,

459 F.3d at 364-65.

49.     Parents presented affidavits from six witnesses at Seton, including, Diane

Taranto, director of the elementary program (Ex. G), Denise Lorelli, ABA provider (Ex.

O), Jan Paul Pablo, teacher (Ex. P).

50.     Dr. Taranto's affidavit demonstrates that the Seton program is appropriate

for John. In addition to meeting his academic and special education needs, it also

provides him with opportunities to relate with typically developing peers. Ex. G. The

teachers and related services providers work together to address John's needs. The

affidavits discusses specific skills John is working on to increase his academic skills, life

skills, and independence, including unpacking his backpack, completing equations, filling

in words from sentences, handwriting, answering questions, and initiating play. Ex. G. It

also describes how the program is individually tailored to John's needs.

51.     Ms. Lorelli's affidavit describes John's programmatic lessons using ABA,

which are a critical component of his education at Seton. Ex. O. ABA is utilized

throughout the day, every day, for John. Data is kept and recorded. ABA is done in a

distraction free environment. ABA is used to increase John's academic and daily living skills, including math, answering questions, reading skills, handwriting, socialization. John is making progress generalizing his skills. Ex. O.

52.     Mr. Pablo's affidavit describes John's classroom experiences. He described his use of ABA and the individualized nature of John's Program. Ex. P. He describes John's program in reading and math, including his academic and daily living goals and the plan that Seton has to meet those goals. He described the individualized program and the progress that John has made as of the date of the hearing. Ex. P.

53.     Parents also presented affidavits from John's related services providers. See Ex. L (physical therapy), Ex. M (occupational therapy), Ex. T (speech). The affidavits demonstrate that John's related services needs are being met.

54.     To add to the statute a requirement that, once a school district fails to provide a FAPE, parents' choice must satisfy rigorous District-approved criteria "would defeat the statutory purpose" by leaving children without an appropriate educational choice. Board of Educ. of Pawling Central School Dist. v. Schutz, 290 F.3d 476, 484 (2d Cir. 2002), cert denied, 537 U.S. 1227 (2003), quoting Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 12-13 (1993). The preference for instruction in the least restrictive environment must be balanced against the requirement that each student with a disability receive an appropriate education. Briggs v. Bd. of Educ., 882 F.2d 688, 692 (2d Cir. 1989).

55.     The parental right of unilateral withdrawal cannot be eliminated by a district requirement that limits parental choice to inappropriate services. Still v. DeBuono, 101 F.3d 888, 892 (2d Cir. 1996). Parents may receive from reimbursement for

private school tuition where the school they choose does not meet the IDEA definition of a free appropriate public education. Frank G., 459 F.3d at 363.

56.     The Court in Carter noted, "it hardly seems consistent with the Act's goals to forbid parents from educating their child at a school that provides an appropriate education simply because that school lacks the stamp of approval of the same public school system that failed to meet the child's needs in the first place." 510 U.S. 7, 14 (citation omitted).

57.     The six academic and related services affidavits demonstrate that the placement at Seton provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.

THE BALANCE OF EQUITIES FAVORS REPAYMENT

58.     The third prong of the Burlington/Carter tests primarily tests cooperation because a school board needs the cooperation of the parent to properly evaluate a child and convene a CSE to thereby determine what level of services would address the child's disability. Here parents cooperated.

59.     Tuition reimbursement may be denied only in extreme cases such as when the parent provides no notice whatsoever of their intention to remove their children from public school. See, e.g., Greenland School Dist. v. Amy N., 358 F.3d 150, 160 (1st Cir. 2004); Notably, in Greenland, the parent placed the child in a private school in August 2000 and did not request a special education evaluation of their child until March 2001. Id. at 154.  Failing to provide timely notice does not prohibit awarding reimbursement to parents. Ashland School Dist. v. Parents of Student E.H., 583 F.Supp.2d 1220, 1227

(D.Or. 2008). Reimbursement should only be denied when parents do everything possible to frustrate a timely review of the child condition before enrolling the child at private school. Carmel Cent. Sch. Dist. v. V.P., 373 F.Supp.2d 402, 418 (S.D.N.Y. 2005).

60.     The Southern District has held that when the record is bereft of parents' efforts to frustrate the placement by the school district equitable factors do not permit a limit to reimbursement. N.R. v. Department of Education, 1:07-cv-09648, 2009 U.S. Dist. LEXIS 27273, * 15 (S.D. N.Y. March 31, 2009). Equitable factors only apply when a parent's failure to cooperate obstructed the placement process. Id.

