UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J.S. and R.S., individually and on behalf of John S., a minor,

Plaintiffs,

-against-

The New York City Department of Education,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street - Room 2-119*
*New York, NY 10007*

*Of Counsel: Son K. Le*
*Tel: (212) 356-5048*
*Matter No: 2015-001453*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

TABLE OF CONTENTS ................................................................................................I

LIST OF DEFINED TERMS........................................................................................ VIII

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

       Background........................................................................................... 1

       CSE Meeting, IEP Development and Recommended
       Placement............................................................................................ 1

       Due Process Complaint and Impartial Hearing and
       Decision ............................................................................................. 3

       Appeal to the SRO ............................................................................. 7

STATUTORY SCHEME AND STANDARD OF REVIEW .......................................... 9

PURPOSES AND PROCEDURES OF THE IDEA ...................................................... 9

THE *BURLINGTON/CARTER* REIMBURSEMENT TEST....................................... 10

STANDARD OF REVIEW ......................................................................................... 12

ARGUMENT ............................................................................................................... 13

       PART I: THIS COURT SHOULD DEFER TO THE IHO
       AND SRO'S FINDINGS THAT THE DOE OFFERED
       THE STUDENT A FREE APPROPRIATE PUBLIC
       EDUCATON........................................................................................ 13

       PART II: THE DOE OFFERED J.S. A FREE
       APPROPRIATE PUBLIC EDUCATION .................................................. 15

       A. The Student's IEP Was Developed in
       Substantial Compliance with the Procedures of
       the IDEA ................................................................................... 15

       B. The IEP Was Substantively Appropriate ............................ 18

A.   Plaintiffs' Predetermination Argument Lacks Merit ................................................................... 20

B.   Plaintiffs Have Not Exhausted Their Administrative Remedies ........................................................ 22

C.   Alternatively, the Student Did Not Require a 1:1 Paraprofessional, and PS 373 Uses ABA as a Teaching Methodology ........................................................ 24

CONCLUSION ........................................................................................ 32

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                          **<u>Pages</u>**

*A.H. v. N.Y.C. Dep't of Educ.*,
  394 Fed. App'x 718 (2d Cir. 2010) ........................................................................... 14

*A.M. v. N.Y.C. Dep't of Educ.*,
  964 F. Supp. 2d 270 (S.D.N.Y. 2013) ........................................................................ 14

*A.S. v. N.Y.C. Dep't of Educ.*,
  573 Fed. Appx. 63 (2d Cir. 2014) ............................................................................... 25

*A.S. v. Trumbull Bd. of Educ.*,
  414 F. Supp. 2d 152 (D. Conn. 2006) ......................................................................... 22

*Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*,
  820 F. Supp. 2d 490 (S.D.N.Y. 2011) ........................................................................ 22

*Bd. of Educ. v. Rowley*,
  458 U.S. 176 (1982) ................................................................................ 10, 11, 12, 15, 18

*C.F. v. N.Y.C. Dep't of Educ.*,
  746 F.3d 68 (2d Cir. 2014) .......................................................................................... 13

*C.H. v. Goshen Cent. Sch. Dist.*,
  No. 11 CV 6933 (CS), 2013 WL 1285387 (S.D.N.Y. Mar. 28, 2013) ...................................... 14

*Cave v. E. Meadow Union Free Sch. Dist.*,
  514 F.3d 240 (2nd Cir. 2008) ................................................................................. 16, 23

*Cerra v. Pawling Cent. Sch. Dist.*,
  427 F.3d 186 (2d Cir. 2005) ................................................................................ 14, 15, 18

*D.C. v. N.Y.C. Dep't of Educ.*,
  950 F.Supp.2d 494 (S.D.N.Y. 2013) ........................................................................... 26

*D.N. v. New York City Dep't of Educ.*,
  14 Civ. 2526 (LGS), 2015 WL 925968 (S.D.N.Y. Mar. 3, 2015) .............................. 13

*E.C. v. Bd. of Educ. of the City Sch. Dist. of New Rochelle*,
  No. 11, 2013 U.S. Dist. LEXIS 36346 (S.D.N.Y. Mar. 15, 2013) ........................... 25

*E.H. v. N.Y.C. Dep't of Educ.*,
  2016 U.S. Dist. LEXIS 18537 (S.D.N.Y. Feb. 16, 2016) ..................................... 20, 21

*E.S. v. Katonah-Lewisboro Sch. Dist.*,
  742 F. Supp. 2d 417 (S.D.N.Y. 2010) ........................................................................ 25

**Cases**                                                                                      **Pages**

*F.L. v. N.Y.C. Dep't of Educ.*,
  2012 WL 4891748 (S.D.N.Y. Oct. 16, 2012) ........................................................... 25

*Florence Cnty. Sch. Dist. Four v. Carter*,
  510 U.S. 7 (1993) ............................................................................................. 11

*Forest Grove Sch. Dist. v. T.A.*,
  557 U.S. 230 (2009) ....................................................................................... 10, 13

*Frank G. v. Bd. of Educ.*,
  459 F.3d 356 (2d Cir. 2006) ............................................................................... 12

*Gagliardo v. Arlington Cent. Sch. Dist.*,
  489 F.3d 105 (2d Cir. 2007) ......................................................................... 10, 13, 14

*J.G. v. Kiryas Joel Union Free Sch. Dist.*,
  777 F. Supp. 2d 606 (S.D.N.Y. 2011) ........................................................... 16, 20, 22

*J.R. v. Bd. of Educ.*,
  345 F. Supp. 2d 386 (S.D.N.Y. 2004) .................................................................... 22

*J.S. v. Attica Cent. Sch.*,
  386 F.3d 107 (2d Cir. 2004) ............................................................................... 23

*M.C. v. Voluntown Bd. of Educ.*,
  226 F.3d 60 (2d Cir. 2000) ................................................................................. 22

*M.H. v. N.Y.C. Dep't of Educ.*,
  685 F.3d 217 (2d Cir. 2012) ....................................................................... 12, 13, 14, 15

*M.O. v. New York City Dep't of Educ.*,
  793 F.3d 236 (2d Cir. 2015) ............................................................................... 26

*M.S. v. N.Y.C. Dep't of Educ.*,
  2 F. Supp. 3d 311, 322 (E.D.N.Y. Nov. 5, 2013) ..................................................... 14

*M.S. v. Yonkers Bd. of Educ.*,
  231 F.3d 96 (2d Cir. 2000) ................................................................................. 12

*M.W. v. N.Y.C. Dep't of Educ.*,
  725 F.3d 131 (2d Cir. 2013) ........................................................................... 11, 15

*Muller v. Comm. on Special Educ.*,
  145 F.3d 95 (2d Cir. 1998) ................................................................................. 12

**Cases**     **Pages**

*N.R. v. N.Y.C. Dep't of Educ.*,
No. 07 CV 9648 (BSJ), 2009 WL 874061 (S.D.N.Y. Mar. 31, 2009) ...................................... 13

*N.S. v. N.Y.C. Dep't of Educ.*,
2014 WL 2722967 (S.D.N.Y. June 16, 2014) ........................................................................ 26

*P.K. v. Bedford Cent. Sch. Dist.*,
569 F. Supp. 2d 371 (S.D.N.Y. 2008) .................................................................................. 22

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,
288 F.3d 478 (2d Cir. 2002) ................................................................................................ 23

*R.E. v. N.Y.C. Dep't of Educ.*,
694 F.3d 167 (2d Cir. 2012) ............................................................... 10, 12, 14, 15, 16

*Reyes v. N.Y.C. Dep't of Educ.*,
760 F.3d 211 (2d Cir. 2014) ...................................................................................... 15, 22-23

*S.E. v. New York City Dep't of Educ.*,
2015 WL 409238 (S.D.N.Y. July 2, 2015) .......................................................................... 26

*Sch. Comm. of Burlington v. Dep't of Educ.*,
471 U.S. 359 (1985) ............................................................................................................ 11

*Sch. for Language & Commun. Dev. v. N.Y. State Dep't of Educ.*,
No. 02 CV 0269 (JS)(JO), 2006 WL 2792754 (E.D.N.Y. Sept. 26, 2006) ........................... 22

*Schaffer ex rel. Schaffer v. Weast*,
546 U.S. 49, 126 S. Ct. 528, 163 L. Ed. 2d 387 (2005) ...................................................... 11

*T.M. v. Cornwall Cent. Sch. Dist.*,
752 F.3d 145 (2d Cir. 2014) ............................................................................................... 11

*T.P. v. Mamaroneck Union Free Sch. Dist.*,
554 F.3d 247 (2d Cir. 2009) ............................................................................................... 13

