UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
J.S. and R.S., individually and on :
behalf of JOHN S., a minor, :
: 15cv355 (DLC)
                        Plaintiffs, :
: OPINION AND ORDER
    -v- :
:
THE NEW YORK CITY DEPARTMENT OF :
EDUCATION, :
:
                        Defendant. :
--------------------------------------- X

APPEARANCES:

For the plaintiffs:
Lawrence D. Weinberg
162 Williamson Avenue
Bloomfield, NJ 07003

For the defendant:
Justin Killian
Lesley Berson Mbaye
Son K. Le
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

    J.S. and R.S. (collectively, the "Parents") appeal from the

decision of the State Review Officer ("SRO") denying

reimbursement for tuition under the Individuals with

Disabilities Education Act ("IDEA") for their son, John S.  The

Parents principally raise one procedural deficiency and three

substantive deficiencies in the individualized education program

("IEP") prepared for John by the New York City Department of

Education (the "Department") for the 2013-2014 school year.  For
the reasons that follow, the decision of the SRO is affirmed,
and the Department's motion for summary judgment is granted.

## Background

The following facts are taken from the administrative
record or are undisputed by the parties.

### I.  John's Background

John is a six-year-old student with autism.  Under the
IDEA, John is entitled to receive a free appropriate public
education ("FAPE") from the Department.  Alternatively, if the
Department fails to provide a FAPE, the Parents may enroll John
in a private school and obtain reimbursement for the Department,
subject to certain restrictions.  The instant appeal concerns
the IEP for the 2013-2014 school year.  In the previous year,
2012-2013, John attended the Seton Foundation for Learning
("Seton").

### II. The Individualized Education Program

On April 26, 2013, a Committee on Special Education ("CSE")
met and developed the IEP for the 2013-2014 school year.
Present at the meeting were (1) John's mother, R.S.; (2) the
Department's representative and school psychologist, Edward
O'Connor; (3) the Department's special education teacher,
Theresa Biancoviso; (4) a parent representative, Tom Feola; and
(5) John's classroom teacher from Seton, Jon Paul Pablo.

According to the IEP, John was performing at a kindergarten or first-grade level with developmental delays in speech, motor skills, and self-regulation.

The IEP recommended placement in a 6:1:1 special education classroom[1] in a specialized school with the following related services: adapted physical education, counseling, occupational therapy, parent counseling and training, physical therapy, and speech-language therapy.  The Department proposed placing John at a school on Staten Island identified as P373R @ P40 ("P373") for the 2013-2014 school year.  On June 26, 2013, the Parents enrolled John at Seton and notified the Department that they were rejecting the 2013-2014 IEP and placement.

**III. The IHO Hearing & Decision**

On August 26, 2013, the Parents requested a hearing before an impartial hearing officer (the "IHO") and sought reimbursement for the 2013-2014 school year, arguing that the IEP denied John a FAPE.  On March 6, 2014, an IHO was assigned to the matter and scheduled a hearing for April 11.  By order dated March 24, the IHO set a schedule for pre-hearing submissions and directed the parties to file their direct testimony by affidavit in advance of the hearing.  If either

---

[1] A 6:1:1 ratio indicates a classroom of six students, one teacher, and one paraprofessional.  Paraprofessionals are teaching assistants who provide instructional services to students under the general supervision of a certified teacher.

party desired to present live testimony, they were directed to submit a request to that effect.

In response to the IHO's March 24 order, counsel for the Parents requested an adjournment of the hearing and the recusal of the IHO on the basis that counsel had a surgical procedure that conflicted with the hearing date.  The IHO denied both requests.  On March 27, counsel for the Parents renewed the request, and the IHO again denied it.

At the April 11 hearing, the Parents were represented by an attorney affiliated with the same firm as their original counsel.  When the counsel attempted to record the hearing, which was already being recorded, the IHO ordered the him to turn off his device.  When he refused to do so, the IHO ended the hearing and dismissed the case.  Three days later, the IHO reconsidered her decision, reinstituted the case, and set it for hearing on April 29.