61.     The parent participated at the IEP meeting, visited the proposed school location, and sent two letters to the CSE. Ex. B, Ex. S, Ex. Q, Ex. R.

62.     There is nothing in the record that would indicate the parent acted unreasonably.

## THE IHO ENGAGED IN MISCONDUCT, FAILED TO DEVELOP A RECORD, AND THIS CASE SHOULD BE REMANDED TO A NEW IHO FOR FACT-FINDING AND A DECISION

63.     The IHO acted irrationally and unreasonably and prevented the parents from presenting a record and violated the State Education Department Impartial Hearing Regulations and New York State Bar Model Code Of Judicial Conduct. Specifically:

> a.  The IHO failed to recuse; The IHO failed to recuse when asked by parents to recuse due to a professional conflict; The IHO failed to recuse when asked by parents due to her unreasonable decision she issued related to the 2013-2014 school year; The IHO failed to recuse even though there is an active investigation by the New York

State Education Department over her failure to recuse during the

2013-2014 school year;

    b.   The IHO ruled in the Department of Education's favor even though

       it presented no testimonial evidence that the IEP was appropriate;

    c.   IHO Noe demanded affidavits.

64.    <u>The IHO failed to recuse</u>:

65.    The IDEA guarantees the right to an "impartial due process hearing." 20

U.S.C. § 1415(f). A *sine qua non* of an impartial due process hearing is that the hearing

officer in fact be impartial.[1]

66.    The Model Code provides, "A State Administrative Law Judge Shall

Avoid Impropriety And The Appearance Of Impropriety In All Activities." Canon 2.

67.    Here there was an appearance of impropriety due to the failure of the IHO

to recuse even though the parent had accused her of impropriety in the 2013-2014

hearing. Additionally, the appearance of impropriety due to her business relationship

having written a book with Robert Meagher still existed. See Ex. S.

68.    <u>The IHO ruled in the Department of Education's Favor Without Evidence</u>:

69.    As described above, IHO Noe ruled that the DOE provided John with an

appropriate program even though no one testified that the IEP was appropriate.

70.    <u>The IHO Demanded Testimony by Affidavit</u>:

---

[1] To that end the New York State Education Department requires that IHOs not have a "personal or professional interest which would conflict with his or her objectivity in a special education due process impartial hearing." Application for New York State Education Department Certification as a Special Education Impartial Hearing Officer, available online http://www.p12.nysed.gov/specialed/dueprocess/IHOannounce.htm (link checked June 2, 2014).

71.     The IDEA provides that parents have "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 USCS § 1415(h)(2).

72.     IHO Noe ordered parties to present testimony by affidavit. See Ex. V, Ex. W, IHE Ex. I, IHO Ex. II. The order, while bathed in regulation (8 NYCRR § 200.5(j)(3)(xii)(f)), was illegal.

73.     Although an IHO may take testimony by affidavit, IHO Noe exceeded her discretion by ordering parties to present testimony by affidavit. 8 NYCRR § 200.5(j)(3)(xii)(f). The regulation states, "The impartial hearing officer may take direct testimony by affidavit in lieu of in-hearing testimony, provided that the witness giving such testimony shall be made available for cross examination." *Id.* The regulations note some powers that the IHO has and other authorities that an IHO may hold. 8 NYCRR § 200.5(j)(3). For example, the regulation "The impartial hearing officer may limit examination of a witness by either party whose testimony the impartial hearing officer determines to be irrelevant, immaterial or unduly repetitious." gives an IHO the power to limit examination when she deems the evidence irrelevant. Thus, the power lies inherently with the IHO upon her determination that the testimony is "irrelevant, immaterial or unduly repetitious." 8 NYCRR § 200.5(j)(3)(xii)(d). Whereas the authority with regard to affidavits is merely the authority to "take affidavits." 8 NYCRR § 200.5(j)(3)(xii)(f). Thus, the regulations only give an IHO the authority to take affidavits into evidence. There is no authority to order parties to submit affidavits as evidence.