*W.S. v. Rye City Sch. Dist.*,
454 F. Supp. 2d 134 (S.D.N.Y. 2006) ................................................................................. 16

*Walczak v. Fla. Union Free Sch. Dist.*,
142 F.3d 119 (2d Cir. 1998) ...................................................................................... 11, 15, 22

| **Statutes** | **Pages** |
|---|---|
| 8 NYCRR §200 | 27 |
| 8 NYCRR §200.5[j][5][i-iv] | 4 |
| 8 NYCRR §200.5(j)(3)(xii)(f) | 28 |
| 8 NYCRR §200.5(j)(5)(i-iv) | 28 |
| 8 NYCRR §200.6[h][4][ii][a] | 18 |
| 8 NYCRR §200.21(b) | 29 |
| 8 NYCRR §200.21(b)(1) | 8 |
| 20 U.S.C. §1400 (d)(1)(A) | 10 |
| 20 U.S.C. §1401 | 10 |
| 20 U.S.C. §1412 (a)(10)(C) | 11 |
| 20 U.S.C. §1412(a)(10)(C)(i) | 11 |
| 20 U.S.C. §1412(a)(10)(C)(iii)(III) | 12 |
| 20 U.S.C. §1414(b)(2)(A) | 17 |
| 20 U.S.C. §1414(d)(1)(A)(i) | 16, 17 |
| 20 U.S.C. §1414(d)(1)(B) | 16 |
| 20 U.S.C. §1414(d)(3) | 16 |
| 20 U.S.C. §1415(i) | 23 |
| 20 U.S.C. §§1415(i)(1)(B),(2)(A) | 11 |
| 20 U.S.C. §1415(i)(2)(C) | 13 |
| 20 U.S.C. §1415(b)(6)(A) | 10 |
| 20 U.S.C. §1415(f)(1)(A) | 10 |
| 20 U.S.C. §1415(f)(3)(E) | 16 |
| 20 U.S.C. §1415(g)(1) | 10 |
| N.Y. Educ. Law §1415(f)(3)(B) | 12 |

**Cases**                                                                                                                   **Pages**

N.Y. Educ. Law §4402(1)(b)(1) ............................................................................. 10

N.Y. Educ. Law §4404 ......................................................................................... 8

N.Y. Educ. Law §4404(1)(a) ............................................................................... 10

N.Y. Educ. Law §4404(1)(c) ............................................................................... 12

N.Y. Educ. Law §4404(2) .................................................................................... 10

N.Y. Educ. Law §4404(3)(a) ............................................................................... 11


Other Authorities:

http://www.slugerassociates.com/who-we-are/attorneys.php ........................................... 5

# List of Defined Terms

ABA……………………………………...Applied Behavioral Analysis, a teaching methodology

CSE ..................................................................................... Committee on Special Education

CSE Meeting .................The meeting of the Committee on Special Education held April 26, 2013 to develop an Individualized Education Program for J.S.

Defendant ........................................................................ New York City Department of Education

DOE ................................................................................ New York City Department of Education

DPC. ........................................... Parents' amended due process complaint, dated August 26, 2013

Ex. __-__ ........................................... exhibit and page number of exhibits admitted into evidence at the impartial hearing; letters denote Parents' exhibit, numerals denote DOE exhibit

FAPE ....................................................................................Free Appropriate Public Education

FBA .................................................................................... Functional Behavioral Assessment

FNR…………………………………......Final Notice of Recommendation dated June 14, 2013

IDEA..................................................... Individuals with Disabilities Education Improvement Act

IEP ........................................................................................Individualized Education Program

2013-2014 IEP ......................... IEP for J.S. developed at the CSE meeting held on April 26, 2013

IHO ........................................................................................... Impartial Hearing Officer

IHO Decision (or IHO Dec.) ...............................Impartial Hearing Officer Mary Noe's Findings of Fact and Decision dated May 15, 2014

IHO Ex. _ ...................................................................................IHO Exhibit and number

J.S...............................................................................John S., a minor student with a disability

LW Decl. Ex. _ ..............................................Lawrence Weinberg Declaration Exhibit and number annexed to Plaintiffs' Motion for Summary Judgment

OT…………………………………………….........................................Occupational therapy

Plaintiffs ...........................................Plaintiffs J.S. and R.S., individually and on behalf of John S.

PM. ......................................................... Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, dated May 27, 2016

SLA............................................................................................ Susan Luger Associates

SLT ........................................................................................... Speech language therapy

SRO ............................................................................................State Review Officer

SRO Decision (or SRO Dec.) ..........State Review Officer Carol H. Hauge's Decision No. 14-090, dated September 26, 2014

Student…………….……………………………….…………………John S., a minor student

Tr. _...................................................Transcript and page number of the impartial hearing

The New York City Department of Education hereby opposes the Motion for Summary Judgment of J.S. and R.S., individually and on behalf of J.S., dated May 27, 2016 and cross-moves for summary judgment. Defendant submits that its recommended program for the 2013-14 school year provided the Student with a free appropriate public education, and the decision of the SRO below, which found the DOE offered the Student an appropriate program and rejected Plaintiffs' claims, should be affirmed.

## STATEMENT OF FACTS

**Background**

The Student's IEP from his 2013-14 school year describes him as a six-year-old boy with a disability of autism. Ex. B-1. His academic skills range from kindergarten to first grade. *Id*. He is somewhat independent in the bathroom, speaks in 3-4 word phrases, has good receptive language skills but has significant articulation delays. *Id*. He can recognize and identify numbers, count and demonstrate knowledge of number concepts. *Id*. He can identify letters and words. *Id*. He enjoys books, puzzles, iPad games and music, and responds well to highly structured intervention techniques using a multisensory approach. *Id*. The Student is generally happy, cooperative and follows directions, although he can be easily distracted. Ex. B at 1-2. He is prone to self-stimulatory behaviors such as covering his ears, flicking his fingers and flapping his hands, but he responds well to redirection. Ex. B-2.

**CSE Meeting, IEP Development and Recommended Placement**

On April 26, 2013, a committee on special education ("CSE") convened to develop an IEP for the Student for the 2013-14 school year. The participants included a DOE special education teacher/related services provider, Theresa Biancoviso; the Student's mother, R.S.; a DOE school psychologist who also served as the district representative; a parent

representative; and the Student's classroom teacher from Seton Academy. Ex. B-18. The IEP Team reviewed the following evaluative materials: a February 2013 Seton quarterly progress report, an April 2013 classroom teacher/student evaluation report, an April 2013 speech language therapy progress report, an undated physical therapy progress report, and an undated occupational therapy progress report. *See* exs. 2-5, G at 1-4; SRO Dec. at 14.

The Student's mother*,* teachers and related service providers from Seton, in person or through progress reports considered by the IEP Team, participated or otherwise contributed to the development of the IEP. *See*, Exs. B at 15 and 17, C (parent's concerns regarding student's needs and IEP's recommendations).

The IEP recommended a 6:1:1 special class in a specialized school with the following related services: counseling services in a group of three once a week for 30 minutes; occupational therapy four times per week individually in 30-minute sessions; parent counseling and training in a group setting twice a year in 45-minute sessions; physical therapy twice per week individually in 30-minute sessions; and speech-language therapy five times per week individually in 30-minute sessions and once per week in a group of three for 30 minutes. Ex. B-12. The IEP also recommended the Student receive adapted physical education five times per week. Ex. B-11.

The IEP included a detailed narrative of the Student's present levels of performance, incorporating his academic performance (*e.g*., identifying numbers, counting, knowledge of number concepts, identifying letters and words, colors and shapes), learning characteristics, social/emotional performance and health and physical development. Ex. B at 1-3. It offered strategies for addressing his academic management needs such as placing him in a highly structured specialized class, using discrete trials, prompting, constant redirection to task,

frequent reinforcers and breaks, and preferential seating within the class to increase attention to task. Ex. B-3. It included 18 annual goals and 66 short term objectives attending to his academic, behavioral, physical, and emotional needs. Ex. B at 4-11.

On June 13, 2013, the parents sent a letter to the district reiterating their concerns with the IEP and requested that the district notify them by June 15 of the Student's proposed placement school. Ex. C-1. By final notice of recommendation dated June 14, 2013, the Defendant offered the Student a placement at PS 373, to implement the IEP. Ex. D. On June 25, 2013, the Student's mother, R.S., visited PS 373 and met with the assistant principal. *See*, ex. C-4. By a letter dated June 26, 2013, R.S. rejected the placement as inappropriate, citing the large and "overcrowded" lunchroom, a classroom that was "too compact," the lack of discussion about the educational program, and therapy rooms that were "too small and crowded." *Id*. R.S. concluded her letter with a notice that she would be enrolling the Student at Seton for the 2013-14 school year and would seek reimbursement of tuition from the district. *Id*. On the same day, the parents signed an enrollment contract with Seton for the 2013-14 school year. Ex. U.