In emails dated April 18 and 23, the Parents requested that direct testimony be presented live, rather than by affidavit, and again requested the IHO's recusal.  The requests were denied.

On the morning of the April 29 hearing, the Parents' counsel again requested an adjournment.  The IHO denied this request but granted an alternative request to begin the hearing earlier in the day.  Despite the Parents' late request for live

testimony, the IHO permitted R.S. to testify.  In a decision of May 15, 2014, the IHO rejected the Parents' challenges to the IEP and denied their request for tuition reimbursement.

## IV.  The State Review Officer Appeal

The Parents appealed the IHO's decision to an SRO, arguing that the IHO acted improperly and erred in finding the 2013-2014 IEP adequate.  The SRO affirmed the IHO's decision.  It held, inter alia, that the IHO's conduct was not improper and that the 2013-2014 IEP offered John a FAPE.

## V.  Procedural History

The Parents filed their complaint in federal court on January 16, 2015, appealing the SRO's decision and seeking remand for a new hearing before a different IHO.  The Department filed its answer on March 23, 2015.[2]  On May 27, 2016, the Parents moved for summary judgment on their claims.  On June 24, the Department cross-moved for summary judgment.  The two motions were fully submitted as of August 18.  On November 22, the case was reassigned to this Court.

---

[2] The parties also litigated whether the New York State Education Department (the "NYSED") was a proper defendant.  Ultimately, the NYSED was dismissed from the case.

## Discussion

### I.  Legal Standard

Although the parties style the instant motion as one for summary judgment, the "procedure is in substance an appeal from an administrative determination." T.K. v. N.Y.C. Dep't of Educ., 810 F.3d 869, 874 n.2 (2d Cir. 2016) (citation omitted). In reviewing a state administrative proceeding under the IDEA, the Court must "engage in an independent, but circumscribed, review, more critical than clear-error review but well short of complete de novo review." Id. at 875 (citation omitted).  In deciding factual issues, a district court must decide based on the preponderance of the evidence. T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009) (per curiam); see also 20 U.S.C. § 1415(i)(2)(C)(iii). Due weight must be given to the state proceedings, with particular deference afforded where "the state hearing officers' review has been thorough and careful." T.K., 810 F.3d at 875 (citation omitted); see also R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 189 (2d Cir. 2012).  The Second Circuit has cautioned that "federal courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of education policy." T.K., 810 F.3d at 875 (citation omitted).

## II.  The Individuals with Disabilities Education Act

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  Under the IDEA, states have "an affirmative obligation to provide a basic floor of opportunity for all children with disabilities," meaning "an education likely to produce progress, not regression, and one that affords the student with an opportunity greater than mere trivial advancement."  T.K., 810 F.3d at 875 (citation omitted).

The principal method for states to achieve the mandate of the IDEA is the IEP, a written statement which by statute must contain, among other things, the child's present level of performance, goals for improvement, and a plan about how to achieve that improvement.  Id. (citing 20 U.S.C. § 1414(d)).  If an IEP is substantively deficient, parents may reject the plan and seek reimbursement from the state for private school tuition, subject to certain conditions.  Id. (citing 20 U.S.C. § 1412(a)(10)(C)(ii)).

Parents may also seek reimbursement where an IEP is procedurally deficient, but only if the procedural deficiencies "significantly impede the parents' participation rights, impede

7

the child's right to a FAPE, or cause a deprivation of educational benefits." Id.  Even when a denial of a FAPE is found, parents will only be reimbursed for tuition if the alternative school chosen by the parents "is appropriate to the child's needs" and equitable considerations favor reimbursement. Id.

The burden of establishing the validity of the IEP is on the Department.  Id.  Thus, in reviewing an IDEA decision, the court must determine (1) whether the state complied with the procedures of the act, (2) whether the IEP is reasonably calculated to enable the child to receive education benefits, and (3) whether the private schooling obtained by the parents is appropriate for the child's needs, taking into consideration the relevant equities.  M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 245 (2d Cir. 2012).  See generally Sch. Comm. of the Town of Burlington v. Dep't of Educ., 471 U.S. 359 (1985).