74.     The regulations provide that parties **shall** have the opportunity to present evidence. 8 NYCRR § 200.5(j)(3)(xii). Therefore, the parents' **right** to present evidence

trumps the IHO's **ability** to take affidavits and an IHO cannot compel a party to present evidence by affidavit. The regulations also note that the student's right to due process cannot be limited by the regulations: Nothing in this section shall abrogate the right of an individual student with a disability to due process under Education Law section 4404. 8 NYCRR § 200.5(l)(3). Thus, the IHO exceeded her authority ordering parties to present affidavits.

75.     Although the IHO purported to permit testimony of witnesses by application. That was clearly untrue since she denied the application to allow the two witnesses to testify. See IHO Ex. II.

THE PENDENCY DECISION SHOULD BE REVISED TO 100% OF TUITION

76.     IHO Noe ordered pendency of 80% tuition at Seton. Interim Order on Pendency.

77.     The May 28, 2013 decision by IHO Lassinger reduced tuition to 80% due to equitable reasons. Ex. C-17-C-18.

78.     Pendency is a statutory right guaranteed by 20 U.S.C. § 1412(a)(12)(A); 20 U.S.C. § 1415(j); and 20 U.S.C. § 1439(b). "This provision is, in effect, an automatic preliminary injunction" during an impartial hearing. Zvi D. v. Ambach, 694 F.2d 904, 906 (2nd Cir. 1982). Implicit in this provision is the requirement that a school district continue to finance the last agreed upon educational placement. Murphy v. Arlington Central School District Board Of Education, 297 F.3d 195 (2nd Cir. 2002). In Letter to Hampden, 49 IDELR 197, 108 LRP 22225 (2007).

79.     Here the order did not fund the placement, but rather only funded 80% of the tuition.

80.     IHO Lassinger reduced tuition to 80% due to parents' failure to communicate concerns during the 2012-2013 school year. Ex. C-17-C-18. Thus, any equitable reasons in the decision, do not apply to the 2014-2015 school year.

81.     At hearing the DOE agreed that the pendency was "Seton Foundation Core Learning, along with related services." Tr. 174-75. There was no discussion of reducing tuition. Id.

82.     It was error for the IHO to *sua sponte* reduce the pendency tuition to 80%.

WHEREFORE, Petitioners respectfully request that the Office of State Review render a decision reversing the IHO Decision of August 18, 2014, and issue an Order as follows:

The Department of Education did not provide the child with a free appropriate public education;

Seton Foundation for Learning is an appropriate placement for John S.;

Equities favor reimbursement;

Parents are entitled to reimbursement for all tuition incurred for John S. at Seton for the 2014-2015 school year;

Or in the alternative find that the Department of Education did not provide the child with a free appropriate public education and remand the case for further fact finding and a decision on the merits and that a new IHO be appointed in accordance with the district's rotational selection process;

Refer IHO Noe for an investigation by the Office of Special Education;

Revise the pendency decision to reimburse and prospectively pay 100% of tuition and provide related services authorizations;

Any and further relief it deems necessary.


LAWRENCE D. WEINBERG, ESQ.

233 East 89th, 2A
New York, NY 10129
646-422-7943
Fax: 718-228-5935

lawrenceweinberg@gmail.com

c/o Susan Luger Associates, Inc.
Special Education Advocates
155 West 72nd Street
Suite 201
New York, NY 10023
212-769-4644

20

Fax: 212-501-8090

Date:   September 22, 2014
         New York, NY
To:
Courtenaye Jackson-Chase, Esq.                c/o
General Counsel                               Corporation Counsel
New York City Department of Education         New York City Department of Education
335 Adams Street                              100 Church Street
Brooklyn, NY 11201                            4th Floor
                                              New York NY 10007

21

**STATE OF NEW YORK)**

**COUNTY OF** Richmond )      :SS.:

ROSALIE ▬▬▬▬, being duly sworn, deposes and says that she is the parent of John ▬▬▬ That the statements in the foregoing Petition are true to her knowledge and belief, and as to that matter believes it to be true. Deponent further says that the grounds of that belief as to all matters not therein stated upon that knowledge are as follows: information obtained from attorney, Lawrence D. Weinberg, the testimony and exhibits presented at the August 8, 2014 hearing and the Decision of August 18, 2014.

Rosalie Schnall

ROSALIE ▬▬▬▬

Sworn to before me, this
18th Day of September,
2014.

Maria Almeida

Notary Public

MARIA ALMEIDA
Notary Public - State of New York
NO. 01AL6271293
Qualified in Richmond County
My Commission Expires 10/29/16