**Due Process Complaint and Impartial Hearing and Decision**

By due process complaint dated August 26, 2013, Plaintiffs requested a hearing to determine whether the DOE had offered the Student a FAPE. Ex. A. They challenged the IEP on procedural and substantive grounds, and they challenged the Defendant's ability to implement the IEP at the recommended placement. *Id.* Filed by Susan Luger Associates ("SLA"), the DPC included a long list of complaints which ranged from the specific to the generic, *e.g.* "[t]he parent requested a sensory gym and the request [was] denied" and "[t]he CSE failed to recommend an appropriate program." Ex. A-4.

An impartial hearing officer, Michael Lazan, Esq., was initially appointed to hear the case. He scheduled a prehearing conference on October 7, 2013 (at which none of the parties

appeared), and issued a decision on pendency on October 29, 2013.[1]  *See*, SRO Dec. at 5, n.5.

Subsequently, IHO Lazan recused himself from the case for reasons not disclosed.  *Id*.  IHO

Mary Noe was appointed to the case on March 6, 2014.  IHO Dec. at 2.  After speaking on

March 18, 2014 with the office handling the Plaintiff's case, IHO Noe scheduled the impartial

hearing for April 11, 2014 at noon.  *See*, IHO Ex. II.  In a prehearing order dated March 24,

2014, IHO Noe noted the April 11 hearing date and ordered the parties to submit direct

testimony by affidavit, with the party bearing the burden of proof (*i.e.* the Department of

Education) to deliver its affidavits to the other party seven days prior to the hearing, to be

followed by the opposing party delivering their affidavits within four days of the hearing, and all

parties to send their affidavits to the IHO within four days of the hearing.  IHO Ex. I.  The order

permitted a party who sought to introduce direct testimony live, instead of by affidavit, to submit

a list of witnesses, a summary of their proposed testimony, and an explanation as to why live

testimony was required.  Such an application was due by April 1, 2014.  *Id*.  Witnesses would

appear on the date of the hearing for cross examination as well as additional direct examination

as long as it was not repetitive or irrelevant.  *Id*. (citing 8 NYCRR 200.5[j][5][i-iv]).  IHO Noe's

prehearing order provided that adjournments would not be granted on the basis of school

vacations, a lack of availability resulting from parties' and/or representatives' scheduling

conflicts, settlement discussions, mutual consent or other similar reasons.  *Id.*  The order also

cited an SRO decision which required that extension requests had to be made based on

"compelling reasons or a showing of substantial hardship."  *Id*., citing SRO decision no. 11-150,

n.2.

---

[1] IHO Michael Lazan found that Seton constituted the Student's pendency placement.  *See*, tr. 5;
October 29, 2013 order on pendency; see also 20 U.S.C. § 1415(j).

4

The same day that prehearing order was dated, Plaintiffs made an application to adjourn the April 11 hearing date, citing witnesses' unavailability and their counsel's impending medical procedure. IHO Ex. II. The IHO denied the request, noting that Plaintiffs' counsel, Ms. Gavronsky, was one of several affiliated attorneys of Susan Luger Associates, and that her absence did not preclude representation of the Plaintiffs by one of the other affiliated attorneys. *Id*.[2] Ms. Gavronsky then made an application for IHO Noe to recuse herself. That application was also denied. IHO Ex. II. The IHO also denied a similar application made two days later by SLA. IHO Ex. IV.

Thus, the hearing commenced, as originally scheduled, on April 11, 2014. Plaintiffs were represented by Joseph Fein, another attorney affiliated with SLA. Mr. Fein attempted to record the hearing even though it was already being recorded, as is standard practice at impartial hearings. Mr. Fein stated that "everything that transpires today I would like to be on the record." Tr. 16. IHO Noe offered to direct the third party that was already recording the hearing to record the hearing in its entirety, but Mr. Fein refused to turn off his own device. IHO Noe again directed Plaintiffs' counsel to turn off his recording device, and adjourned the hearing briefly to allow Plaintiffs time to consider. Tr. 18-20. When the hearing continued, IHO Noe asked Plaintiffs' counsel whether he had reconsidered his stand, to which he replied no. Tr. 21. Whereupon, the IHO dismissed the Plaintiffs' due process complaint with prejudice. *Id*.

However, in an order dated April 14, 2014, IHO Noe reinstated the case, stating that although disallowing Plaintiffs to independently record the impartial hearing was correct, "a dismissal with prejudice is not the proper remedy at this juncture." IHO Ex. V at 11. IHO Noe

---

[2] The website of Susan Luger Associates lists several affiliated attorneys, including Ms. Gavronsky. *See*, http://www.slugerassociates.com/who-we-are/attorneys.php (last visited June 24, 2016).

scheduled the hearing to proceed on April 29, 2014 at 2 p.m., and directed the parties to "submit exhibits at the resumed hearing date and argument at which point the hearing will be closed and the matter will be decided on the merits." *Id*. at 13.

Plaintiffs had over two weeks to prepare for the April 29 hearing. Instead, Plaintiffs made another application on April 23, 2014 for various forms of relief, which the IHO characterized as a request for (i) her recusal; (ii) an exemption from the prehearing order requirement that the Plaintiffs submit affidavits in lieu of direct testimony by a certain date or, alternatively, apply to present live direct testimony; (iii) the right to audio record the hearing; and (iv) an adjournment of the April 29 hearing. *See*, IHO Ex. VI. IHO Noe noted that Plaintiffs sought her recusal on two grounds: that IHO Noe had a significant professional relationship with a DOE employee who is "involved with special education cases;" and IHO Noe's prior rulings denying Plaintiffs' adjournment requests. *Id*. The IHO denied all requests for relief. *Id*.

In the early morning of April 29, 2014, Plaintiffs' counsel contacted the IHO to request that the hearing be moved to an earlier time due to a witness' schedule. Tr. 28, 61. IHO Noe granted the request, and re-set the hearing from 2 p.m. to 12:30 p.m., at which time counsel for both parties appeared and submitted exhibits. Tr. 28-60. Due to confusion regarding whether or not the Defendant had timely served two proposed affidavits in accordance with the IHO's prehearing order, and also because the IHO had a 1 p.m. hearing in another case, the IHO adjourned the hearing until 2 p.m. Tr. 57. When the hearing resumed at 2 p.m., it was determined that the Defendant had, in fact, failed to serve its proposed affidavits on the IHO, at which point the IHO directed that the affidavits be excluded from evidence, and marked them for identification only. Tr. 58-60. As the Defendant's case comprised only of exhibits submitted into evidence, the IHO asked the Plaintiffs to present their case. She stated that she would hear

any testimony Plaintiffs presented, but would reserve judgment on whether to admit such testimony into evidence. Tr. 60. Plaintiffs' counsel arranged for the Student's mother to testify via telephone. *See* tr. 63-77. Plaintiffs represented that she was their only witness that day, at which point the IHO closed the hearing.

IHO Noe issued her final decision and findings of fact on May 15, 2014, in which she held, based on her review of the evaluative materials, the IEP and the hearing transcript, that the Defendant had provided a FAPE for the 2013-2014 school year, and denied Plaintiffs' requested relief.

**Appeal to the SRO**

The Plaintiffs appealed the IHO's findings and ruling denying their tuition reimbursement request. Plaintiffs contended that the IHO misstated the evidence in the record, failed to address all of the arguments raised in the DPC, committed misconduct, and prevented the Plaintiffs from developing a record. Plaintiffs further argued that the IEP did not indicate whether ABA would be provided, that the placement school would not be able to implement the terms of the IEP, and the FNR did not include a recommendation for adapted physical education. In a fifteen page, single-spaced, well-reasoned decision, the SRO, conducting a *de novo* review of the case, rejected the Plaintiffs' contentions regarding the IHO's conduct as well as their procedural and substantive objections to the IEP. Having upheld the IHO's ruling that the Student's IEP provided a FAPE, the SRO declined to consider the Prong II and III (defined below) issues. Plaintiffs then appealed to this Court.