## III. Procedural Adequacy of the IEP

The Parents claim that the IEP was impermissibly predetermined in advance of the CSE meeting.  In particular, they take issue the fact that the IEP was drafted before the meeting, as well as the Department's consistent recommendation of a 6:1:1 classroom at P373 three or four years in a row. Neither of these assertions suggests impermissible predetermination.  Although the IEP was drafted before the

meeting, the Parents concede that they were provided with that draft, and the final IEP reflects comments and concerns expressed by R.S. at the CSE meeting.  See T.P., 554 F.3d at 253.  That the Department's placement recommendation was consistent across school years is not objectionable, especially where the IEP reflects the CSE's consideration of alternative placements, as it does here.  Parents are entitled to provide input in the IEP process, but they do not have the right to veto decisions with which they disagree.  T.Y. ex rel. T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 420 (2d Cir. 2009).

## IV.  Substantive Adequacy of the IEP

### A.    Scope of Review

In their petition to the SRO seeking reversal of the IHO's decision, the Parents appealed the IHO's findings (or failure to make findings) with respect to classroom ratio, applied behavior analysis ("ABA"), and the ability of P373 to implement the IEP.[3] The Parents also asserted, in general terms, that the IHO had failed to address their other challenges.

The SRO addressed some of the issues identified with specificity in the petition but determined that the Parents'

---

[3] The Parents also identified the IHO's failure to make a finding with respect to John's sensory skills.  This challenge was not raised with this Court until the Parents' reply brief, however, and it is therefore waived.  Simpson v. City of New York, 793 F.3d 259, 264 (2d Cir. 2015).

failure to advance specific arguments in support of their
conclusory challenge constituted waiver of those issues.  In
reaching this conclusion, the SRO did not err.

New York regulations require parents to "clearly specify
the reasons for challenging the [IHO]'s decision" and to
"identify . . . the failure or refusal to make a finding and
. . . what relief should be granted by the [SRO]."  N.Y. Comp.
Codes R. & Regs. tit. 8, § 279.4(a).  The petition must "set
forth . . . a clear and concise statement of the issues
presented for review and the grounds for reversal or
modification to be advanced, with each issue numbered and set
forth separately."  Id. § 279.8(c)(2).  "Any issue not
identified in a party's request for review . . . shall be deemed
abandoned and will not be addressed by [the SRO]."  Id.
§ 279.8(c)(4).

The SRO correctly applied these regulations to the Parents'
general assertion that the IHO had overlooked some of their
challenges to the IEP.  Because the Parents failed to identify
the miscellaneous challenges on appeal to the SRO, they have not
exhausted their administrative remedies with respect to those
claims.  See Polera v. Bd. of Educ., 288 F.3d 478, 487 (2d Cir.
2002).  A court is without jurisdiction to address claims other
than those properly exhausted.  Id. at 483.

### B.    Classroom Ratio

In their appeal from the SRO's decision, the Parents address only in passing the SRO's rejection of their challenge to the 6:1:1 classroom ratio.  The SRO conducted a detailed examination of the evidence in the record and concluded that a 6:1:1 ratio was adequate.  Presented with no developed argument challenging this analysis, the thorough and well-reasoned opinion of the SRO is affirmed.