**Plaintiffs Commence Disciplinary Investigation into IHO Noe by the New York State Education Department**

Shortly after filing their federal complaint, Plaintiffs pursued disciplinary proceedings against IHO Noe by filing on February 26, 2015 a complaint against her with

NYSED pursuant to the New York State Education Law § 4404 and 8 N.Y.C.R.R. § 200.21(b)(1), alleging misconduct and incompetence with regard to proceedings concerning the 2013-2014 and 2014-2015 school years.[3]  LW Decl. Exh. B.  The NYSED investigation was completed pursuant to an official report issued on September 11, 2015.  LW Decl. Exh B.  Noting that several of the allegations made against IHO Noe were identical to those made against her in the appeal to the SRO, which had been rejected by the SRO, the NYSED investigator adopted the SRO's findings as to those allegations.  Of all of the allegations levied by Plaintiffs against IHO Noe, the only one that the SRO and NYSED sustained was that she had erred by omitting the pendency order from the record.  SRO Dec. at 10-13, LW Decl. Exh. B at 14-15.  Both the SRO and NYSED found that this error did not result in any prejudice to Plaintiffs.

**The Federal Action**

In their federal complaint, the Plaintiffs reprised the allegations in their DPC.  However, the Plaintiffs named not only the DOE but also the New York State Education Department as a defendant.  Dkt. no. 1.  By a voluntary notice of dismissal that was so ordered by the Court, the Plaintiffs dismissed the NYSED on February 2, 2015.  Dkt. no. 12.  Then, on May 14, 2015, Plaintiffs sought leave to amend their complaint in order to re-name NYSED as a defendant.[4]  Dkt. no. 14.  This motion was denied by the Court in a memorandum and order dated October 23, 2015.  Dkt. no. 18.

---

[3] According to the Plaintiffs, they had filed the voluntary dismissal of NYSED in the federal action "in order to 'allow the state's disciplinary process' concerning the hearing officer against whom they have a complaint 'to move forward.'"  Order dated October 23, 2015, dkt. no. 18 at pgs.1-2, quoting Plaintiffs' letter dated June 23, 2015, dkt. no. 16.

[4] The Plaintiffs' motion came four days after the mailing of a NYSED investigator's official findings on a complaint against IHO Noe brought by nine special education attorneys regarding IHO Noe's alleged misconduct and/or incompetence in various impartial hearings in 2012 and 2013, none of them involving the present Plaintiffs. LW Decl. Exh. I.  The NYSED investigator's findings did not sustain two of the four allegations against IHO Noe, including an

## STATUTORY SCHEME AND STANDARD OF REVIEW

**Purposes and Procedures of the IDEA**

        Congress enacted the IDEA to promote the education of students with disabilities. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238-39 (2009). The IDEA provides that a child with a disability must receive a FAPE which includes special education and related services provided at public expense. 20 U.S.C. § 1400 (d)(1)(A). These services must meet the standards of the State educational agency and be provided in conformity with an IEP for each such student. 20 U.S.C. § 1401; *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982). In New York, the State has assigned responsibility for developing IEPs to local CSEs, comprised of members appointed by the local school district's board of education. *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citing N.Y. Educ. Law § 4402(1)(b)(1)). The CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program. *R.E.*, 694 F.3d at 175 (citing *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107-08 (2d Cir. 2007)).

        The IDEA sets forth procedures for a parent to present a complaint regarding the educational placement of a student, including a complaint regarding the student's IEP. *See* 20 U.S.C. § 1415(b)(6)(A). Parents must file a due process complaint outlining their grounds for challenging the IEP before they are entitled to a hearing before an IHO. *See* 20 U.S.C. § 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a). In New York State, the IHO's decision may be appealed by either party to the State Education Department's Office of State Review, where the SRO will independently review the findings and decision rendered by the IHO. 20 U.S.C.

---

allegation regarding the IHO's use of testimony by affidavit, but did sustain the allegations that the IHO scheduled multiple hearings for the same hearing date in one case, and that the IHO failed to make a provide a complete record of the impartial hearing proceeding. *Id*.

§ 1415(g)(1); N.Y. Educ. Law § 4404(2). The SRO is empowered to modify "any determination of the impartial hearing officer" relating to the selection of an appropriate special education program or service. N.Y. Educ. Law § 4404(2). Although the SRO's decision is considered final, a party aggrieved by that decision may bring an action for relief in state or federal district court. 20 U.S.C. §§ 1415(i)(1)(B),(2)(A); N.Y. Educ. Law § 4404(3)(a).

**The *Burlington/Carter* Reimbursement Test**

Parents who are dissatisfied with a school district's recommendations for their child for a given school year may unilaterally place their child in a private school and then seek retroactive tuition reimbursement from the local school district. 20 U.S.C. § 1412 (a)(10)(C). Parents who choose this path, however, "do so at their own financial risk." *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373-74 (1985)); *see generally* 20 U.S.C. § 1412(a)(10)(C)(i). A school district is required to pay for the program selected by a parent only if: (1) the educational program recommended by the school district was inadequate or inappropriate, (2) the program selected by the parent was appropriate, such that the private program meets the student's special education needs, and (3) the equities support the parent's claim. These three factors, or "prongs," comprise the *Burlington/Carter* test. *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (citing *M.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013); *Carter*, 510 U.S. 7, 15-16).

In addressing Prong I of the *Burlington/Carter* test, a court is to consider, to the extent alleged in a due process complaint, (1) whether the student's IEP was developed according to the IDEA's procedural requirements, and (2) whether the educational plan set forth in the IEP was reasonably calculated to confer educational benefits on the student. *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998) (citing *Rowley*, 458 U.S. at 206-

07). Though the U.S. Supreme Court has interpreted the IDEA as placing the burden of proof on the party challenging the appropriateness of the IEP, *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57-58, 126 S. Ct. 528, 163 L. Ed. 2d 387 (2005), New York State places the burden of persuasion on the school district at the administrative level to demonstrate that it offered an appropriate program with respect to those issues raised in the due process complaint on appeal. N.Y. Educ. Law § 4404(1)(c), 20 U.S.C. § 1415(f)(3)(B)). The burden of demonstrating that an SRO ruled incorrectly on Prong I falls on the party challenging that decision- here the Plaintiffs. *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 225 n.3 (2d Cir. 2012). An IEP's appropriateness must be evaluated "prospectively as of the time it was created," and based solely on the program set forth in the document and any testimony describing how that program would be delivered. *R.E.*, 694 F.3d at 188. "Retrospective evidence that materially alters the IEP is not permissible." *Id.*

On Prong II, parents have the burden of proving that their unilaterally chosen private school's program was reasonably calculated to confer an educational benefit. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006) (citing *Rowley*, 458 U.S. at 207; *Muller v. Comm. on Special Educ.*, 145 F.3d 95, 105 (2d Cir. 1998)). While parents need not prove that their placement provides "every special service" that might be desirable, they still must prove that the private placement is "specially designed to meet the unique needs" of the child. *Frank G.*, 459 F.3d at 365. Moreover, the "IDEA's requirement that an appropriate education be in the mainstream to the extent possible remains a consideration that bears upon a parent's choice of an alternative placement." *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 105 (2d Cir. 2000).

Under Prong III, a request for tuition reimbursement for a unilaterally chosen private school may be reduced or denied "upon a judicial finding of unreasonableness with

respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii)(III). Parents bear the burden of establishing that the equities favor them, *R.E.*, 694 F.3d at 185, and "[i]n considering the equities, courts should generally presume that public-school officials are properly performing their obligations under IDEA." *Forest Grove*, 557 U.S. at 247. Furthermore, where parents "mak[e] it impossible to conform to IDEA's mandate, equitable considerations *demand* that the court deny reimbursement." *N.R. v. N.Y.C. Dep't of Educ.*, No. 07 CV 9648 (BSJ), 2009 WL 874061, at *6 (S.D.N.Y. Mar. 31, 2009) (emphasis added). Finally, a court need not consider Prong III issues if it finds that the school district offered a FAPE. *See T.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 254 (2d Cir. 2009).

In this dispute, both the IHO and SRO ruled in favor of the DOE on Prong I, thereby rendering decision on Prongs II and III unnecessary. "Because the first prong of the *Burlington/Carter* test is satisfied, the second and third prongs of the test are not considered." *D.N. v. New York City Dep't of Educ.*, 14 Civ. 2526 (LGS), 2015 WL 925968, at *7 (S.D.N.Y. Mar. 3, 2015). Plaintiffs have not sought adjudication of Prongs II or III in their motion. PM at 1-26. Hence, this dispute is limited only to an examination of Prong I.