### C.    Applied Behavior Analysis

The Parents claim that the Department denied John a FAPE by not including in his IEP a requirement that he receive applied behavior analysis ("ABA").  There was no evidence before the IHO, however, that a provision for ABA was necessary.  In any event, as the Parents were aware when they rejected the Department's proposed placement, P373 used the ABA methodology. As a result, whether or not ABA was necessary to John's education, the Department did not deny him a FAPE in this regard.[4]

### D.    P373's Implementation of the IEP

The Parents argue that P373 would not have been capable of implementing the 2013-2014 IEP.  In support of this argument,

---

[4] While the Parents have offered on appeal two affidavits from specialists regarding the necessity of ABA, they did not present these to the IHO or SRO.

they have offered no evidence that P373 lacked the ability to implement the IEP as written.  See M.O. v. N.Y.C. Dep't of Educ., 793 F.3d 236, 244-45 (2d Cir. 2015) (per curiam).  For example, the Parents observe that the IEP required John to receive adapted physical education but that this service is not mentioned in the Department's final notice of recommendation. The Parents do not, however, present any non-speculative evidence that P373 was unable to provide adapted physical education.  See id. at 244 ("[I]t is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates . . . .").  Accordingly, the Department had no "burden to produce evidence demonstrating [P373]'s adequacy in response to these arguments."  Id. at 245.

**V.   Conduct of the IHO**

Finally, the Parents challenge the conduct and impartiality of the IHO and seek remand for a hearing before a different officer.  The Parents' complaints against this particular IHO have already been rejected by the SRO, as well as the NYSED in a separate disciplinary investigation.  This Court concurs that none of the Parents' grounds for challenging the IHO merit remand.

First, the Parents argue that the IHO's business dealings with a Department employee created a conflict of interest that

jeopardized the IHO's impartiality.  No evidence of such a
conflict exists.  Although the Department employee in question
was copied on emails related to the Parents' complaint, as the
SRO concluded, the Parents have pointed to no evidence of that
employee's substantive involvement in the case nor any
indication that the relationship affected -- or even appeared to
affect -- the IHO's impartiality.

Second, the Parents take issue with the IHO's order that
their counsel cease recording the hearing.  As the SRO
explained, the IHO "is charged with the responsibility of
maintaining the order and integrity of the impartial hearing
process."  Given that the hearing was already being officially
recorded, the IHO's order was a reasonable exercise of her
authority.  The Parents point to no prejudice suffered as a
result of the order.

Third, the Parents object to the IHO's order that direct
testimony be taken by affidavits.  As is clear from the IHO's
pre-hearing order, however, the parties were free to request
that live testimony be taken by timely submitting a list of
witnesses, with justifications for hearing the testimony live.
This approach is specifically contemplated by New York
regulations.  See N.Y. Comp. Codes R. & Regs. tit. 8,
§ 200.5(j)(3)(xii)(f) ("The [IHO] may take direct testimony by
affidavit in lieu of in-hearing testimony, provided that the

witness giving such testimony shall be made available for cross-examination."). Even though the Parents failed timely to make their request, the IHO still permitted them to offer live testimony from R.S. Thus, the SRO's conclusion that the IHO's order was lawful and resulted in no prejudice to the Parents is affirmed.

Finally, the Parents challenge the IHO's denial of their requests for adjournments of the hearing. As a result of these denials, they assert, they were forced to replace their counsel in the weeks leading up to the hearing. The IHO's denials were in accordance with New York regulations. See id. § 200.5(j)(5)(iii) (requiring, for an adjournment, "a compelling reason or a specific showing of substantial hardship"). The Parents were represented at the hearing by counsel affiliated with the same law firm. Accordingly, as the SRO found, the IHO's denials were "well within the IHO's discretion."

## Conclusion

For the reasons stated above, none of the IDEA violations alleged by the Parents resulted in the denial of a FAPE to John. Having found that the Department offered John a FAPE for 2013-2014, the Court need not consider the other prongs of the IDEA analysis, namely, whether Seton was an appropriate private placement or whether the equities favor the Parents. See M.H., 685 F.3d at 258. For the same reason, the Parents' request for

remand to a new IHO is denied, and the decision of the SRO is affirmed.  The Department's June 24, 2016 motion for summary judgment is granted, and the Parents' May 27, 2016 motion for summary judgment is denied.  The Clerk of Court shall enter judgment for the defendant and close the case.

       SO ORDERED.

Dated:  New York, New York
       February 24, 2017

                                         DENISE COTE
                    United States District Judge