**Standard of Review**

Courts decide IDEA actions based on the preponderance of evidence developed during the administrative proceedings, coupled with any additional evidence presented by the parties. 20 U.S.C. § 1415(i)(2)(C). Courts, however, "must give 'due weight' to administrative proceedings mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of education policy." *M.H.*, 685 F.3d at 240 (quoting *Gagliardo*, 489 F.3d at 113). Thus, while IDEA administrative decisions are subject to independent judicial review, both the Supreme Court and the Second Circuit have consistently construed the IDEA to limit judicial review of state administrative proceedings. *See*

*C.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (while "[t]he standard of review 'requires a more critical appraisal of the agency determination than clear-error review,'" it "nevertheless falls well short of complete de novo review") (quoting *M.H.*, 685 F.3d at 244).

It is well-established in the Second Circuit that "courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." *M.H.*, 685 F.3d at 246. A useful and oft-repeated formulation of the proper standard is that "courts should not disturb decisions of state administrative officers that are 'reasoned and supported by the record.'" *M.S. v. N.Y.C. Dep't of Educ.*, 2 F. Supp. 3d 311, 322 (E.D.N.Y. Nov. 5, 2013) (quoting *Gagliardo*, 489 F.3d at 114). Deference to the SRO is especially appropriate when assessing the adequacy of an IEP. *See R.E.*, 694 F.3d at 187 n.3 (underlining "the 'particularly important' deference that [the Second Circuit] afford[s] the SRO's assessment of the plan's substantive adequacy" (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005)). Though the State places the burden of persuasion on the school district at the administrative level to demonstrate that any defects alleged in the parents' DPC did not deny the Student a FAPE, *see* 20 U.S.C. § 1415(f)(3)(B); N.Y. Educ. Law § 4404(1)(c), on appeal, the burden of demonstrating that an SRO ruled incorrectly falls on the party challenging that decision. *M.H.*, 685 F.3d at 225 n.3.

## ARGUMENT

## PART I: THIS COURT SHOULD DEFER TO THE IHO AND SRO'S FINDINGS THAT THE DOE OFFERED THE STUDENT A FREE APPROPRIATE PUBLIC EDUCATON

The SRO's decision herein fully merits the considerable weight accorded to final determinations of state administrative proceedings. The "particularly important" deference due to an SRO's assessment of the substantive adequacy of an IEP is even more pronounced in this case where both the SRO and IHO agreed that the Student's IEP was appropriate.[5] *See C.H. v.*

---

[5] *See* IHO Dec. at 8; SRO Dec. at 15.

*Goshen Cent. Sch. Dist.*, No. 11 CV 6933 (CS), 2013 WL 1285387 (S.D.N.Y. Mar. 28, 2013) ("[d]eference to the conclusions of the administrators on [the adequacy of goals] is particularly appropriate where they are both in agreement"); *A.M. v. N.Y.C. Dep't of Educ.*, 964 F. Supp. 2d 270, 285 (S.D.N.Y. 2013) ("deference is especially appropriate, as both the IHO and SRO concluded that the goals were sufficient and measurable"); *see also A.H. v. N.Y.C. Dep't of Educ.*, 394 Fed. App'x 718, 719-20 (2d Cir. 2010) (reversing district court holding that "failed to accord sufficient deference to the decisions of the IHO and SRO, both of whom concluded that the IEP offered [the student] a FAPE"). Indeed, the case law upholding courts' departures from SRO findings is generally predicated on the existence of an inconsistent IHO decision. Thus the Second Circuit has held that "if a court concludes that an SRO's decision is inadequately reasoned, 'a better-reasoned IHO opinion may be considered instead.'" *Reyes v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 219 (2d Cir. 2014) (quoting *R.E.*, 694 F.3d at 189). Where, however, there is no conflicting IHO opinion with respect to the appropriateness of the IEP to rely on, a court's overruling an SRO's decision on substantive educational policy matters would contravene the Second Circuit's warning that "[courts] cannot substitute our own 'notions of sound educational policy for those of the school authorities' under review." *M.W.*, 725 F.3d at 139 (quoting *M.H.*, 685 F.3d at 240).

Plaintiffs cannot sustain their burden of showing that the SRO Decision was either poorly reasoned or lacking support in the record. The SRO found detailed support for each of her findings that Plaintiffs challenge in this Court. Significantly, the SRO did so after a de novo review of the IHO's decision and independently determined that the Defendant provided a FAPE. *See*, 20 U.S.C. § 1415(g)(2); *T.L. v. N.Y. City Dep't of Educ.*, 938 F. Supp. 2d 417, 431 (E.D.N.Y. 2013).

**PART II: THE DOE OFFERED J.S. A FREE APPROPRIATE PUBLIC EDUCATION**

A district offers a FAPE whenever a) the board of education complies with the procedural requirements set forth in the IDEA and b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits. *Rowley*, 458 U.S. *at* 206-07; *Cerra*, 427 F.3d at 192. The statute ensures an "appropriate" education, not one that "provides everything that might be thought desirable by a loving parent. *Walczak*, 142 F.3d at 132. An appropriate education is one that is "likely to produce progress, not regression." *Cerra*, 427 F.3d at 195; *Walczak*, 142 F.3d at 130.

**A.** **The Student's IEP Was Developed in Substantial Compliance with the Procedures of the IDEA**

It should first be noted that here as well as before the IHO and the SRO, the Plaintiffs have made little effort to argue the merits of their IDEA case. Indeed, their present motion relies more on innuendo and proceedings, including cases regarding school years other than the 2013-2014 school year in dispute, that are not germane to this action.

The IDEA's procedural requirements ensure that the method used to develop a student's IEP is appropriate. These requirements delineate the composition of the team that develops the IEP (20 U.S.C. § 1414(d)(1)(B)), the factors the team should consider (20 U.S.C. § 1414(d)(3)), and the content that the IEP should include (20 U.S.C. § 1414(d)(1)(A)(i)). Procedural violations amount to a denial of FAPE only if they impede the student's right to a FAPE, significantly impede the parents' opportunity to participate in the process, or cause a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E); *see R.E.*, 694 F.3d at 190; *J.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 638 (S.D.N.Y. 2011); *W.S. v. Rye City Sch. Dist.*, 454 F. Supp. 2d 134, 138 (S.D.N.Y. 2006). The development of the Student's IEP for

the 2013-14 school year was sufficiently compliant with IDEA requirements to offer him a FAPE.

First, the IEP Team was duly composed, as the IHO found and the Plaintiffs can no longer contest because they did not appeal this determination to the SRO. *See* SRO Dec. at 9-10; Ex. B-18; 20 U.S.C. § 1414(d)(1)(B); *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2nd Cir. 2008). Further, the IEP reflects the contributions of the Parents and Seton personnel, either directly or through Seton progress reports. *See, e.g.*, exs. B at 1-3, 14, 15-17. In particular, the IEP notes R.S.'s personal concerns and requests for services, showing her active participation influenced the resulting IEP.[6] *See, e.g.,* ex. B-2 (noting mother's advocating the use of a multisensory approach in therapeutic sessions, J.S.'s classroom teacher's observations regarding the amount of supervision required, J.S.'s ability to transition between activities, his need for redirection and reinforcement, parent's noting his progress in peer interactions); B-17 (mother's request for a sensory gym).

Next, the CSE had abundant evaluative material to consider in developing J.S.'s IEP. "In conducting the evaluation, the local educational agency shall use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent." 20 U.S.C. § 1414(b)(2)(A). For the 2013-14 IEP, the CSE considered several Seton reports created just one or two months prior to the CSE meeting: February 2013 Seton quarterly progress report, an April 2013 classroom teacher/student evaluation report, an April 2013 speech-language therapy progress report; in addition to an undated PT progress report, and an undated OT progress report. *See*, Exs. 2-5, G at pgs. 1-4. From these written materials and the input of the Student's mother and Seton

---

[6] The Plaintiffs do not dispute that the Student's mother was provided with a copy of a draft IEP at the start of the IEP meeting. *See*, Plaintiffs' Complaint, para. 9, dkt. no. 1.

teachers, the CSE was able to consider J.S.'s strengths, his parents' concerns and requests, and his academic, developmental and functional needs, all of which are reflected in the IEP.  *See* Ex. B.

Finally, as described in further detail below, the IEP satisfied the IDEA's requirements with regard to substantive content. 20 U.S.C. §1414(d)(1)(A)(i).  It provided a narrative accurately stating his current levels of achievement and functional performance, social and physical development and management needs. Ex. B at 1-3.  The 2013-14 IEP included 18 annual goals and 66 short term objectives covering attentional, motor, speech and social skills, writing, adaptive physical education, reading, counseling, toileting and other activities of daily living skills and safety awareness.  Ex. B at 4-11. The 2013-14 IEP delineated evaluative criteria, an evaluation procedure as well as schedules to measure progress toward those goals and objectives.  *Id*.  The SRO discusses how the IEP, generally and through the goals and short term objectives, addressed the Student's significant delays in cognitive, academic, language, social, physical and self-care skills.  SRO Dec. at 14.  This included the recommended use of redirection, prompts and reinforcements to help the Student maintain focus and complete tasks, the recommendation of a highly structured specialized class and strategies to use in teaching.  *Id*. The SRO also discussed the IEP's recommendation of related services to address the Student's physical/motor delays, language and communication delays and social interaction skills.  *Id*.

Based on her survey of the 2013-14 IEP, the SRO concluded that the evidence in the record supported the IHO's finding that the 2013-2014 IEP was developed in conformity with the IDEA's procedural requirements.  SRO Dec. at 15.

**B.      The IEP Was Substantively Appropriate**

The 2013-14 IEP offered J.S. a program tailored to his individual needs and reasonably calculated to enable him to receive educational benefits.  *See Rowley*, 458 U.S. at 206-07; *Cerra*, 427 F.3d at 192.  It recommended a 6:1:1 special education class in a specialized school, meaning the class would contain one teacher, one paraprofessional, and up to six students. Ex. B-12.  This class is designed by New York State for students "whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention..." 8 NYCRR § 200.6[h][4][ii][a].  J.S. has autism, often becomes distracted by his environment or his own actions, at times requires adult support to maintain attention, and requires a multimodal approach to learning.  Ex. B at 1-2.  To further meet his needs, the IEP recommended a twelve month school year.  Ex. B-12.  With regard to related services, the IEP recommended that the Student receive counseling once a week for 30 minutes in a group of three, OT four times a week for 30 minutes each on an individual basis, PT twice a week in 30 minute sessions on an individual basis, SLT five times a week in 30 minute sessions on an individual basis and once a week for 30 minutes in a group of three.  *Id*.  This offered intensive individual and small group therapy specifically designed to address the Student's speech-language challenges including expressive delays and poor intelligibility, his social challenges as well as his physical delays such as hand-eye coordination and inability to properly grasp implements.  Ex. B-1.

Contrary to Plaintiffs' assertion, the IEP's recommendations are consistent with the recommendations in the private evaluations submitted by the parents.  First, the 6:1:1 class recommendation is consistent with Dr. Robinson's recommendation in her neuropsychological evaluation of J.S., prepared in early 2013, in which Dr. Robinson notes that the Student's Seton

class provides an appropriate level of support. Ex. E-4. The classroom at Seton has a student-teacher ratio of 6:1:1, the same as in J.S.'s IEP. *Compare*, Exs. G-1 to B-12. Second, Dr. Robinson noted that J.S. does not require a 1:1 paraprofessional. Exh. E-4. That is consistent with the IEP and contrary to Plaintiffs' demand for a 1:1 paraprofessional. Third, J.S. was placed in a twelve-month school year at Seton; the 2013-14 IEP also recommended a twelve month school year. *Compare*, Exs. B-15 to G-1.

As the SRO held, with the 6:1:1 class program the related services to be provided on an individual and small group basis, as well as the special education teacher and classroom paraprofessional in the proposed program, J.S. would have been able to receive educational benefits in the 2013-14 school year. The IEP developed for J.S. attended to his specific needs and stated numerous goals that respond to and reflect the concerns of his parents, his Seton teacher and related service providers and the evaluations the CSE had at its disposal. Accordingly, the Defendant offered a program that was reasonably calculated to enable him to progress.

## PART III: PLAINTIFFS' ALLEGATIONS REGARDING FAPE MUST BE DISMISSED

Both an independent review of the record as well as a review of the SRO's thorough, well-reasoned and factually supported opinion lead to the conclusion that the Defendant offered J.S. a FAPE for the 2013-14 school year. Yet Plaintiffs argue in their motion for summary judgment that the IEP developed by the CSE did not provide the Student with a free appropriate public education. Furthermore, Plaintiffs argue that the IHO denied them a chance to fully develop their case, thus requiring a new hearing before another IHO. Plaintiffs' contentions are unfounded and must be dismissed for the reasons discussed below.

**A.    Plaintiffs' Predetermination Argument Lacks Merit**

Plaintiffs allege that the IEP was predetermined, and that the DOE members of the IEP Team never had any intention of considering the input of the Student's mother and private school teachers when making a program recommendation.  As described below, this allegation has no merit.

While the Plaintiffs argue that the IHO did not consider this claim, the IHO actually noted the parents' allegations that the IEP "goals were not developed at the meeting and therefore deprived the parent [of] meaningful participation" and that the related service providers were not present at the CSE meeting.  IHO Dec. at 6.  Predetermination of an IEP by a CSE amounts to a procedural violation of the IDEA, which envisions a collaborative process in developing a child's educational program.  *E.H. v. N.Y.C. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 18537, at *21 (S.D.N.Y. Feb. 16, 2016).  In instances where parents are effectively deprived of meaningful participation in the development of their child's IEP, such predetermination may rise to the level of a substantive violation, hence a denial of FAPE.  *Id*., citing *J.G.*, 777 F. Supp. 2d at 648.  "The CSE may consider and reject the Parent's point of view, but it may not deprive the Parent of meaningful participation by refusing to consider [] the Parent's concerns."  *E.H.*, 2016 U.S. Dist. LEXIS 18537, at *23.

In rejecting the Plaintiffs' allegations, the IHO pointed out that the parent was provided a copy of the draft IEP at the start of the CSE meeting, noted that the IDEA does not require districts to draft the annual goals in the presence of the parents, and cited to New York law for the proposition that the district or the parent may designate persons having knowledge or special expertise regarding the student to attend the CSE meeting, and that a related service provider, Theresa Biancoviso, and the Student's classroom teacher were present at the CSE

meeting. IHO Dec. at 6-7. The SRO noted that the CSE considered several evaluative reports in developing the IEP and, in particular, relied upon the evaluative information "to provide a detailed and comprehensive overview of the student's strengths and needs across a variety of areas." SRO Dec. at 14. This is evident from a review of the IEP, which includes quotations from the Student's SEIT, OT, SP, classroom teacher and PT in sections describing his academic achievement, functional performance and learning characteristics, social development and physical development. Ex. B at 1-3.

The CSE also took care to include R.S.'s concerns regarding: the use of a multisensory approach for the Student, his handwriting and fine motor skills, expressive language skills, gross motor skills, relating to peers (including initiating play), reliance on adult supervision; and she requested limited travel time, a 1:1 paraprofessional and a sensory gym. Exs. B at 2, 15 and 17, C. R.S. also discussed her son's hearing and vision and general health history. Ex. B-2. "The fact that the District staff ultimately disagreed with the opinions of plaintiffs and their outside professionals does not mean that plaintiffs were denied the opportunity to participate . . . or that the outcomes of the CSE meetings were 'pre-determined.' A professional disagreement is not an IDEA violation." *P.K. v. Bedford Cent. Sch. Dist.*, 569 F. Supp. 2d 371, 383 (S.D.N.Y. 2008). *See also Sch. for Language & Commun. Dev. v. N.Y. State Dep't of Educ.*, No. 02 CV 0269 (JS)(JO), 2006 WL 2792754 at *7 (E.D.N.Y. Sept. 26, 2006) (citing *Walczak*, 142 F.3d at 132 (noting that meaningful participation does not require deferral to parent choice)).

Plaintiffs argue in their brief that the program was predetermined because the district had recommended a 6:1:1 class four years in a row, and recommended PS 373 as the placement school three years in a row. First, any program offered by the district in a year other

than the year in dispute is irrelevant to a determination whether the IEP for the 2013-14 school year provided a FAPE.[7] The adequacy *vel non* of an IEP is to be judged on its own terms. *See J.R. v. Bd. of Educ.*, 345 F. Supp. 2d 386, 395 n.13 (S.D.N.Y. 2004); *see also Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 500 (S.D.N.Y. 2011) (holding IEP from subsequent year irrelevant to motion to dismiss claims based on prior year); *J.G.*, 777 F. Supp. 2d at 636 n.26 ("evidence pertaining to an entirely different school year than the one at issue is 'of questionable relevance.'") (quoting *A.S. v. Trumbull Bd. of Educ.*, 414 F. Supp. 2d 152, 171 (D. Conn. 2006)). *Cf. M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 67 (2d Cir. 2000). ("*Ex post* information about [student's] subsequent progress in private school is … irrelevant to the inquiry about whether the District's IEP was reasonably calculated to enable her to receive educational benefits in the 2002-03 academic year."). While the SRO did not consider the predetermination issue, there is sufficient evidence in the record on which to affirm the IHO's finding. *See Reyes,* 760 F.3d at 219 (permitting a Court to defer to a well-reasoned IHO decision if the SRO's analysis is insufficient or if the SRO fails to reach an issue at all).

**B.  Plaintiffs Have Not Exhausted Their Administrative Remedies**

Plaintiffs attempt to raise two arguments - that the CSE failed to recommend a 1:1 paraprofessional for JS, and that PS 373 could not implement the terms of the IEP - that they claim were not considered by the IHO or SRO despite their failure to develop these arguments before either adjudicator. Plaintiffs' failure renders this Court without jurisdiction to hear these arguments.

The IDEA requires parties to exhaust their administrative remedies before appealing any state decision to this Court. 20 U.S.C. § 1415(i); *Polera v. Bd. of Educ. of*

---

[7] In fact, the Plaintiffs cite several times to matters involving school years other than the 2013-2014 school year.

*Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002). In fact, failure to exhaust the administrative remedies set forth in the IDEA deprives the court of subject matter jurisdiction. *Cave*, 514 F.3d at 245. The purpose of such a requirement is so that "disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances." *J.S. v. Attica Cent. Sch*., 386 F.3d 107, 112 (2d Cir. 2004). In their summary judgment motion, Plaintiffs argue that the IHO and SRO conducted a limited review of the IEP and failed to consider allegations in the DPC regarding the CSE's failure to include a paraprofessional for J.S., and the inability of PS 373 to implement the terms of the IEP. PM at 17. Their arguments contradict the SRO's finding that Plaintiffs had, in fact, completely failed to preserve or develop these and other arguments in their petition to the SRO. *See*, SRO Dec. at 9. The SRO reasoned that the Plaintiffs' petition consisted of general statements only, and failed to identify particular issues or IHO findings of which they sought SRO review. *Id*. The SRO concluded that under the circumstances, "it is not this SRO's role to research and construct the appealing party's arguments or guess what they may have intended." *Id*., citing cases.

In light of the Plaintiffs' failure to properly develop their arguments at the impartial hearing and before the SRO, both the IHO and the SRO followed the standard analysis in determining the adequacy of an IEP, which was to review whether the IEP complied with the procedural and substantive requirements of the IDEA. Both the IHO and SRO surveyed the IEP's contents, compared them to the IDEA's procedural and substantive requirements, and concluded that they complied with the requirements sufficiently to have offered the Student a FAPE.

**C.      Alternatively, the Student Did Not Require a 1:1 Paraprofessional, and PS 373 Uses ABA as a Teaching Methodology**

Alternatively, assuming the Plaintiffs can present these arguments, the evidence in the record clearly refutes them.

As stated above, the Student's IEP did not include a recommendation that he be assigned a full time 1:1 paraprofessional, which is consistent with the findings of Dr. Robinson, a clinical neuropsychologist hired by the Plaintiffs to prepare a neuropsychological evaluation of J.S.. *See*, Exh. E-1.  Dr. Robinson conducted a classroom observation of the Student as part of her evaluation, and she wrote that "[JS] appeared to function adequately without a 1:1 paraprofessional aide, as suggested by his level of engagement and compliant, non-disruptive behavior." Exh. E-4.  She also noted that his lead teacher confirmed that his behavior during the observation period was typical and estimated to be a good representation of his usual school behavior.  *Id*.  Plaintiffs have not pointed to any contradictory evidence in the record that would support a recommendation of a 1:1 paraprofessional.

Plaintiffs' argument that PS 373 could not implement the terms of the IEP because it did not offer ABA and was not a quiet environment fails for several reasons.[8]  First, the IEP did not include a recommendation for ABA, so this fails as an implementation challenge. *See M.O. v. New York City Dep't of Educ.*, 793 F.3d 236 (2d Cir. 2015).  A challenge that relates to the appropriateness of the IEP's recommendations couched as a challenge to the adequacy of the proposed school should not be considered.  *Id*. at 245.  Plaintiffs are actually making a substantive challenge to the IEP rather than an implementation challenge against the proposed placement school.

---

[8] Plaintiffs' attempt to invoke IHO findings from the 2012-2013 and 2015-2016 school years is irrelevant for the reasons cited above.

Second, parents are not entitled to choose an educational methodology under the IDEA. *F.L. v. N.Y.C. Dep't of Educ.*, 2012 WL 4891748 at *9 (S.D.N.Y. Oct. 16, 2012). Indeed, courts have given particular deference to state educational authorities on the issue of educational methodology. *A.S. v. N.Y.C. Dep't of Educ.*, 573 Fed. Appx. 63, 66 (2d Cir. 2014) (rejecting plaintiffs' claim that the student could only progress in an ABA program); *E.C. v. Bd. of Educ. of the City Sch. Dist. of New Rochelle*, No. 11 CV 9429 (ER), 2013 U.S. Dist. LEXIS 36346, at *74 (S.D.N.Y. Mar. 15, 2013) ("The Court is not at liberty to favor Dr. Salsberg's opinion, that of a privately hired expert, over the deference that should appropriately be accorded to the District in matters of educational policy") (citing *E.S. v. Katonah-Lewisboro Sch. Dist.*, 742 F. Supp. 2d 417, 436 (S.D.N.Y. 2010).

Dr. Robinson, both in her affidavit submitted in support of the summary judgment motion and in the neuropsychological evaluation, which was already in the record and considered by the CSE, IHO and SRO, also endorsed the use of ABA. Plaintiffs also submitted an affidavit from Dr. Lorelli, the Seton psychologist, to support their claim that the Student needed ABA as the appropriate teaching methodology. There was not, however, any evidence indicating that J.S. was unable to learn with any *other* methodology. Although the IEP did not specify any educational methodology, R.S. testified that during her visit to the proposed placement school she was told that PS 373 uses ABA. Tr. 68, 71. Thus, before she rejected the DOE's placement, R.S. had assurance that J.S. would have been taught with his preferred methodology had he attended the DOE school.

Plaintiffs' claim that PS 373 could not provide a quiet environment is purely speculative. Any challenge to the implementation of the IEP must be made using non-speculative evidence. *See M.O.*, 793 F.3d 236; *D.C. v. N.Y.C. Dep't of Educ.*, 950 F.Supp.2d 494

(S.D.N.Y. 2013); *S.E. v. New York City Dep't of Educ.*, 2015 WL 409238 at *12 (S.D.N.Y. July 2, 2015) (lack of "hard evidence" to prove failure to implement IEP at placement school). There is a presumption that a placement will adequately implement an IEP. *N.S. v. N.Y.C. Dep't of Educ.*, 2014 WL 2722967 at *14 (S.D.N.Y. June 16, 2014). In *M.O.*, the Second Circuit recently explained that an implementation challenge regarding a school in which the student never enrolled is sometimes permissible. *Id.* at 244. However, *M.O.* drew a line between permissible and impermissible challenges. *M.O.* clearly delineated the distinction: a claim that a school lacks the "capacity to implement the IEP," for example because it lacks the services the IEP requires, is permissible. *Id.* at 244. "[I]t is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates . . ." *Id.* at 244. The Student's IEP included no specific prescription for a quiet environment. *See*, Ex. B. Furthermore, the Plaintiffs did not show that PS 373 could not provide a quiet environment.

## PART IV.  THE IHO'S CONDUCT DOES NOT ALTER THE FACT THAT THE DOE OFFERED THE STUDENT A FREE APPROPRIATE PUBLIC EDUCATION

### A.  The Court Should Defer to the SRO's Ruling on the IHO's Conduct

In their petition to the SRO, their formal disciplinary complaint to NYSED and now before this Court, the Plaintiffs bring the same allegations that the IHO's purported "misconduct" denied them an impartial hearing. These allegations include: (1) that the IHO unfairly ordered the parties to submit affidavits in lieu of direct testimony; (2) that the IHO unfairly required such affidavits to be submitted by certain dates prior to the scheduled impartial hearing; (3) that the IHO unfairly refused to grant Plaintiffs' requests for an adjournment of the impartial hearing date, (4) that the IHO refused to allow Plaintiffs to independently record the impartial hearing, (5) that the IHO allowed into evidence affidavits submitted by the DOE even

though such affidavits had not been submitted by the IHO's deadline, (6) that the IHO issued orders without application by either party, (7) that the IHO "forced" the Plaintiffs to seek new counsel by denying their request for an adjournment, and (8) that the IHO failed to include the pendency order in the record of the impartial hearing.[9]  All but one of these allegations was rejected by both SRO and NYSED, who found that IHO's conduct was predominantly in conformance with governing regulations and standards.

Having failed to sway the SRO or NYSED that this conduct constituted grounds for reversal or discipline under the more applicable IDEA and Part 200 of the Regulations of the New York State Commissioner of Education, Plaintiffs now ask this Court to deem IHO Noe's conduct improper under the more general New York State Bar Model Code of Judicial Conduct for Administrative Law Judges ("NY Model Code").  *Compare*, SRO Dec. at 10, LW Decl. Exh. B to PM at 20.  The NY Model Code is irrelevant to the issues in this case.  To the extent that the Plaintiffs base their argument on the NY Model Code, their argument should be dismissed. *Compare*, LW Decl. Exh. I at p. 15 of 28 (applying the NY Model Code only in the absence of specific statutory or regulatory authority governing the decorum of an IHO).

First, the Plaintiffs take issue with the IHO's March 24, 2014 order's requirement that the parties submit direct testimony in the form of affidavits even though they admit that the practice is explicitly permitted by applicable State regulation.  *See*, 8 NYCRR 200.5(j)(3)(xii)(f) (an IHO may "take direct testimony by affidavit in lieu of in-hearing testimony, provided that the witness giving such testimony shall be made available for cross-examination."); *see also* Ex. O-1.  IHO Noe's March 24, 2014 order provided the same procedure.  Plaintiffs' argument that

---

[9] Plaintiffs also alleged that (1) the IHO should have recused herself because she co-wrote a book and appeared in a related video with a DOE employee who was cc'd in email communications between the parties in this dispute; (2) that the IHO improperly refused to disclose this relationship;  and (3) that she failed to recuse herself upon Plaintiffs' motion.

following the letter of the Regulations constitutes misconduct requiring the nullification of IHO

Noe's decision and remand lacks merit, as has been found by the SRO and by the NYSED.  *See*

SRO Dec. at 11, LW Decl. Ex. B at p. 11 of 17 (adopting the SRO's finding in the 2013-2014

dispute).  This Court should find the same.

Plaintiffs next argue that the IHO improperly refused to grant their requests to

adjourn the hearing date, which forced them to seek new counsel.  However, as the SRO

correctly reasoned, the IHO permissibly denied the Plaintiffs' adjournment requests in

accordance with State regulations.  In fact, the IHO's March 24, 2014 order tracked the language

of 8 NYCRR 200.5(j)(5)(i-iv) when stating that "absent a compelling reason or a specific

showing of substantial hardship, a request for an extension shall not be granted because of school

vacations, a lack of availability resulting from the parties' and/or representatives' scheduling

conflicts, settlement discussions between the parties or other reasons."  Ex. O-1.  As the SRO

found, the Plaintiffs requested an adjournment of the hearing date three times, each time based

on the lack of availability of the witnesses or the attorney, and despite Plaintiffs' prior consent to

the April 11, 2014 hearing date.  SRO Dec. at 13.  IHO Noe's desire to keep the case on schedule

was reasonable, as the case had been pending for seven months without a hearing date.

Any suggestion that Plaintiffs were taken by surprise by IHO Noe's

administration of the hearing must also be rejected.  As evident from NYSED complaints and

findings accompanying the Plaintiffs' motion, this IHO's practices – particularly her propensity

to request testimony by affidavit – were well known to the Plaintiffs' attorneys and other

attorneys in this area of legal practice.  *See*, LW Decl. Exs. B, H and I.  Plaintiffs could have

begun to marshal their testimonial evidence as soon as IHO Noe was appointed to the case in

early March 2014. As the SRO concluded, the IHO was well within her discretion in denying the Plaintiffs' adjournment requests.[10]

## B. Plaintiffs' Allegations of IHO Misconduct Have Been Rejected by NYSED

The NYSED is the body tasked with overseeing IHO conduct and discipline. 8 NYCRR 200.21(b). After an independent review and consideration of the SRO's findings, the NYSED rejected Plaintiffs' allegations against the IHO with the exception of the IHO's failure to include the pendency order into evidence. LW Decl. Ex. B. The NYSED's findings resulted in no discipline and the investigation was closed.

Yet Plaintiffs persist in raising the IHO's alleged misconduct, providing no new facts to support their allegations, despite having their complaints rejected by NYSED, the proper body to hear and adjudicate claims of IHO misconduct. Defendant requests that the Court defer not only to the SRO but to the NYSED and reject Plaintiffs' allegations against the IHO, and deny Plaintiffs' request for a remand for a new impartial hearing.

## C. The Record Shows That Plaintiffs Simply Failed to Follow Reasonable Orders of the IHO

An independent review of the record shows that any prejudice to Plaintiffs came, in fact, from their own failure to comply with the IHO's orders. The Plaintiffs filed their DPC on August 26, 2013. By the time IHO Noe was appointed on March 6, 2014 to oversee the impartial hearing, Plaintiffs had had over seven months to prepare their case. The IHO set the April 11, 2014 hearing date after consultation with Plaintiffs' counsel on March 18, 2014. The

---

[10] The SRO also rejected Plaintiffs' claim that the IHO had an improper professional relationship with a DOE employee. Noting that while he had been included as one of the addressees in email communications between the Plaintiffs, the IHO and the Defendants, there was no other evidence of his involvement in the case. SRO Dec. at 10. The SRO further rejected Plaintiffs' allegations with the sole exception of the IHO's apparent mistake in failing to include the pendency order in the record; the SRO noted that no prejudice resulted since the Defendant had complied with the order and the order, in fact, included in the administrative record. *Id*. at 10-13.

IHO issued her prehearing order on March 24, 2014 prescribing the use of affidavits in lieu of testimony and setting deadlines by which to submit them or, should the parties choose, to submit a request for direct verbal testimony by live witness. The Plaintiffs had until April 7, 2014 to submit their affidavits. Instead of seeking permission to give direct verbal testimony or to prepare their affidavits in the fourteen days between the March 24 order and the April 11 hearing date, Plaintiffs chose to repeatedly seek an adjournment of the hearing date, failing which they then sought the IHO's recusal.

Plaintiffs point to the dates of the two proposed affidavits which the DOE attempted to introduce into evidence at the impartial hearing. Those affidavits are dated March 12, 2014 and March 14, 2014. *See*, DOE Exhibits List, tr. 54-55. Plaintiffs offer the dates as suggestive of an appearance of impropriety when they actually suggest that upon learning that IHO Noe was assigned to the case on March 6, the DOE promptly began preparing testimonial affidavits, knowing of Noe's tendency to prefer testimony by affidavit. *Compare*, LW Decl. Exs. B, H and I.

Moreover, in light of Plaintiffs' insistence on live direct testimony, they should have made their witnesses available for testimony on the April 11 and April 29 hearing dates. They did produce R.S. on April 29, only after Plaintiffs' counsel stated on the record that they did not intend to present evidence on Prong I. Tr. 40. After only a few minutes of questioning,[11] Plaintiffs chose to discontinue R.S.'s testimony, ostensibly because her child had just finished his school day. The transcript showed that R.S.'s testimony ended at 2:37 pm. Tr. 77. Plaintiffs chose not to continue her testimony even though it was still mid-afternoon, nor did Plaintiffs choose to call other witnesses.

---

[11] It should be noted that this testimony was entered into the record.

Plaintiffs also point to a comment by the IHO at the April 29 hearing: "This hearing won't take long. That's why I scheduled you at 2:00." as "evidence" that IHO Noe intended to cut them short. However, the transcript shows that the IHO was referring to a different hearing scheduled for the same day at 1 pm. Tr. 57. As noted above, the Plaintiffs ended testimony at 2:37 pm, well before the end of the business day. This is inconsistent with their position that, regardless of the IHO's prior orders and the applicable regulation, they were entitled to present live testimony.

The record shows that the Plaintiffs were given ample opportunities to present their case. They failed to do so, but seek to shift blame to the IHO. However, an SRO as well as the NYSED have reviewed Plaintiffs' claims and rejected them. This Court should uphold those findings.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant New York City Department of Education respectfully requests that Plaintiffs' motion for summary judgment be denied and that the Complaint be dismissed in its entirety, that Defendant's cross-motion for summary judgment be granted, and that the Court grant Defendant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
             June 24, 2016

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorney for Defendant*
100 Church Street
New York, New York 10007
(212) 356-5048
E: sle@law.nyc.gov

By:    /s/
         Son K. Le
         Special Assistant Corporation Counsel